EXHIBIT 1

LAW OFFICES OF

# DAVID J. FINE

Three Center Plaza, Suite 400
Boston, Massachusetts 02108-2003

Tel: (617) 720-2942
Fax: (617) 720-0987
E-Mail: dvdfine@aol.com

By Telecopier and E-Mail
(Confirmed by Mail)

July 28, 2005

Richard F. Kane, Esq.
McGuire Woods LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, NC 28202-4011

      Re    Steven R. Kincaid v. Bank of America Corporation,
             Civil Action No. 04-11522-WGY

Dear Mr. Kane

      This is to confirm the following regarding our two-hour telephone discovery
conference earlier this afternoon:

      1.     In behalf of the defendant Bank of America Corporation (the "Bank"), you
stated that the Bank has indeed produced all e-mails that discuss, describe, mention or refer
to the plaintiff Steven R. Kincaid ("Mr. Kincaid") of which the Bank is aware. The only
exception to this are the e-mails the Bank has identified in its July 1, 2005 Privilege Log.
The Bank represents that it has <u>not</u> withheld from disclosure <u>any</u> e-mails that discuss,
describe, mention or refer to Mr. Kincaid on the ground that: (1) Mr. Kincaid's document
requests do not request production of e-mails with sufficient specificity; (2) Mr. Kincaid's
document requests are vague or overbroad; or (3) Mr. Kincaid's document requests are
otherwise objectionable.

      2.     You have agreed that you will make inquiry to determine whether the Bank
(a) ever had in a back-up system and (b) still has in a back-up system e-mails that discuss,
describe, mention or refer to Mr. Kincaid which e-mails were sent to or from any of the
following: (i) Steven Kincaid; (ii) Sheila Burroughs; (iii) Alec Kotopoulos; (iv) Vipin
Mayar; (v) Eric Montgomery; (vi) Elizabeth Janak. If the Bank still has such e-mails in a

Richard F. Kane, Esq.
July 28, 2005
Page 2

back-up system of any type, you will advise me of that fact and we will discuss apportioning the cost of retrieving such e-mails. If the Bank once had such e-mails but no longer has them, you will also advise me of that, and will provide information regarding the time and manner of the destruction or loss of the e-mails. If, upon reflection, you decide that you yourself, as the Bank's counsel, do not want to be in the position of providing any of the foregoing information to me directly, you will so advise me and I will arrange with you to obtain the information through a 30(b)(6) deposition.

3.      The Bank agrees to allow Mr. Kincaid to take supplemental depositions of Sheila Burroughs and Alec Kotopoulos limited to questioning reasonably arising from and related to documents the Bank produced for the first time on July 1, 2005. The Bank disagrees with Mr. Kincaid that the Bank should pay the costs of such supplemental depositions. The Bank also disputes that it should pay the cost of Mr. Kincaid's taking the depositions of Elizabeth Janak, Andrea Montgomery, Sue Tarantino and Anya Ward.

4.      The Bank agrees to identify by Bates number the documents it has produced in response to particular document requests propounded by Mr. Kincaid, in return for Mr. Kincaid agreeing to do likewise.

5.      The Bank refuses to answer the following questions propounded by Mr. Kincaid: Has anyone at the Bank or any of the Bank's in-house or outside attorneys ever given instructions to Bank personnel that all e-mails and other documents regarding Mr. Kincaid must be preserved? If so, when is the first time that such an instruction was given, how was the instruction given and to whom was it given?

6.      The Bank has agreed to advise Mr. Kincaid promptly which, if any, of the following discovery the Bank is willing to provide to Mr. Kincaid:

a.      discovery regarding complaints or charges of age discrimination made against, or involving: (i) Sheila Burroughs; (ii) Alec Kotopoulos; or (iii) Vipin Mayar;

b.      discovery regarding complaints or charges of age discrimination-related retaliation made against or involving any of the individuals identified in a. above;

c.      discovery regarding complaints or charges of gender, race or other

Richard F. Kane, Esq.
July 28, 2005
Page 3

discrimination or harassment made against or involving any of the individuals identified in a above;

        d.    discovery regarding retaliation of any type made against or involving any of the individuals identified in a. above;

        e.    discovery regarding any complaints or charges of discrimination, retaliation or harassment made against the Bank regardless of whether such claims involved any of the individuals identified in a. above.

    7.    Regarding Document Request 19, the Bank continues to be unaware of any so-called "poison pen" letter documents. However, the Bank's diligent search for such documents is not yet completed and the Bank agrees to advise Mr. Kincaid if and when it finds any such documents.

    8.    The Bank disagrees with Mr. Kincaid's contention that, contrary to the position taken in the Bank's July 1, 2005 Privilege Log, meetings and other communications, and documents generated, prior to the Bank's receipt of Mr. Kincaid's July 24, 2003 Charge of Discrimination to the EEOC are not privileged.

    9.    The Bank disagrees that Mr. Kincaid is entitled to have documents listed in the Bank's Privilege Log examined in camera by the Court, and ultimately produced, on the ground that Mr. Kincaid can show "substantial need" and "undue hardship" within the meaning of Fed.R.Civ.P. 26(b)(3), and on the further ground that the Bank's privilege claim is overcome in light of the Bank's (a) misleading conduct vis-à-vis the EEOC and/or (b) the Bank's discovery conduct in this case to date.

    Please advise me in writing immediately if you believe anything I have stated above is misleading, inaccurate or incomplete.

    Please get back to me as soon as possible regarding each matter as to which you agreed, or it is otherwise appropriate, to get back to me.

    Also, please advise me whether the Bank agrees to: (a) shorten from 14 days to 7 days the time within which it will respond to Mr. Kincaid's motion to compel; and (b)

Richard F. Kane, Esq
July 28, 2005
Page 4

shorten from 30 days to 15 days the Bank's time to respond to follow-up document requests
and interrogatories Mr. Kincaid will be serving within the next 7 days.

Thank you for your cooperation

Very truly yours,

David J. Fine

DJF/ejd

McGuireWoods LLP
Bank of America Corporate Center
100 North Tryon Street
Suite 2900
Charlotte, NC 28202-4011
Phone: 704.373.8999
Fax: 704.373.8935
www.mcguirewoods.com

Steven T. Ackermann
sackermann@mcguirewoods.com

Direct Dial: (704) 373-8956
Direct Fax (704) 373-8827

## McGuireWoods

August 1, 2005

**VIA FACSIMILE 617.720.0987
and U.S. MAIL**

David J. Fine, Esq.
Law Offices of David J. Fine
3 Center Plaza, Suite 400
Boston, Massachusetts 02108-2003

>    Re:    *Steven R. Kincaid v. Bank of America Corporation*
>              CA No. 04-11522-WGY

Dear Mr. Fine:

In response to your letter of July 28, 2005, we address herein certain matters raised in that letter. The numbered paragraphs below correspond to the numbered paragraphs within your letter.

1.    The Bank maintains that your request for all documents discussing, describing, mentioning or referring to Steven Kincaid is overbroad and fails to comply with the requirements of Rule 34 of the Federal Rules of Civil Procedure. Without waiving our objection, we advised you that the Bank is not aware of any e-mails fitting within the above description which have not been produced, except those for which a privilege has been claimed.

2.    (a)    E-mail communications are processed through an exchange server whose activity is recorded on backup tapes to facilitate retrieval in the event of system breakdowns. However, after a period of 30 days, these tapes are reused and the information is no longer available.

However, individual employees who elect to save e-mail communications may do so on a network space which would also be backed up. This information may still be available.

(b)    We will not know if there are any e-mails regarding Mr. Kincaid on the backup tapes until an actual search is performed.

6.    With regard to discovery of charges or complaints of age discrimination, including age discrimination-related retaliation, against or involving Sheila Burroughs, Alec Katopoulos or Vipin Mayar, we would be willing to search for such information with the understanding the search may necessarily depend upon the personal recollection of appropriate representatives given the difficulty of locating charges within files arranged in alphabetical order. We will not

Mr. Fine
August 1, 2005
Page 2

agree to provide the information specified in paragraph 6(c)-(e).  Moreover, we are not agreeing to provide e-mails from or to Eric Montgomery.

7.    We maintain any "poison pen" letters are irrelevant.  We will, nevertheless, continue our search.

Finally, we will not agree to shorten the time for us to respond to your motion to compel or follow-up document requests and interrogatories.

We trust this is responsive to your letter but should you have further questions, please do not hesitate to contact me.

Sincerely,

McGuireWoods LLP

Steven T. Ackermann

STA:crh

| Subj: | **Kincaid v. Bank of America** |
|---|---|
| Date: | 8/3/2005 8:09:34 AM Eastern Daylight Time |
| From: | DvdFine |
| To: | rkane@mcguirewoods.com, Sackermann@mcguirewoods.com |

Dear Mr. Kane and Mr. Ackermann

     have received Mr. Ackermann's letter dated August 1, 2005 responding to my letter dated July 28, 2005

    First, regarding the backup tapes to which Mr. Ackermann refers in item 2, is the Bank willing to undertake immediately an actual search of these tapes to locate and produce e-mails regarding Mr. Kincaid? Mr. Kincaid's position is that the Bank was obligated to conduct such a search in response to Mr. Kincaid's original document request, dated March 16, 2005, and was certainly obligated to conduct such a search once it became apparent that e-mails regarding Mr. Kincaid, which the Bank should have, in response to Deborah Norcross's April 25, 2003 letter, taken steps to preserve without the need for resort to backup tapes, were not so preserved. In any event, Mr. Kincaid's position is that the Bank is certainly obligated to conduct such a search, at the Bank's own expense, now. If the Bank is not willing to conduct such a search unless Mr. Kincaid contributes to the cost of such a search, please advise me immediately of the cost of such a search and how much of this cost the Bank claims Mr. Kincaid should be required to pay.

    Second, on the top of page 2 of Mr. Ackermann's letter, Mr. Ackermann states that the Bank is "not agreeing to provide e-mails from or to Eric Montgomery." Mr. Kincaid requests that the Bank reconsider this position especially in light of the fact that one of the key defenses the Bank has advanced to Mr. Kincaid's retaliation claim is that Mr. Montgomery allegedly did not tell anyone about Deborah Norcross's April 25, 2003 letter until after Mr. Kincaid was terminated. E-mails Mr. Montgomery sent in the days and weeks following April 25, 2003 could obviously contradict this claim and are, therefore, clearly relevant for this reason, among others. At the very least, the Bank is obligated to search for e-mails to or from Mr. Montgomery regarding Mr. Kincaid and to list in a privilege log any of these e-mails the Bank decides to withhold from production.

    Third, in item 6, Mr. Ackermann states, "With regard to discovery of charges or complaints of age discrimination, including age discrimination-related retaliation, against or involving Sheila Burroughs, Alec Kotopoulos or Vipin Mayar, we would be willing to search for such information . . ." (emphasis added). The word "would" is unclear. Are you stating that the Bank believes it is obligated to do only this much and will, accordingly, proceed to do this much? Or are you stating that the Bank will not do even this much unless Mr. Kincaid agrees to forego pursuit of other discovery regarding other charges and complaints of discrimination? Or are you stating something different from either of these two things? Please clarify the Bank's position immediately. If the Bank is willing to provide discovery in this area, please be precise as to when the Bank will provide such discovery.

    Please respond to this e-mail as soon as possible

               Very truly yours

               David J. Fine

| | |
|---|---|
| Subj: | **RE: Kincaid v. Bank of America** |
| Date: | 8/5/2005 8:04:34 AM Eastern Daylight Time |
| *From:* | sackermann@mcguirewoods.com (Ackermann, Steven T.) |
| *To:* | DvdFine@aol.com |

Dear Mr. Fine,

This is in response to your e-mail dated August 3, 2005.

First, we will agree to search the Bank's e-mail backup tapes as soon as it can be accomplished. We will perform these searches at our own expense.

Second, we will agree to search for e-mails from or to Eric Montgomery that mention Kincaid from April 25, 2003 to the date of Plaintiff's termination. In the event that any responsive e-mails are located, we will then assess whether any privileges applies and prepare a corresponding privilege log.

Third, we expressed our willingness to provide the information regarding prior complaints and charges of age discrimination as an offer of compromise. However, if our agreement to provide the categories of information articulated in our August 1 letter does not completely resolve the overall dispute regarding other complaints of discrimination, then we will not voluntarily provide the information indicated.

Finally, with regard to the notices of deposition you served on or about August 1, 2005, these dates are not agreeable. Elizabeth Janak is assigned to a London office requiring greater advanced notice. In addition, Tim Megyesy must travel from his office in Pittsburgh for his deposition. Mr. Kane also has a mediation scheduled on August 16, 2005. Please let us know as soon as possible whether you will agree to reschedule these depositions.

Thank you for your attention to this matter.


Steven T. Ackermann
Associate

McGUIREWOODS
McGuireWoods LLP
100 North Tryon Street
Suite 2900
Charlotte, NC 28202-4011
704.373.8956 (Direct Line)
704.373.8827 (Direct FAX)
sackermann@mcguirewoods.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

-----Original Message-----
**From:** DvdFine@aol.com [mailto:DvdFine@aol.com]
**Sent:** Wednesday, August 03, 2005 8:10 AM
**To:** Kane, Richard F.; Ackermann, Steven T.
**Subject:** Kincaid v. Bank of America

Dear Mr. Kane and Mr. Ackermann:

I have received Mr. Ackermann's letter dated August 1, 2005 responding to my letter dated July 28 2005.

First, regarding the backup tapes to which Mr. Ackermann refers in item 2, is the Bank willing to undertake immediately an actual search of these tapes to locate and produce e-mails regarding Mr.

Kincaid? Mr. Kincaid's position is that the Bank was obligated to conduct such a search in response to Mr. Kincaid's original document request, dated March 16, 2005, and was certainly obligated to conduct such a search once it became apparent that e-mails regarding Mr. Kincaid, which the Bank should have, in response to Deborah Norcross's April 25, 2003 letter, taken steps to preserve without the need for resort to backup tapes, were not so preserved. In any event, Mr. Kincaid's position is that the Bank is certainly obligated to conduct such a search, at the Bank's own expense, now. If the Bank is not willing to conduct such a search unless Mr. Kincaid contributes to the cost of such a search, please advise me immediately of the cost of such a search and how much of this cost the Bank claims Mr. Kincaid should be required to pay.

Second, on the top of page 2 of Mr. Ackermann's letter, Mr. Ackermann states that the Bank is "not agreeing to provide e-mails from or to Eric Montgomery." Mr. Kincaid requests that the Bank reconsider this position especially in light of the fact that one of the key defenses the Bank has advanced to Mr. Kincaid's retaliation claim is that Mr. Montgomery allegedly did not tell anyone about Deborah Norcross's April 25, 2003 letter until after Mr. Kincaid was terminated. E-mails Mr. Montgomery sent in the days and weeks following April 25, 2003 could obviously contradict this claim and are, therefore, clearly relevant for this reason, among others. At the very least, the Bank is obligated to search for e-mails to or from Mr. Montgomery regarding Mr. Kincaid and to list in a privilege log any of these e-mails the Bank decides to withhold from production.

Third, in item 6, Mr. Ackermann states, "With regard to discovery of charges or complaints of age discrimination, including age discrimination-related retaliation, against or involving Sheila Burroughs, Alec Kotopoulos or Vipin Mayar, we would be willing to search for such information . . ." (emphasis added). The word "would" is unclear. Are you stating that the Bank believes it is obligated to do only this much and will, accordingly, proceed to do this much? Or are you stating that the Bank will not do even this much unless Mr. Kincaid agrees to forego pursuit of other discovery regarding other charges and complaints of discrimination? Or are you stating something different from either of these two things? Please clarify the Bank's position immediately. If the Bank is willing to provide discovery in this area, please be precise as to when the Bank will provide such discovery.

Please respond to this e-mail as soon as possible

Very truly yours

David J. Fine

----------------------- Headers --------------------------------
Return-Path: <sackermann@mcguirewoods.com>
Received: from  rly-xn06.mx.aol.com (rly-xn06.mail.aol.com [172.20.83.119]) by air-xn03.mail.aol.com (v107.10) with ESMTP id MAILINXN32-75342f355c93c2; Fri, 05 Aug 2005 08:04:34 -0400
Received: from  mail.mcguirewoods.com (mail.mcguirewoods.com [65.246.71.32]) by rly-xn06.mx.aol.com (v107.10) with ESMTP id MAILRELAYINXN61-75342f355c93c2; Fri, 05 Aug 2005 08:04:25 -0400
Received: from cltexch.mwllp.dom ([172.16.12.31]) by mail.mcguirewoods.com with Microsoft SMTPSVC (6.0.3790.211);
   Fri, 5 Aug 2005 08:04:24 -0400
X-MimeOLE: Produced By Microsoft Exchange V6.5.7226.0
Content-class: urn:content-classes:message
MIME-Version: 1.0
Content-Type: multipart/related;
   type="multipart/alternative";
   boundary="----_=_NextPart_001_01C599B5.CF859262"
Subject: RE: Kincaid v. Bank of America
Date: Fri, 5 Aug 2005 08:04:19 -0400
Message-ID: <9DA9C7E8753F784883181B268CCBDD5201324CB7@cltexch.mwllp.dom>
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
Thread-Topic: Kincaid v. Bank of America

Thread-Index: AcWYJDyKDdsau4O1Q5Otyz+qVSyBtQBkUGbQ
From: "Ackermann, Steven T." <sackermann@mcguirewoods.com>
To: <DvdFine@aol.com>
X-OriginalArrivalTime: 05 Aug 2005 12:04:24.0774 (UTC) FILETIME=[D262AE60:01C599B5]
X-AOL-IP: 65.246.71.32
X-AOL-SCOLL-SCORE: 1:2:475796355:15032385
X-AOL-SCOLL-URL_COUNT: 1

# EXHIBIT 2

LAW OFFICES OF

# DAVID J. FINE

Three Center Plaza, Suite 400
Boston, Massachusetts 02108-2003

Tel: (617) 720-2942
Fax: (617) 720-0987
E-Mail: dvdfine@aol.com

By Telecopier (704) 373-8827
(Confirmed by Mail)

May 24, 2005

Steven T. Ackermann, Esq.
McGuire Woods LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, NC 28202-4011

Re:    Steven R. Kincaid v. Bank of America,
       Civil Action No. 04-11522-WGY

Dear Mr. Ackermann:

This letter pertains to Defendant's Responses to Plaintiff's First Set of Interrogatories to Defendant, and to Defendant's Responses to Plaintiff's First Requests to Defendant for Production of Documents, both served by defendant by mail on May 9, 2005. I believe defendant's responses are deficient in several respects, and am writing to request that defendant cure these deficiencies voluntarily, thus obviating the need for plaintiff to file a motion to compel.

Deficiencies in Defendant's Responses to Interrogatories

Plaintiff's interrogatories 2, 3 and 8 all seek information regarding defendant's termination of plaintiff, and defendant's responses to these interrogatories are all deficient

Contrary to defendant's objection to interrogatory 2, the phrase "participated in the decision to terminate plaintiff's employment" is not vague or ambiguous. "Participated" clearly means "played any part in," "had any input into," or "had any responsibility for." Defendant's decision to construe the interrogatory as being confined to inquiring about "individuals [who] were directly involved in the decision to terminate Plaintiff" (emphasis added) is a transparent attempt to avoid providing the information plaintiff clearly was asking for and to which plaintiff is plainly entitled. Accordingly, defendant must respond

Steven T. Ackermann, Esq
May 24, 2005
Page 2

further to this interrogatory, providing information about <u>all</u> persons who were "involved in the decision to terminate Plaintiff" directly, <u>indirectly</u> or <u>in any way whatsoever</u>.

Plaintiff's interrogatory 3 clearly asks for information regarding "<u>each</u> person to whom the reasons for defendant's termination were communicated," <u>not just</u> the plaintiff himself. It defies belief that the reasons for defendant's termination were somehow kept secret by Ms. Burroughs and Mr. Kotopoulos from other Bank personnel. Clearly, defendant must provide a further response to this interrogatory.

Interrogatory 8 calls upon defendant to "STATE THE BASIS for defendant's decision to terminate plaintiff's employment." As plaintiff stated explicitly in item 1 of the Definitions and Instructions section of his interrogatories, plaintiff put "certain defined words used in the interrogatories into all capital letters" to "help alert defendant to the applicability of the . . . definitions" in Local Rule 26.5(C). Local Rule 26.5(C)(8), entitled "State the Basis," provides:

> When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall
> (a) identify each and every document (and, where pertinent, the section, article or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;
> (b)    identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;
> (c)    state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and
> (d)    state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Clearly, defendant's response to interrogatory 8 does not begin to do what the interrogatory and Local Rule 26.5(C), require. Defendant must provide a further response.

Plaintiff's interrogatories 11-16 all ask for information clearly pertinent to plaintiff's claims of unlawful discrimination and retaliation. Further, in plaintiff's deposition on May 18, 2005, plaintiff's testimony demonstrated the background, and provided factual support, for the particular interrogatories he has propounded. Especially in light of this deposition testimony, plaintiff asks defendant to reconsider its blanket refusal to answer the interrogatories.

Steven T. Ackermann, Esq
May 24, 2005
Page 3

<u>Deficiencies in Defendant's Production of Documents</u>

  The dearth of documents produced by defendant in response to plaintiff's document
requests is, plaintiff believes, highly suspect. This dearth of documents prompts plaintiff to
raise the following points with particular urgency.

  <u>First,</u> defendant must provide plaintiff with a detailed privilege log

  <u>Second,</u> defendant must supplement its responses to plaintiff's document requests to
make it crystal clear (1) which documents defendant is withholding on grounds of privilege;
(2) which documents defendant is genuinely claiming never existed or no longer exist; and
(3) which non-privileged, existing documents defendant is simply declining to produce
because of some alleged ambiguity or overbreadth in plaintiff's document request. In
particular, defendant must provide supplementary responses to plaintiff's request numbers
10, 13, 20, 21 and 24 to make it clear whether defendant has, in fact, produced <u>all</u> non-
privileged documents within the scope of these requests or whether defendant has felt
relieved from the obligation to produce <u>all</u> such documents by something other than a
privilege it can and will assert in its privilege log.

  <u>Third,</u> defendant's objections to plaintiff's request numbers 15, 16, 17 and 18 should
be withdrawn for the same reason its objections to interrogatories 11-16, discussed above,
should be withdrawn.

  <u>Fourth,</u> defendant should produce the umbrella policy it identifies in response to
plaintiff request 1 but unaccountably fails to produce.

         Very truly yours,

         David J. Fine

# EXHIBIT 3

LAW OFFICES OF

# DAVID J. FINE

Three Center Plaza, Suite 400
Boston, Massachusetts  02108-2003

Tel: (617) 720-2942
Fax: (617) 720-0987
E-Mail: dvdfine@aol.com

By Telecopier:  (704) 373-8828
(Confirmed by Mail)

June 23, 2005

Richard F. Kane, Esq.
McGuire Woods LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, NC 28202-4011

       Re:    Steven R. Kincaid v. Bank of America Corporation
              Civil Action No. 04-11522-WGY

Dear Mr. Kane:

This is to follow up on:  (1) my May 24, 2005 letter to Steven T. Ackermann, a copy of which is enclosed, and (2) my telephone conversation with you on June 7, 2005.

Plaintiff continues to press each of the points made in my May 24, 2005 letter and in my June 7, 2005 telephone conversation with you.  In addition, plaintiff can now underscore and elaborate on these points with the assistance of the Eric Montgomery, Sheila Burroughs, Alec Kotopoulos, and Vipin Mayar deposition transcripts which plaintiff has received within the last week.

In response to Plaintiff's First Request to Defendant for Production of Documents, defendant produced a grand total of 56 pages of documents.  Especially in light of the above referenced depositions, it is clear that this production was woefully incomplete.  Plaintiff presses for further production on all fronts including, without limitation, the following:

    1.      E-mails.  All the deponents testified as to the widespread use and high frequency of e-mail communications, yet defendant has, to date, produced not a single e-mail.  Eric Montgomery testified that he was "sure" that the Bank has a backup system for e-mails (Montgomery Dep. 147); that people in the Bank's security department "could

Richard F. Kane, Esq.
June 23, 2005
Page 2

probably run some reports to see" whether any e-mails regarding Mr. Kincaid have been
preserved (id. at 148); and that Mr. Montgomery did not have enough knowledge to
determine whether any checking of the Bank's e-mail backup system had been done
regarding Mr. Kincaid (see id. at 148-49). Given the foregoing, plaintiff demands that a
further search for pertinent e-mails be made, including, without limitation, a thorough search
of all Bank back-up systems.

     2.     <u>Personnel Center and Human Resources documents</u>.  In her deposition, Sheila
Burroughs testified as to frequent communications she had regarding Mr. Kincaid with the
Personnel Center (see, e.g., 6/1/05 Burroughs Dep. 132-33).  Further, Eric Montgomery,
Alec Kotopoulos and Vipin Mayar all testified to the involvement or probable involvement
of the "personnel center," "HR" and "human resources" regarding the evaluation, coaching
and ultimate termination of Mr. Kincaid.  Yet apparently no, or very few, documents from
the Personnel Center, HR or human resources have been produced.  Clearly, a further search
of these potential sources of pertinent documents must be made.

     3.     <u>Handwritten Notes</u>.    The Bank has not produced so much as a single sheet
of handwritten notes.  Clearly such notes must exist.  A further search is required.

     4.     <u>BofA 17-23</u>.   As produced, these documents were unreadable.  Clearer
copies are required.

     5.     <u>Talent Planning Meeting documents</u>. Vipin Mayar testified that he held
"talent planning meetings, typically twice a year." Mayar Dep. 34-37.  Mr. Mayar also
testified that these were documents generated in connection with these meetings including,
without limitation, "grids" with the respective employee's name on each grid. Id. at 42-43.
Plaintiff Kincaid maintains that he is entitled to production of: (1) any talent planning
meeting documents that discuss, describe, mention or refer to Mr. Kincaid; and (2) all talent
planning meeting documents concerning or generated in connection with talent planning
meetings that took place during the time Mr. Kincaid was employed by the Bank.  Plaintiff
Kincaid is entitled to (2) as well as (1) because it is apparent that talent planning meeting
documents are pertinent to Mr. Kincaid's claim of unlawful discrimination.  In this regard, it
would clearly be relevant, for example, if Mr. Kincaid had <u>not</u> been discussed at a talent
planning meeting as a poor performer but was, nevertheless, placed on probation or
terminated within a short time after such a meeting.

     6.     <u>"Org Chart" documents</u>.     Alec Kotopoulos testified that the Bank had
'org charts," that everyone in CAMR had access to the CAMR org chart, and that "[a] lot of

Richard F. Kane, Esq.
June 23, 2005
Page 3

people had [org charts] on their walls." Kotopoulos Dep. 77-80. Further, Mr. Kotopoulos testified that an "org chart" was "a chart of the organization that you happen to be in and, you know, specific departments, specific people, specific roles, how it all breaks out." Id. at 78. In response to plaintiff's Document Request No. 14 seeking such org charts, defendant responded that it had "no such documents." Clearly, in light of Mr. Kotopolous's testimony, this response was inaccurate. Plaintiff demands production of: (a) all org chart documents within the scope of his document requests 13 and 14; and (b) all org chart documents that discuss, describe, mention or refer to Mr. Kincaid regardless of whether they are within the scope of these requests.

       7.    <u>"Poison Pen Letter" documents</u>.    Plaintiff's Document Request No. 19 requested production of "All documents CONCERNING letters critiquing an employee's job performance and sent to the employee's home by defendant at any time from November 1, 2002 through December 31, 2002." Defendant's March 9, 2005 Response to this Request stated, among other things, that defendant was "unaware of such documents." Plaintiff Kincaid requests that defendant make a further search. Plaintiff's Request was based on plaintiff's having heard, while employed at the Bank, that several employees (Mr. Kincaid recalls that it may have been as many as 13 employees) received such "poison pen letters at their homes" shortly before the holidays. Based on what he heard, Mr. Kincaid believes the recipients may have included Maggie Huggins, Bonnie Harrell and Herb Schaefer.

*           *           *

    Plaintiff believes that the time for defendant to supplement its previous, manifestly incomplete, production of documents and manifestly incomplete answers to interrogatories is already long overdue. Accordingly, plaintiff demands that defendant provide such supplementation without further delay.

                    Very truly yours,

                    David J. Fine

DJF/ejd
Enclosure

# EXHIBIT 4

**McGuireWoods LLP**
ank of America Corporate Center
100 North Tryon Street
Suite 2900
Charlotte, NC 28202-4011
Phone: 704.373.8999
Fax: 704.373.8935
www.mcguirewoods.com

Richard F. Kane
rkane@mcguirewoods.com

Direct Dial: (704) 373-8957
Direct Fax (704) 373-8828

# McGUIREWOODS

July 1, 2005

**Via FEDERAL EXPRESS**

David J. Fine, Esq.
Law Offices of David J. Fine
3 Center Plaza, Suite 400
Boston, Massachusetts 02108-2003

> Re:  *Steven R. Kincaid v. Bank of America Corporation*
> CA No. 04 CV 22633 (JLT)

Dear Mr. Fine:

In response to your letter of June 23, 2005, your contention that Defendant's responses to Plaintiff's discovery requests are inadequate is simply erroneous. First, it must be noted, many of your requests were objectionable based upon, *inter alia*, their overbreadth and vagueness. In light of your current posture, we believe such objections were entirely appropriate. For example, you have made much of the fact that not a single e-mail communication was produced to you in response to your discovery requests. You expressed surprise at this during the depositions of the Defendant's witnesses as well as in your most recent correspondence. Nevertheless, a review of your discovery requests reveals there is not a single specific request for the production of e-mail communications. While you might argue that your request for "all documents which discuss, describe, mention or refer to plaintiff" (RFP No. 8) would include all e-mail communications, we believe you would be mistaken. Defendant is entitled to and the rules require that you fashion your request to identify the documents sought with reasonable particularity. Your request does not specify an individual e-mail communication or even the category of communications other than those which describe, discuss, etc., the Plaintiff. Any attempt to locate such e-mail communications would involve searching a field which included every individual with whom Plaintiff interacted for a nine-month period of time. Such a requirement, even if your request could be considered to encompass it, would be overly burdensome and oppressive, particularly since you have not even attempted to narrow your request to relevant communications.

Turning to the specific demands in your letter of June 23, 2005, we respond as follows

E-MAILS – This is discussed above. Additionally, even if the Bank is able to locate backup tapes for the period covered by Plaintiff's employment, you will need to narrow your request to a more reasonable search. Further, absent unusual circumstances, we would expect Plaintiff to pay the costs of such a search.

2. <u>PERSONNEL CENTER AND HUMAN RESOURCES DOCUMENTS</u> – This request for unspecified documents suffers from the same infirmities as your e-mail request

Mr. Fine
July 1, 2005
Page 2

(i.e., lack of particularity).   Nevertheless, in light of the deposition testimony on this subject, we are producing documents in response to this request.

3.   HANDWRITTEN NOTES – This request is based upon pure speculation.  You must remember that the CAMR Group was a distinct group within the Corporation and was disbanded sometime after December 2003.  Unless the personal notes of managers made it into an official file prior to that person's departure, there would be no way to retrieve personal notes.  Nevertheless, we have located some personnel notes and will be producing them.

4.   BOA 17-23 – Assuming you are referring to the Bates numbers on the documents produced by Defendant, we are producing more legible copies for you.

5.   TALENT PLANNING MEETING DOCUMENTS – For the reasons stated above, the request, in its original form, was deficient and did not trigger the need to produce any talent planning documents.  Nevertheless, and without waiving our position on this or any of your other requests, we will produce those talent planning documents which mention or discuss Plaintiff.  We will not, however, produce any documents which discuss or mention other associates but not the Plaintiff.  Finally, we are not aware of nor have we discovered any notes reflecting discussions during the talent planning meetings.   In the event such notes referencing Plaintiff are located, we will supplement our response at that time.

6.   ORG CHART DOCUMENTS – The organizational charts referred to in the depositions are not documents created as a part of any official policy or practice of the Corporation.  We assume the ORG charts were documents created by and within the CAMR unit for its internal use.  We have located some ORG charts for that unit and will be producing copies in our supplemental responses.

7   POISON PEN LETTER DOCUMENTS – You will recall Defendant objected to this request and then indicated it was unaware of any such documents.  During the depositions of Defendant's witnesses you again inquired about these alleged letters, without identifying the recipients, and each deponent indicated a lack of awareness of any such letters.  You have now identified three individuals who allegedly received a letter but not one of those individuals is the Plaintiff.   We, therefore, do not understand the relevance of the documents or how they might lead to the discovery of admissible evidence, even if they exist.

With regard to our supplemental responses being served simultaneously with this letter, we provide some explanatory information.

The information provided in response to Interrogatories 11, 12, 13 and 15 reflects our best efforts to isolate and produce information on individuals within the groups identified.  For example, individuals working in the CAMR group may not have shared the same internal unit identifying code as others found in the same group.  We, therefore, identified the CAMR

Mr. Fine
July 1, 2005
Page 3

population using the organizational charts and included individuals not otherwise retrieved by using the common identifier.

In addition, because the information produced is highly sensitive and private, we have withheld individual names per our discussion and agreement. Personal identifiers are included which would permit the identification of individuals if it becomes necessary.

We are not including salary and promotion information on these same individuals as such matters are not at issue in this case.

With regard to Interrogatory No. 16(b), we are attempting to retrieve the information requested and will supplement the responses when, and if, it becomes available.

You will note we are not producing any information about complaints or charges of discrimination, retaliation or harassment. Among other bases, we take the position such requests are not relevant or likely to lead to the discovery of admissible evidence. Nevertheless, we are willing to work with you on this in the event you would agree to narrow the scope of your requests. Additionally, your requests need to be narrowed with regard to documents sought. For example, you certainly don't need the entire investigative file on each charge.

Attached hereto you will find copies of all medical records received from the health care providers identified by Plaintiff. If there are additional health care providers Plaintiff has consulted, please identify those individuals immediately.

Finally, per your request in your May 24, 2005 letter, be advised we have produced all responsive, non-privileged documents we have assembled at this point. Nevertheless, in addition to the information provided in our supplemental responses, we anticipate some additional information will be provided in the near future.

Sincerely yours,

McGuireWoods LLP

Richard F. Kane

RFK:crh

Attachments

# EXHIBIT 5

## Service Request Activity (All)

SIEBEL

| | | | | Closed |
|---|---|---|---|---|
| | | | Short Desc. | Perf Mgmt - Steven Kincaid |

| | | |
|---|---|---|
| Date Closed | 7/8/03 9:32:24 PM | |
| Application/Area | Gen Mgr. Consultation | (704) 386-6472 |
| | Disciplinary Counseling | Cust Ref No. |
| | AWARD | |

### Description

Sd focus on cust sat team.Sd they are w/in Marketing team,manage 2 studies.Sd mostly what Steve does is to have strategic ideas and influence people and how to look at cust satisfaction bsed on data
Sd they're very strategic & above product or channel level
Sd setting measurement cust sat for bank
Sd Steve's role is strategic & consulting & must influence people.
Sd she moved Steve to NC last Aug.Sd ws new to bank then.
Sd must do heavy consulting based on statsitcial knowledge & survey research
Sd hd 1st qtr rvw mtg & addrssd his hoshin plan.
Sd as rvwd highlighted what he wsnt doing as part of role
Sd he clearly undrstd tht consulting is main piece of role & not statistics
Sd Steve hs good stat skills.
Sd gave Steve her fdbk aftr Hoshin Plan.Sd since chng rating scales & tht

## Activities

| Date Opened | Created By | Assigned To | Activity | Status | Comment |
|---|---|---|---|---|---|
| 7/8/03 9:32:28 PM | AWARD | AWARD | Closed | Done | The service request has been closed. |
| 6/17/03 4:59:04 PM | AWARD | AWARD | Call - Outbound | Done | |
| 6/17/03 3:56:47 PM | STARAN | STARAN | Audit-Owner | Done | |
| 6/13/03 2:25:35 PM | AWARD | AWARD | Extended Description Cont. | Done | dscssd optns.mgr will term ee;dscssd sep. |

BofA-0111

**Service Request Activity (All)**  SIEBEL

## Activities

| Date Opened | Created By | Assigned To | Activity | Status | Comment |
|---|---|---|---|---|---|
| 6/13/03 12:55:37 PM | AWARD | AWARD | Call - Inbound | Done | 4/16 ee gven wrttn..mgr has tlkd to ee periodically gvg gngvd & neg fdbck..mgr sd 6/11 tlkd to ee let ee know he is not mkg it..cld see ee had tried but result mgr is expectg is not there..

mgr sd she knows ee heard.

mgr sd her mgr does not gve finals..sr mgr sd has termd others w/o gvg 2 wrttns..

mgr sd she & andrea decided to verbally warn ee on 6/11 in preparation for term on 6/13..mgr sd conv on 6/11 was like they were hvg it for first time agn..mgr sd ee just didnt get it..

mgr sd ee's 1st Qtr MYP was NI..then recvd wrttn in april..

mgr sd ee's skills are on level of junior analyst..wld never be lead person in a mtg..

mgr sd she cannot justify keeping ee in postn.

CONTD... |
| 6/11/03 1:15:39 PM | AMONTG | AMONTG | Call - Inbound | Done | ee tech skills exceptnl..consulting skills not evident..ee la responds for consulting ee presentd wtn couns in April..mgr plannd to present final wrtn couns today..in the last week ee has been having back trouble and had been going home early..not feeling well this morning..mgr was concernd that ee might have disability thoughts..mgr wants to term. |
| 6/11/03 1:15:31 PM | AMONTG | AMONTG | Reopened | Done | The service request has been reopened. |
| 4/17/03 3:13:20 PM | STARAN | STARAN | Closed | Done | The service request has been closed. |
| 4/17/03 3:10:39 PM | STARAN | STARAN | Call - Inbound | Done | Sheila left vm stating meeting w/ Steve where she delivered written counseling went okay.
Sd felt it ws somewhat of a surprise
Sd he seemed to undrstnd msg.Sd he hs nvr stated tht he dnt agree w/ fdbk.Sd he is earnest in wanting to respond & be successful.
Sd very professionally received. |
| 4/16/03 2:03:29 PM | STARAN | STARAN | Attachment | Done | An Attachment has been added to the service request. |

## Service Request Activity (All)

**SIEBEL**

### Activities

| Date Opened | Created By | Assigned To | Activity | Status | Comment |
|---|---|---|---|---|---|
| 4/16/03 2:03:15 PM | STARAN | STARAN | Attachment | Done | An Attachment has been added to the service request. |
| 4/16/03 2:03:02 PM | STARAN | STARAN | Attachment | Done | An Attachment has been added to the service request. |
| 4/10/03 6:36:52 PM | STARAN | STARAN | Call - Outbound | Done | vm to sheila to discuss docs sent |

4/11-Contd to trade vm's w/ Sheila.

4/15-Connected w/ Sheila
She sd hd weekly meeting w/ Steve last Wed.Sd he is trying.Sd she's documenting what he has to do.Sd he is actively going out and trying to meet w/ bus prtnrs & consult.
Sd in one particular topic-key driver topic-he is taking ownership.
Sd she sees some imprvmnt but when she looks at full picture,he's not close.
Sd he also sd he needed to bring strategic ideas.Sd he brought two but it ws exactly what was discussed in meeting previously & someone else ws wrkng on it.
Sd othr idea ws simply communication doc tht if hd ownership of key drivers wd hv bn done.
Sd not strategic.
Sd on Loyalty project,he's moving it frwrd & hs some pretty good ideas but hsnt done ldrshp things like setting up mtgs w/ prtnrs he nds to meet w/
Sd he's struggling w/ simple tools-mapping out & executing process- he nds to create to do project
Sd gave Steve simple task whch he did right away,very simple-cust of bank askdfor some stuff.Sd he was way off & she is having to redo it.
Gave ex of identifying financial gain tied to cust sat scores.Sd he isnt able to figure out who to bring together to accomplish
Discussed verbiage in writt counseling.Advsd to give MYP results&couns

BofA-0113

## Service Request Activity (All)



## Activities

| Date Opened | Created By | Assigned To | Activity | Status | Comment |
|---|---|---|---|---|---|
| 4/8/03 7:33:09 PM | STARAN | STARAN | Extended Description Cont. | Done | w/ presentation in steering committee mtg & he left mtg early.Sd dsnt know why yet.Sd he did okay in presentation.<br>Sd she hd tld him in Q1 fdbk tht he needed to influence this steering committee.<br>Sd she's concerned<br>Sd dsnt take project from conception to completion.Sd hs issues w/ initiative,influencing,ldrshp.<br>Discussed tht they meet every Wednesday.Sd tht she shd put together bullet points & examples<br>Sheila will email her Q1 hoshin plan for Steve and list of issues for assistance in putting into right words.<br>Sheila-704/386-6472 |

BofA-0114

**Service Request Activity (All)**  **SIEBEL**

## Activities

| Date Opened | Created By | Assigned To | Activity | Status | Comment |
|---|---|---|---|---|---|
| 4/8/03 7:06:06 PM | STARAN | STARAN | Extended Description Cont. | Done | she rated nds improvement<br>Sd tht she dnt hv good doc for 4th qtr and ws more here are your goals & not how you're doing against it.Sd ws rated solid then<br>Sd her mgr Alec Kotoupolis,is ready to move frwrd quickly<br>Sd Alec hs cleaned house since took ovr group in Dec<br>Sd hd 1st qtr rvw abt 2 weeks ago.<br>Sd gave list of where he is doing okay & where he is not doing well.<br>Sd while rvwd Hoshin goals addrssd places where he hdnt met expectations.<br>Sd drew picture w/ 3 lines to indicate where he needed to be whch ws in consulting instd of statistical.<br>Sd need to be able to take key drivers from various sources and pull them together & defining direction<br>Set Steve is suposed to take all surveys,define stdrd & rate surveys on whether meeting stdrd & what nd to do to get w/in stdrd.<br>Sd he developed stdrd okay but cant get him to draw picture of who's in strd or not,let alone what plan is to get w/in stdrd.Sd she drew example & what he gave her back wsnt even close to logical organization<br>Sd thinks issue is bad fit.Sd thinks he's statistician.Sd Steve hs sd dsnt mind being person in cube running numbers.<br>Sd when Sheila became involved in one of his 2 projects,sd Steve is hvng trouble undrstndng tht she nds to be involved in all projects.<br>Sd since Q1 she hs become convinced tht despite Steve's efforts<br>Sd ex. is aftr 7 mnths,cant navigate org.Sd if she says to put together commun plan of who nds to know what he just put together,he cnt do it.<br>Sd aftr Q1 fdbk,sd she tasked him |
| 4/8/03 7:06:02 PM | STARAN | STARAN | Audit-Owner | Done | |

BofA-0115

# EXHIBIT 6

DEPOSITION OF ERIC MONTGOMERY

PAGE 1  SHEET 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO. 04-11522-WGY

STEVEN R. KINCAID,                  )
                                    )
          PLAINTIFF,                )
                                    )
   VS.                              )
                                    )
BANK OF AMERICA                     )
CORPORATION,                        )
                                    )
          DEFENDANT.                )
                                    )

DEPOSITION

OF

ERIC A. MONTGOMERY

AT CHARLOTTE, NORTH CAROLINA

JUNE 1, 2005

REPORTER: IRA ANDERSON
          NOTARY PUBLIC

---

PAGE 2

Mr. Montgomery                                               2

A P P E A R I N G

FOR THE PLAINTIFF:      Mr. David J. Fine
                        LAW OFFICES OF DAVID J. FINE
                        Three Center Plaza, Suite 400
                        Boston, Massachusetts 02108-2003

FOR THE DEFENDANT:      Mr. Richard T. Kane
                        McGUIRE WOODS, L.L.P.
                        Suite 2800
                        Bank of America Corporate Center
                        100 North Tryon Street
                        Charlotte, North Carolina 28202

IN ATTENDANCE:          Mr. Steven R. Kincaid
                        * * * * *

I N D E X

                                                           PAGE
Examination by Mr. Fine                                      5
Examination by Mr. Kane                                    138
Further Examination by Mr. Fine                            141
Further Examination by Mr. Kane                            146
Further Examination by Mr. Fine                            146

E X H I B I T S

PLAINTIFF'S:

No. 1              Copy of Letter dated            44
                  4/25/03 to Mr. Alphin
                  from Ms. Norcross

No. 2              Copy of Letter dated            54
                  4/30/03 to Ms. Norcross
                  from Mr. Montgomery

No. 3              Copy of Letter dated            68
                  5/30/03 to Mr. Montgomery
                  from Ms. Norcross

Miller Reporting Services
(704) 543-7103

---

PAGE 3

Mr. Montgomery                                               3

E X H I B I T S
(continued)

PLAINTIFF'S:

No. 4              Copy of Letter dated            84
                  7/22/03 to Ms. Norcross
                  from Ms. Moore

No. 5              Copy of Letter dated           100
                  9/8/03 to Ms. Barnett
                  of the EEOC from Mr. Noble

No. 6              Copy of Bank of America        108
                  Sexual Harassment &
                  Discrimination Policy

Miller Reporting Services
(704) 543-7103

---

PAGE 4

Mr. Montgomery                                               4

1          This is the deposition of Eric A. Montgomery,
2     taken in accordance with the Federal Rules of Civil
3     Procedure in connection with the above case.
4          Pursuant to Notice, this deposition is being
5     taken in the offices of Hamilton, Fay, Moon, Stephen,
6     Steele & Martin, P.L.L.C., 2020 Charlotte Plaza,
7     201 South College Street, Charlotte, North Carolina,
8     beginning at 9:02 a.m. on June 1, 2005, before Ira
9     Anderson, Notary Public.
10
11              MR. FINE:  This deposition is
12          being taken in accordance with
13          the Federal Rules of Civil
14          Procedure.
15              MR. KANE:  Before we begin I
16          want the record to reflect that
17          by presenting Mr. Montgomery
18          for his deposition here, we are
19          not waiving any privilege as to
20          his role as assistant general
21          counsel for Bank of America,
22          including attorney-client and
23          work product privileges.  Okay.
24
25          Eric A. Montgomery, upon first being duly

Miller Reporting Services
(704) 543-7103

DEPOSITION OF ERIC MONTGOMERY

Mr. Montgomery                                    49

1        any explanation?
2    A.  That could very well happen, yes.
3    Q.  All right.  Okay.  So you believe that you got
4        this letter from Mr. Hoffman?
5    A.  I mean, I have no recollection of where it
6        came from.
7    Q.  Okay.  If it didn't come from Mr. Hoffman, do
8        you have any idea how else it might have
9        gotten to you?
10   A.  I mean, given the fact of where it went to, it
11       probably came from Mr. Hoffman, or it could
12       have come from Mr. Alphin's office if he had
13       called Mr. Hoffman to ask where it should go.
14   Q.  Okay.  When Mr. Hoffman sent you things in
15       2003, did he usually accompany them with an
16       e-mail?
17   A.  No.
18   Q.  Okay.  What is the first thing that you recall
19       doing when you received this letter?
20   A.  I probably read it.
21   Q.  Okay.  Did you open a file?
22   A.  Ultimately, yes.
23   Q.  Okay.  You used the word ultimately.  Why do
24       you use the word ultimately?
25   A.      may not have opened it the very day I got

Mr. Montgomery                                    50

1        it, but I opened a file.
2    Q.  Okay.  But it was your practice in 2003 that
3        when you received a letter like this, that you
4        and your paralegal promptly opened a file?
5    A.  More than likely.
6    Q.  And it would have been your practice to open a
7        file within a day or two of receiving this
8        letter?
9    A.  Possibly.
10   Q.  Okay.  You received this letter, you believe
11       that you read it, you believe that you opened
12       a file, correct?
13   A.  Yes.
14   Q.  What else did you do?
15   A.  Prepared a short response to make them aware
16       of where they should send future
17       communication.
18   Q.  Did you do anything else?
19   A.  In terms of what?
20   Q.  Well, one of the things that we talked about a
21       short while ago was notifying people in the
22       business unit affected.  Did you do that?
23   A.  I don't recall.
24   Q.  You don't recall whether you did or not?
25   A.  That's correct

Mr. Montgomery                                    51

1    Q.  Would you agree with me that, according to
2        your practice at the time, that's what you
3        should have done?
4    A.  I don't know if I would say should have done,
5        but that's what we try to do.
6    Q.  Okay.  And your practice in April 2003 would
7        have been to notify people in the business
8        unit affected by e-mail, correct?
9    A.  Yes.
10   Q.  Okay.  Now, looking at this letter, you see
11       that there is a reference to Mr. Kincaid's
12       immediate supervisor?
13   A.  Yes.
14   Q.  Sheila Burroughs?
15   A.  Right.
16   Q.  Is the immediate supervisor somebody that you
17       have, it would have been your practice to
18       notify of a letter like this?
19   A.  Yes.
20   Q.  Okay.  Do you recall discussing this letter
21       with Ms. Burroughs?
22   A.  At some point in time.
23   Q.  When you first discussed this letter with
24       Ms. Burroughs, where were you?
25   A.  I believe in a conference room.

Mr. Montgomery                                    52

1    Q.  Who else was present in the conference room?
2    A.  My paralegal and another gentleman who worked
3        for the bank.  I believe it was Alec
4        Kotopoulos, I believe.
5    Q.  What was the name of your paralegal in April
6        of 2003?
7    A.  Martha Moore.
8    Q.  Was Martha Moore your paralegal throughout
9        2003?
10   A.  Yes.
11   Q.  Is she still your paralegal today?
12   A.  She's part of a team of paralegals, yes.
13   Q.  Okay.  All right.  When you had this meeting
14       with Alec Kotopoulos, Sheila Burroughs, and
15       your paralegal, Martha Moore, was it before or
16       after Mr. Kincaid had been terminated?
17   A.  It was after.
18   Q.  What was the occasion for the meeting?
19   A.  We were trying to get all the information to
20       provide an accurate response to the letter.
21       It was for us to better understand the --
22   Q.  I'm sorry?
23   A.  To better understand the circumstances.
24   Q.  All right.  And was a response to this letter
25       sent?

DEPOSITION OF ERIC MONTGOMERY

PAGE 53

Mr. Montgomery                                    53

1   A.   No.
2   Q.   Why not?
3   A.   Because an EEOC charge was filed.
4   Q.   So do I understand correctly that you had this
5        meeting planning to respond to this letter,
6        but that before you could send the response to
7        the letter, an EEOC charge was filed?

8   A.   That's correct.
9   Q.   Okay.  This meeting that you had with Alec
10       Kotopoulos and Sheila Burroughs, who initiated
11       the meeting?
12  A.   I did.
13  Q.   What caused you to initiate the meeting?
14  A.   The letters from the attorney.
15  Q.   All right.  Well, do you recall when it was
16       that Mr. Kincaid was terminated?

17  A.   I'm not sure.
18  Q.   What was said in this meeting with Alec
19       Kotopoulos and Sheila Burroughs and your
20       paralegal?
21            MR. KANE:  Objection; attorney-
22       client.
23            MR. FINE:  You're directing the
24       Witness not to answer?

25            MR. KANE:    am.

                    Miller Reporting Services
                       (704) 543-7103

PAGE 54

Mr. Montgomery                                    54

1            MR. FINE:  I'd like to have
2        marked the next exhibit, pages
3        Bates marked KI-18 through 20.
4        (Whereupon, Plaintiff's Exhibit
5        Number 2 was marked and
6        identified for the record.)
7   Q    Do you recognize this document?

8   A    (Witness reviews document.)  Yes.
9   A    What is it?
10  A    It's a letter.
11  Q    Is that your signature that appears --
12  A    Yes.
13  Q    Okay.  And this is a letter that you sent to
14       Mr. Kincaid's attorney, Deborah Martin
15       Norcross, by fax and mail on April 30, 2003?
16  A    Yes.

17  Q    I direct your attention to the second sentence
18       in this letter.
19  A    Okay.
20  Q    I'm going to read it for the record and then I
21       have some questions for you.  "We are
22       investigating the facts and circumstances of
23       your client's claims and will respond to your
24       letter shortly."

25            Have   read that correctly?

                    Miller Reporting Services
                       (704) 543-7103

PAGE 55

Mr. Montgomery                                    55

1   A.   Yes.
2   Q.   Was that true?
3   A.   What do you mean, was it true?
4   Q.   Well, you wrote that sentence, right?
5   A.   Yes.
6   Q.   You signed it?
7   A.   Yes.

8   Q.   Was it true?
9   A.   It was our intent.
10  Q.   I'm sorry?
11  A.   It was our intent.
12  Q.   Well, by answering it that way,
13       Mr. Montgomery, are you acknowledging that it
14       wasn't true?
15            MR. KANE:  Objection.
16       Argumentative.

17  A.   It's a sentence that we put to let people know
18       we are going to investigate their claim.
19  Q.   Well, Mr. Montgomery, you are an attorney,
20       right?
21  A.   Yes.
22  Q.   You've been practicing for, what, 15 years,
23       over 15 years?
24  A.   Roughly.
25  Q.   Okay.  You know that it's important to be

                    Miller Reporting Services
                       (704) 543-7103

PAGE 56

Mr. Montgomery                                    56

1        precise in legal matters, right?
2   A.   Yes.
3   Q.   Were you being precisely truthful in that
4        sentence?
5            MR. KANE:  Object to the form.
6   A    I don't -- I'm not quite understanding what
7        you're saying.

8   Q    Are you saying, Mr. Montgomery, that you can't
9        answer the question that I asked you?
10  A    I need you to clarify what do you mean.
11  Q    And without my clarifying it, you can't answer
12       it, right?
13  A.   I can't say that.
14  Q.   Well, can you answer my question without my
15       clarifying it or not?
16  A.   Can you clarify it?

17  Q.   I take that that your answer is no, right?
18  A.   I didn't say no.  I asked you to clarify.
19  Q.   If you don't need me to clarify it, can you
20       answer my question?
21  A    What is your question again?
22  Q    Is that precisely truthful?
23            MR. KANE:  Object to the form.
24  A    I don't know how to answer that question.
25  Q    Okay.  You say in that sentence, we are

                    Miller Reporting Services
                       (704) 543-7103

DEPOSITION OF ERIC MONTGOMERY

Mr. Montgomery                                        57

1    investigating the facts and circumstances of
2    your client's claims, right?
3  A.  Yes.
4  Q.  What had you done as of April 30, 2003, to
5    investigate the facts and circumstances of
6    Mr. Kincaid's claims?
7  A.  I don't recall.

8  Q.  When you say that you don't recall,
9    Mr. Montgomery, do you mean to say that you
10   might have done something to investigate the
11   facts and circumstances of his claims, you
12   just don't remember what it was?
13 A.  Yes.
14 Q.  Okay. Is one of the things that you might
15   have done to investigate the facts and
16   circumstances of his claims to telephone

17   Sheila Burroughs?
18 A.  I don't recall calling Sheila at this time.
19 Q.  Well, wouldn't that have been the first thing
20   to do to investigate the facts and
21   circumstances of his claim?
22 A.  Not necessarily.
23 Q.  Well, Sheila Burroughs was his direct
24   supervisor, right?
25 A.  Yes.

Mr. Montgomery                                        58

1  Q.  The letter is filled with claims about Sheila
2    Burroughs, right?
3  A.  Yes.
4  Q.  As an experienced attorney, wouldn't that have
5    been your number one priority?
6  A.  Not necessarily.
7  Q.  What would have been your number one priority

8    if not that?
9  A.  I don't know if there would have been a number
10   one priority.
11 Q.  Okay. Tell me all the things you might have
12   done to investigate the facts and
13   circumstances of Mr. Kincaid's claims as of
14   April 30, 2003.
15 A.  Probably one of the first things I would have
16   done is to contact the personnel center to see
17   if had made any allegations there and see if
18   there were any records of any kind of claim
19   there; that's probably the first thing that
20   would have occurred. I can't say that it
21   occurred then. I'm not sure. I don't know.
22 Q.  Do you really not know?
23 A.  I really don't know.
24 Q.  If you had contacted the personnel department,
25   would you have made some record of that in the

Mr. Montgomery                                        59

1    file?
2  A.  Probably not.
3  Q.  Who in the personnel department would you have
4    contacted?
5  A.  No one in particular. It's an 800 number.
6    You can call any number of personnel people
7    there to get information.

8  Q.  Well --
9  A.  There is no particular person.
10 Q.  Well, this was a complaint that you got in
11   April of 2003, right?
12 A.  Yes.
13 Q.  Okay. You say in this letter, we are
14   investigating the facts and circumstances,
15   right?
16 A.  Yes.

17 Q.  You said that one of the things that you might
18   have done is call the personnel department,
19   right?
20 A.  Yes.
21 Q.  Who would you have called?
22 A.  Any number of maybe one of twenty people.
23 Q.  It could have been any of 20 people?
24 A.  Yes.

25 Q.  Sitting here today you don't know which one of

Mr. Montgomery                                        60

1    those 20 people you would have called?
2  A.  No.
3  Q.  And why, why --
4  A.  Because there wasn't, there is no uniform
5    person to call.
6  Q.  Well, how would you have determined the right
7    person to call?

8  A.  There is no right or wrong person. They all,
9    they have access to the same information.
10 Q.  And when you say they have access to the same
11   information, does that mean that there is some
12   database of complaints that they maintain?
13 A.  Yes.
14 Q.  Okay. And when you got this letter, did you
15   make sure that this letter went into their
16   database?

17 A.  This letter would not go into their database.
18 Q.  Why not?
19 A.  It's not our practice.
20 Q.  Is it your practice today?
21 A.  No.
22 Q.  Even under the new system?
23 A.  No.
24 Q.  Well, isn't it important in implementing the
25   bank's policy against discrimination to

Mr. Montgomery                                113

1              MR. KANE:  To which I objected.
2              MR. FINE:  Right, but he
3         answered it nonetheless.
4              MR. KANE:  Okay.
5    Q.   So the ladies and gentlemen of this jury,
6         Mr. Montgomery, would like a clear and
7         forthright statement from you as to whether

8         the bank violated its policy or not.  Can you
9         tell them, please?
10             MR. KANE:  Objection.
11   A.   We conducted an investigation.  It was,
12        unfortunately, late.
13   Q.   At what point did you realize that the bank
14        had made a mistake in its handling of
15        Mr. Kincaid's case?
16             MR. KANE:  Objection.  You're

17        talking with regard to the
18        investigation?
19             MR. FINE:  Right.
20   A.   I guess it would have occurred when I got
21        information that he had been terminated.
22   Q.   Right.  And upon getting that information, did
23        you do anything to try to remedy the fact that
24        the bank had violated its policy?

25   A.   I think we talked about that before.  I

                        Miller Reporting Services
                             (704) 543-7103

Mr. Montgomery                                114

1         think -- I can't recall what I did, but we
2         took some actions.
3    Q.   Okay.  Did you give notice of any of those
4         actions to Mr. Kincaid himself?
5    A.   I would not have done that.
6    Q.   Well, what is the good of taking action unless
7         the victim of the action is notified?

8    A.   Notified when?  I mean, shortly after he was
9         terminated he filed an EEOC charge.  It put it
10        into a different form at that point.
11   Q.   Yes.  And did the bank acknowledge to the EEOC
12        that it had violated its policy?
13             MR. KANE:  Objection.
14   A.   I don't think so.  I don't think -- no.
15   Q.   Right, they didn't, the bank didn't.  So what
16        happened here was a double wrong.  First of

17        all, the bank violated its policy, and second
18        of all, the bank has refused to admit it,
19        right?
20             MR. KANE:  Objection.  Don't
21        answer that.
22   Q.   Now, the Bank of America has a policy with
23        regard to the destruction of e-mails, right?
24   A.   I'm certain that it does.
25   Q.   Are you familiar with what that policy is?

                        Miller Reporting Services
                             (704) 543-7103

Mr. Montgomery                                115

1    A.   I'm somewhat familiar.
2    Q.   What is it?
3    A.   Specifically, what are you asking me?
4    Q.   Well, does the bank permit the destruction of
5         e-mails on a routine basis?
6    A.   I think e-mails are purged from our system
7         within a certain period of time.

8    Q.   Okay.  And do you know what that period of
9         time is?
10   A.   I think it's 90 days, I believe, yes.
11   Q.   Okay.  Now, in your experience at the bank, in
12        all the investigations that you have
13        participated in regarding claims of
14        discrimination, have you ever examined
15        e-mails?
16   A.   I'm sure I may have.

17   Q.   And the bank conducts a lot of internal
18        communications by e-mail, right?
19   A.   Yes.
20   Q.   Okay.  So if it's going to conduct a thorough
21        investigation of a claim of discrimination,
22        one of the things the bank has got to do is to
23        examine e-mails, right?
24   A.   That might be a part of the investigation.
25   Q.   Sure, because sometimes the evidence of the

                        Miller Reporting Services
                             (704) 543-7103

Mr. Montgomery                                116

1         discriminatory intent could be in an e-mail,
2         right?
3    A.   Possibly.
4    Q.   Okay.  So does the bank have a policy or a
5         practice that when a claim of discrimination
6         is made, that people have to be notified, do
7         not destroy your e-mails regarding this

8         person?
9    A.   I don't know if there is a policy that exists
10        particularly to discrimination claims.
11   Q.   Well, if the bank doesn't have that policy or
12        practice, shouldn't it have?
13             MR. KANE:  Objection.
14   A.   I mean, I think it has a policy in terms of
15        the destruction of e-mails, but I don't know
16        if it's particular to discrimination claims,

17        is all I'm saying.
18   Q.   I understand that.  But what I'm saying, what
19        I'm asking, what I'm trying to get at is, the
20        bank has this policy that says when claims of
21        discrimination are made, we at the bank
22        conduct a thorough investigation?
23   A.   Yeah.
24   Q.   And you agreed with me a moment ago that one
25        of the things that needs to be done when a

                        Miller Reporting Services
                             (704) 543-7103

# EXHIBIT 7

## Kotopoulos, Alec

**From:** Kotopoulos, Alec
**Sent:** Monday, August 18, 2003 3:54 PM
**To:** Janak, Elizabeth
**Subject:** RE: 8/19 meeting

Elizabeth--thanks for the info--as for associates on perf improvement--I don't have any

Over the past 12 months--we've had three buckets--those whom were terminated, those whom were part of a job elim--and those whom resigned from the bank...

Details are as follows:

Terminations: craig judici (not sure of age--maybe in his 40's), herb schaffer (in his 60's), steve kincaid (in his 50's, alan fitch (probably in his 40's),

job eliminations--brent lewis (whom was in his 60's and asked us to give him a package--health reasons, many yrs with the firm, julie chow--probably in her 30's, garth miner--in his 20's

resignations--cindy maggs and vel kurjacovic--quit voluntarily--both were on perf warning (not sure of age w/cindy--vel is in his 50's)

others--maggie huggins was on warning but left to go to another part of the bank--e commerce

I hope this helps

ak

p.s..-> can you send the final talent planning grids for band 4 and 5 for CAMR--I need to be prepared to have discussions with y associates-especially given your mention to associates at CB's mtg on Friday--Vipin mentioned that you have them.

-----Original Message-----
From: Janak, Elizabeth
Sent: Monday, August 18, 2003 3:27 PM
To: Kotopoulos, Alec
Subject: 8/19 meeting

Alec,
    For our meeting on Tuesday, I'd like to discuss the following:
- Associates who are on performance improvement
        - Who?
        - Why?
        - Actions
        - Timeframe
- Terminations over the past 12 months
        - B4-B5 voluntary and involuntary terminations over the past 12 months suggest potential age bias - - 8/10 (80%) were 40 yrs or older.

-Elizabeth

BofA-0116



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 04-CV-11522 (WGY)


STEVEN R. KINCAID,

Plaintiff,

v.

BANK OF AMERICA CORPORATION,

Defendant.


E-mails Produced by Defendant (on 7/1/05)

| Date and Time | From | To | Bates No. |
| --- | --- | --- | --- |
| 8/30/02, 11:05 a.m. | Steven Kincaid ("SK") | Sheila Burroughs ("SB") | BA 97 |
| 9/4/02, 3:47 p.m. | Victorine A. Charles (Gartner) | Vele Galovski | BA 94-95 |
| 9/5/02, 7:05 a.m. | Vele Galovski | SB | BA 93 |
| 9/5/02, 12:05 p.m. | SK | SB | BA 96 |
| 9/5/02, 8:32 | SB | SK | BA 93 |

Kincaid/Bank of America
E-mails Produced by Defendant
Page 1

| Date and Time | From | To | Bates No. |
|---|---|---|---|
| p.m | | | |
| 9/5/02, 8:52 p.m. | SB | SK | BA 96 |
| 9/6/02, 8:03 a.m. | SK | SB | BA 96 |
| 9/6/02, 8:40 a.m. | SK | SB | |
| 9/9/02, 10:57 a.m. | R. Scott Chatham ("RSC") | Kathryn Little ("KL") | BA 59-60 |
| 9/9/02, 4:22 p.m. | KL | RSC; Richard McFarland ("RM") | |
| 9/9/02, 4:27 p.m. | RM | KL | BA 59 |
| 9/10/02, 9:13 a.m. | Perfecto Menor | SK; RM; and Susan Haloulos ("SH") | BA 63-64 |
| 9/10/02  2:06 p.m. | SK | SB and SH | BA 63 |
| 9/12/02, 4:10 p.m. | SB | SK; Paul Rubenstein; Mack Turner; Leroy Leiker; Anna Chiao; Allison Hart; Bill Lassill; Brent Lewis; Jim Henney; Craig Giudici; Cheri Jackson; Maggie Huggins; and Tim Megyesy | BA 62 |
| 9/13/02, 8:50 a.m. | SK | SB | BA 62 |
| 9/13/02   7 p.m. | SK | SB | |
| 9/16/02, 8:27 | KL | SB; Mike Mosher | BA 58 |

| Date and Time | From | To | | Bates No. |
|---|---|---|---|---|
| a.m. | | | | |
| 9/19/02, 10:19 a.m. | SB | SK | | BA 58 |
| 9/19/02, 10:55 a.m. | SK | SB | | BA 58 |
| 9/24/02, 7:51 a.m. | Susan Haloulos ("SH") | SK; SB | | BA 57 |
| 9/24/02, 8:12 a.m. | SB | SH | | BA 57 |
| 9/24/02, 9:06 a.m. | SK | SB | | BA 57 |
| 10/7/02, 8:39 a.m. | Renee Porter ("RP") | SB | | BA 143-144 |
| 10/17/02, 4:06 p.m. | RP | SB | | BA 143 |
| 4/2/03, 5:14 p.m. | Alan Church ("AC") | Anthony Aldrich; Hugh Maddox; Sherry Woodall; Cynthia Dunn; Ken Fulkerson; Dustin Boyd; Jeri Leach; Gary Dolle; Marina Theodotou; Debra Waite; Elmer Pritchett; Denny McGuffin; Fred Ott; Mary Moritz; John Muller; John Winslow ("JW"); John Fults; Kimberly Hinton; Meg McRee; Jonathan Skvoretz; Lingling Lim; Dwight Obal; Greg Ogden; Eric McConnell; Lynda Kerr | | BA 137 |

| Date and Time | From | To | Bates No. |
|---|---|---|---|
| 4/2/03, 5:17 p.m. | AC | SK | BA 137 |
| 4/3/03, 9:28 a.m. | SK | AC | BA 137 |
| 4/3/03, 9:41 a.m. | AC | SK; SB; and JW | BA 137 |
| 5/20/03, 4:04 p.m. | Melinda Denton | Marni Zea Clippinger ("MC") | BA 163 |
| 5/21/03, 11:01 a.m. | MC | SK | BA 163 |
| 8/18/03, 3:27 p.m. | Elizabeth Janak ("EJ") | Alec Kotopoulos ("AK") | BA 16 |
| 8/18/03, 3:54 p.m. | AK | EJ | BA 16 |

Kincaid/Bank of America
E-mails Produced by Defendant
Page 4

**EXHIBIT 9**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Steven Kincaid v. Bank of America Corp.**<br>**NO. 04 CV 11522 (JLT)**<br>**Privilege Log** | | | | | | |
| | | | | | | **As of: July 1, 2005** |

| TYPE OF DOCUMENT | BATES NO. | DATE | PREPARER | RECIPIENTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|---|
| Charge of Discrimination Worksheet | N/A | 07/28/03 | Mark Noble (Employee Relations Case Manager, working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | | Worksheet regarding response to Plaintiff's EEOC charge | Attorney-client and Work Product |
| Correspondence | N/A | 07/28/03 | Eric A. Montgomery (Bank of America In-house legal counsel) | Mark Noble (Employee Relations Case Manager, working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | Letter regarding investigation of Plaintiff's EEOC charge | Attorney-client and Work Product |
| E-mail | N/A | 07/28/03 | Mark Noble (Employee Relations Case Manager, working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | Martha W. Moore (Paralegal working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | E-mail regarding investigation of Plaintiff's EEOC charge | Attorney-client and Work Product |

| Facsimile | N/A | 07/28/03 | Martha W. Moore (Paralegal working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | Susan Gray, Ombudsman, Bank of America | Facsimile regarding Plaintiff's EEOC charge | Attorney-client and Work Product |
|---|---|---|---|---|---|---|
| Typewritten Notes | N/A | 08/19/03 | Mark Noble (Employee Relations Case Manager, working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | | Typewritten notes from interview with Alec Kotopoulos related to Plaintiff's EEOC charge | Attorney-client and Work Product |
| Typewritten Notes | N/A | 08/18/03 | Mark Noble (Employee Relations Case Manager, working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | | Typewritten notes from interview with Shelia Burroughs related to Plaintiff's EEOC charge | Attorney-client and Work Product |
| E-mail Chain | N/A | 09/08/03 | Mark Noble (Employee Relations Case Manager, working at the direction of Eric Montgomery, Bank of America In-house legal counsel); Alec Kotopoulos | Mark Noble (Employee Relations Case Manager, working at the direction of Eric Montgomery, Bank of America In-house legal counsel); Alec Kotopoulos | Email chain between Alec Kotopoulos and Mark Noble regarding Plaintiff's EEOC charge | Attorney-client and Work Product |

| E-mail | N/A | 07/15/03 | Eric A. Montgomery, (Bank of America In-house legal counsel); Shiela Burroughs | Eric A. Montgomery (Bank of America In-house legal counsel); Martha W. Moore (Paralegal working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | Email with attachment from Sheila Burroughs to Eric Montgomery | Attorney-client and Work Product |
| --- | --- | --- | --- | --- | --- | --- |
| Handwritten Notes | N/A | 07/10/03 | Martha W. Moore (Paralegal working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | N/A | Notes from meeting between Eric Montgomery, Sheila Burroughs, Alec Kotopoulos on 7/10/03 | Attorney-client and Work Product |
| Handwritten Notes | N/A/ | 08/2002 | Martha W. Moore (Paralegal working at the direction of Eric Montgomery, Bank of America In-house legal counsel) | N/A | Handwritten notes regarding meeting between Eric Montgomery Sheila Burroughs, Alec Kotopoulos | Attorney-client and Work Product |
| Handwritten Letter | N/A | 07/18/03 | Sheila Burroughs | Eric A. Montgomery (Bank of America In-house legal counsel) | Handwritten correspondence from Sheila Burroughs to Eric Montgomery | Attorney-client and Work Product |
| Typewritten Memorandum | N/A | 07/15/03 | Sheila Burroughs | Eric A. Montgomery (Bank of America In-house legal counsel) | Typewritten memorandum regarding Plaintiff prepared by Sheila Burroughs at the request of Eric Montgomery | Attorney-client and Work Product |