UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
NO. 04 CV 11522 (JLT)

_____
                                        )
STEVEN R. KINCAID,                      )
                                        )
          Plaintiff,                    )
                                        )
     vs.                                )
                                        )
BANK OF AMERICA CORPORATION,            )
                                        )
          Defendant.                    )
_____)

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS, AND DEFENDANT'S REQUEST FOR ORAL ARGUMENT

Defendant, Bank of America Corporation ("Bank of America" or "the Bank") hereby submits this Memorandum in Opposition to Plaintiff's Motion to Compel Discovery and For Sanctions. **Additionally, Defendant respectfully requests the opportunity to present oral argument to the Court on this motion.**

## STATEMENT OF THE CASE

Plaintiff alleges in this action that Defendant terminated him on the basis of his age in violation of 29 U.S.C. § 621 et seq. and retaliated against him in violation of 29 U.S.C. § 623(d). Plaintiff also alleges that his discharge was in violation of North Carolina public policy and constituted a breach of the implied covenant of good faith and fair dealing.

## STATEMENT OF FACTS

In or around February 2002, Bank of America sought to hire a Market Information Manager within its Customer Analysis Modeling and Research ("CAMR")

Department in Charlotte, North Carolina.  (Burroughs Dep. vol. I  pp. 13-14)[1].  The Bank
was looking for a candidate with the ability to complete complex marketing measurement
and research, who also had the ability to think strategically and to influence senior level
managers.   (Burroughs Dep. vol. I   pp. 13-21).    Plaintiff  seemed  to  satisfy  the
characteristics the Bank was seeking.   (Burroughs Dep. vol. I   pp. 13-21).   Upon
completion of the interview process in July 2002, Sheila Burroughs made the decision to
hire Plaintiff as Vice President, Market Information Manager.  (Burroughs Dep. vol. I  p.
14)(Plaintiff's Dep. p. 37)[2].  At the time Plaintiff was offered employment with Bank of
America, he was 49 years of age.  (Plaintiff's Dep. pp. 4, 41).   His employment was
terminated nine months later.

      Contrary to Plaintiff's beliefs, he was not hired to complete three discrete tasks.
(Burroughs Dep. vol. I  p. 90).   Rather, Burroughs expected that Plaintiff would be
responsible for developing and enforcing standards for customer satisfaction and research
measurement across the company; participating with his team in strategic analysis of
various studies; and presenting the finding and recommendations to senior management.
(Burroughs Dep. vol. I  pp. 13-21).  In other words, the Bank expected that Plaintiff
would perform as both an analyst and a consultant.  (Burroughs Dep. vol. I  pp. 15-16).

      Ms. Burroughs began noticing deficiencies in areas of Plaintiff's performance in
late 2002.  Specifically, Plaintiff was not providing the leadership and strategic initiative
that Ms. Burroughs had expected.  (Burroughs Dep. vol. I  pp. 63-71).  With his many

---

[1]  References  to  the  deposition  of  Sheila  Burroughs  will  be  designated  herein  as
(Burroughs Dep. vol. I p. ___) or (Burroughs Dep. vol. II p. ___).  Portions of this
deposition transcript are attached as Exhibit "A."
[2] References to the deposition of Steven Kincaid will be designated herein as (Plaintiff
Dep. p. ____).  Portions of this deposition transcript are attached as Exhibit "B."

years of experience, Plaintiff should have been able to identify the necessary goals for the group and to establish a process to achieve those goals. (Burroughs Dep. vol. I pp. 77-83).

In April 2003, Ms. Burroughs gave Plaintiff a written performance evaluation which detailed the areas in which Plaintiff's performance was deficient. (Burroughs Dep. vol. I pp. 48-59). Within this performance evaluation, Plaintiff was given an overall rating of does not meet expectations. (Burroughs Dep. Ex. 2). In addition, Plaintiff received a formal written counseling cautioning him that he was subject to termination if his performance did not improve. (Kincaid Dep. Ex. 9).

Within two weeks after receiving the performance evaluation, Plaintiff retained legal counsel. (Plaintiff Dep. pp. 65-68). On April 25, 2003, Plaintiff's counsel wrote a letter to Bank of America's Chief Personnel Executive Steele Alphin asserting that Plaintiff had "reason to believe that the Bank and his immediate supervisor, Sheila Burroughs, have undertaken to eliminate older highly paid employees, and Mr. Kincaid in particular." (Plaintiff's Memorandum p. 3)[3]. The letter from Plaintiff's attorney was forwarded to Bank of America's legal department. The Bank's Assistant General Counsel, Eric Montgomery, replied to the letter on April 30, 2003, stating that the Bank was investigating Plaintiff's complaint. (Plaintiff's Memorandum p. 3). Mr. Montgomery did not forward the letter to Ms. Burroughs or to any of Ms. Burroughs' supervisors. (Burroughs Dep. vol. I pp. 98, 120). In fact, Ms. Burroughs and her supervisors did not become aware of Plaintiff's allegations of age discrimination until July 2003, after Plaintiff's termination. (Burroughs Dep. vol. I pp. 20-21, 78-79).

---

[3] References to Plaintiff's Memorandum in Support of Motion to Compel Discovery and for Sanctions will be designated herein as (Plaintiff's Memorandum p. ___).

By June 2003, it became clear to Burroughs and her supervisors that Plaintiff's performance was not going to improve.  (Burroughs Dep. vol. II p. 2).  Accordingly, on June 13, 2003, Burroughs terminated Plaintiff's employment at Bank of America. (Burroughs Dep. vol. II p. 9).  Plaintiff did not subsequently complain to any of Ms. Burroughs' supervisors or upper management regarding his termination.  (Plaintiff Dep. pp. 68-69).

Plaintiff filed a charge with the Equal Employment Opportunity Commission on July 25, 2003, alleging that he had been discriminated against on the basis of age and retaliated against for complaining about discrimination.  (Comp. ¶ 3)[4].

## Facts Related to Discovery

On March 16, 2005, Plaintiff served his First Set of Interrogatories and First Requests for Production of Documents.  The Bank requested an extension of time to respond to Plaintiff's discovery requests and Plaintiff's counsel consented.  Bank of America served its discovery responses on May 9, 2005.  The Bank objected to Plaintiff's discovery requests on various grounds as discussed further below.  In addition, the Bank produced all relevant documents responsive to Plaintiff's discovery requests of which it was aware.

On May 24, 2005, Plaintiff's counsel sent a letter to the Bank's counsel in which he asserted that the Bank's discovery responses were deficient and requested that the Bank produce additional documents.  In his letter, Plaintiff's counsel did not narrow the scope of a single discovery request, seek to compromise, or refute any of the Bank's objections.  (See Plaintiff's Exhibit 2).  Rather, Plaintiff's counsel merely stated that

---

[4] References to Plaintiff's Complaint will be designated herein as (Comp. ¶ ____).  A copy of the Complaint is attached as Exhibit C.

Plaintiff's interrogatories "are clearly pertinent to plaintiff's claims of unlawful discrimination and retaliation" and that the "dearth of documents produced by defendant in response to plaintiff's document requests is, plaintiff believes, highly suspect." (See Plaintiff's Exhibit 2).

On June 1, 2, and 3, 2005, Plaintiff's counsel deposed four Bank witnesses in Charlotte, North Carolina. During these depositions, Plaintiff's counsel questioned each witness regarding their knowledge of e-mails mentioning Plaintiff. Based on the testimony of the witnesses, it appeared that additional documents might be available and that a further search may be necessary. Following the depositions, the Bank's counsel and Plaintiff's counsel had a telephone conference in which the Bank's counsel addressed the issues raised by Plaintiff's counsel's May 24 letter. During the course of the conversation, the Bank agreed to conduct a further search for documents requested by Plaintiff.

On June 24, 2005, the Bank's counsel sent an e-mail to Plaintiff's counsel advising him that the Bank was still searching for but had located some responsive documents. (Exhibit D). The e-mail also advised Plaintiff's counsel that the Bank intended to forward its supplemental responses and documents to him the following week. (Exhibit D). Plaintiff's counsel responded to this e-mail on June 28, 2005, acknowledging that he would be receiving the documents later that week.

On June 29, 2005, Plaintiff's counsel contacted the Bank's counsel via telephone regarding a request to extend the discovery deadline in light of the Bank's forthcoming supplemental discovery responses. On July 1, 2005, the Bank sent Plaintiff's counsel its supplemental responses and an additional documents via Federal Express. (Exhibit E).

The Bank also responded further to the issues originally raised in Plaintiff's May 24, 2005 letter. (Exhibit E).

On August 1, 2005, Plaintiff served additional discovery requests and notices of depositions including a notice of deposition for a Rule 30(b)(6) witness to testify regarding fifteen different topics. (Exhibit F). On August 23 and August 24, 2005, Plaintiff deposed additional Bank of America witnesses, including the 30(b)(6) witnesses pursuant to the notice.

## ARGUMENT

I.     **Plaintiff is Not Entitled to Discovery Regarding Irrelevant Claims of Discrimination.**

Plaintiff asserts that he is entitled to discover information and documents related to claims of discrimination asserted against Bank of America, regardless of the type of discrimination alleged or the supervisors of the alleged victim. It is well settled that:

> Discovery in Title VII cases involving highly individualized claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats all of its employees in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race, sex or some other grounds of unlawful discrimination.

Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995)(citations omitted). "Discovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff." Id.

A.     Plaintiff's discovery requests seek information that is not relevant to Plaintiff's claims nor reasonably likely to lead to the discovery of admissible evidence.

Although Plaintiff asserts that the Bank discriminated against him based on his age, in his memorandum in support of his motion to compel, Plaintiff reproduced

Plaintiff's Interrogatories Nos. 11, 12, 13, and 14 that seek to discover information regarding complaints or claims of **any** type of discrimination, harassment, or retaliation from (1) Market Information Managers; (2) employees within the Competitive Analysis Unit; and (3) employees within the CAMR department.[5]

Since Plaintiff has asserted a claim of disparate treatment based on age, the Bank objected to Plaintiff's Interrogatories on several grounds, including that they sought information that was not relevant to Plaintiff's claims. Plaintiff did not limit his discovery request to complaints of age discrimination or retaliation, the type of discrimination at issue in this case. Instead, he seeks to discover irrelevant information related to such matters as sexual harassment or race discrimination claims. Plaintiff similarly fails to limit his discovery requests to complaints of discrimination against Plaintiff's supervisors or even within Plaintiff's business unit. The Bank's counsel explained to Plaintiff's counsel that the Market Information Manager was a job title shared by employees outside of the CAMR group. Also, Plaintiff was never a member of the Competitive Analysis unit. As a result, information regarding these claims is not relevant to Plaintiff's claims nor reasonably calculated to lead to the discovery of evidence that will be admissible at trial. At best, Plaintiff is only entitled to discover information regarding prior complaints of age discrimination or retaliation asserted by similarly situated employees within Plaintiff's work group. See Whittingham, 164 F.R.D. at 127.

---

[5] In his memorandum, Plaintiff has reproduced several interrogatories and requests for production of documents. Below each of these interrogatories and requests for production, Plaintiff has reproduced the Bank's initial responses. Plaintiff, however, fails to include Bank of America's supplemental responses to Plaintiff's discovery.

During the discovery conference between the parties on July 28, 2005, the Bank requested that Plaintiff narrow the scope of his discovery requests and offered to produce information related to prior complaints of age discrimination and retaliation against Plaintiff's immediate supervisor, Ms. Burroughs, her supervisor, Alec Kotopoulos, and the head of the CAMR group, Vipin Mayar.  (Exhibit G).  Although Plaintiff's counsel accuses the Bank of being dilatory, evasive, and obstructionist in the discovery process (Plaintiff's Memorandum p. 6-8), it is Plaintiff's counsel who has flatly refused to compromise.  Indeed, rather than seeking a compromise, in response to the Bank's offer, Plaintiff's counsel actually expanded his request and asserted that he was entitled to discover information related to every claim of discrimination asserted against Bank of America.  (Plaintiff's Exhibit 1).  Plaintiff made this assertion in spite of the fact that his discovery requests did not even seek such information.

     B.     Plaintiff's Requests for Production of Documents Fail to Identify Any Documents with Particularity.

Rule 34(b) requires that a request for production of documents describe items sought with reasonable particularity.  Fed. R. Civ. P. 34(b).  Plaintiff's Requests for Production No. 15, 16, and 17 seek "all documents CONCERNING claims against defendant of improper harassment, discrimination or retaliation made by" any Market Information Manager, current or former employee of CAMR, or former employee of the Bank's Competitive Analysis unit.

Bank of America requested that Plaintiff initially narrow the scope of his request to include only EEOC charges.  The Bank proposed that Plaintiff, upon reviewing the EEOC charges, could then request additional information and documents related to

charges that were relevant to Plaintiff's claims, to the extent that any such charges existed. Plaintiff's counsel rejected this compromise.

Plaintiff's requests for production of documents, however, do not identify with any particularity the documents sought, but merely seek <u>every</u> document "concerning" the claims of discrimination. The Bank would be required to guess what documents would be encompassed by this request. Furthermore, the production of <u>every</u> document related to <u>any</u> claim of discrimination would be unduly burdensome. Plaintiff's request would also include investigative information that is protected by the attorney-client and work-product privileges. Thus, as phrased, Plaintiff's requests for production do not identify the documents sought with reasonable particularity and, therefore, do not comply with the requirements of Rule 34.

**II.    The Documents on Bank of America's Privilege Log Are Protected by the Attorney-Client and Work-Product Privileges.**

Plaintiff asserts that he is entitled to discovery regarding an investigation conducted by Bank of America's legal department resulting from a demand letter from Plaintiff's former counsel Debra Norcross. Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, <u>not privileged</u>, which is relevant to the subject matter involved in the pending action . . . ." Fed. R. Civ. P. 26(b)(1)(emphasis added).

A.    The e-mails and other communications sought by Plaintiff are protected by the attorney-client privilege.

"[T]he interest in preserving a durable barrier against disclosure of privileged attorney-client information is shared by both particular litigants and by the public, and it is an interest of considerable magnitude." <u>Siedle v. Putnam Investments, Inc.</u>, 147 F.3d

7, 11 (1st Cir. 1998).  The attorney-client privilege applies in the corporate setting, protecting communications between corporate officers and corporate counsel.  Upjohn Co. v. United States, 449 U.S. 383, 389-90, 101 S.Ct. 677 (1981).  Where a corporate counsel interviews officers and employees of the company in connection with a plaintiff's claim of discrimination, such communications are protected by the attorney-client privilege.  See Derderian v. Polaroid Corp., 121 F.R.D. 9, 10 (D. Mass 1988)("[i]t is beyond question that statements made by Polaroid employees to [the corporate counsel] during her investigation into plaintiff's allegations [of sex discrimination] are privileged").

In the present case, the communications from or to Mr. Montgomery, the Bank's in-house legal counsel, and his paralegal, Martha Moore, are protected by the attorney-client privilege.  The communications were in response to the letter from Plaintiff's attorney asserting that Plaintiff was a victim of discrimination.  (Montgomery Dep. p. 53)[6].  The Bank has not waived its attorney-client privilege in any way.  Accordingly, all communications obtained in the course of investigating Plaintiff's claims are protected from disclosure by the attorney-client privilege.  This would include any e-mails or other communications from or to Mr. Montgomery regarding Plaintiff from the date the Bank received Plaintiff's attorney's letter on April 25, 2003, to the present.  See Derderian, 121 F.R.D. at 10.

      B.      The documents and information sought by Plaintiff are protected by the attorney work-product privilege.

---

[6] References to the deposition of Eric Montgomery will be designated herein as (Montgomery Dep. p. ___).  Portions of this deposition transcript are attached as Exhibit "H."

While the communications to and from Mr. Montgomery and Ms. Moore are protected by the attorney-client privilege, the notes, memoranda, and other documents listed on the privilege log are protected from disclosure pursuant to the attorney work-product privilege. The work-product privilege protects "not only the giving of professional advice to those who can act but also for the giving of information to the lawyer to enable him to give sound and informed advice." In re Lernout & Hauspie Securities Litigation, 222 F.R.D. 29, 34 (D. Mass 2004). A document constitutes attorney work product and can be withheld from production if it was prepared under the direction of an attorney in contemplation of litigation. Mone v. Department of Navy, 353 F.Supp.2d 193, 195 (D. Mass. 2005). In the First Circuit, a document is considered to have been prepared "in contemplation of litigation" if, in light of the nature of the document and factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation. State of Maine v. U.S. Dept. of Interior, 298 F.3d 60, 69 (1st Cir. 2002)(emphasis in original). In adopting that rule, the First Circuit specifically rejected a more stringent test that would have protected a document only upon a showing that the prospect of litigation was the "primary motivating factor" for its creation. Id. at 67. Moreover, "where a document is created because of the prospect of litigation . . . it does not lose protection under this formulation because it is created in order to assist with a business decision." Lernout, 222 F.R.D. at 35.

In the present case, Bank of America has claimed work-product protection for documents prepared because of the prospect of litigation raised by the demand letter from Plaintiff's counsel. Mr. Montgomery specifically testified in his deposition as follows:

Q:      What caused you to initiate this meeting?

A:      The letters from the attorney.

(Montgomery Dep. p. 53).    Contrary to Plaintiff's assertions, Mr. Montgomery's testimony that he was collecting information to respond to Ms. Norcross' demand letters does not contradict the asserted privileges.    Rather, the testimony bolsters the Bank's assertion that the meeting and related communications were not part of a routine investigation, but were specifically in response to Ms. Norcross' letters.    Plaintiff has no evidence to dispute that the e-mails, memos, notes, and other documents listed on the Bank's privilege log are protected by the work-product privileges.

C.      Plaintiff has not demonstrated a substantial need sufficient to overcome Bank of America's work-product privilege.

In Miller v. Federal Express Corp., a case cited by Plaintiff, the court stated:

The work product protection only applies to materials which are "otherwise discoverable." Fed. R. Civ. P. 26(b)(3). Therefore, if any of the disputed documents are [attorney-client] privileged then the party seeking discovery has failed the first step, and the court would not proceed [to determine whether the plaintiff has demonstrated a substantial need].

186 F.R.D. 376, 387 (W.D. Tenn. 1999).

Plaintiff asserts that the Bank's attorney work-product privilege "would be overcome because Mr. Kincaid would clearly meet the 'substantial need' and 'undue hardship' requirements of Fed. R. Civ. P. 26(b)(3) . . . [because of being] wrongfully deprived of contemporary e-mail evidence pertinent to his claims of discrimination and relation . . . ." (Plaintiff's Memorandum P. 19).    Even assuming Plaintiff has been deprived of any e-mail evidence, Plaintiff has offered no evidence that the contents of the privileged documents are similar to e-mails that Plaintiff speculates existed at one time. Accordingly, there is no indication that disclosure of Bank of America's attorney work

product would provide Plaintiff factual information comparable to information Plaintiff speculates existed at some point.  Plaintiff's arguments in this regard are non-sequitur.

Furthermore, pursuant to Rule 26(b)(3), documents "prepared in anticipation of litigation or for trial" are discoverable only upon a showing of substantial need of the materials and inability, without undue hardship, to obtain their substantial equivalent elsewhere."  City of Springfield v. Rexnord Corp., 196 F.R.D. 7, 8 (D.Mass. 2000)(emphasis added).  The moving party cannot satisfy this standard, and discovery of work product will be denied where the party can obtain the information by taking the deposition of witnesses.  Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269, 275 (D.Mass. 1991).

Plaintiff has deposed numerous individual witnesses, including Ms. Burroughs, Mr. Mayar, Mr. Kotopoulos, Mr. Montgomery, Tim Megyesy, and Elizabeth Janak, regarding the contents of any alleged e-mails.  As a result, discovery of the Bank's work product should be denied.  See Colonial Gas Co., 139 F.R.D. at 275.

**III.   Plaintiff has Failed to Produce Any Evidence that the Bank "Wrongfully Destroyed" E-Mail Evidence.**

Throughout discovery in this case, Plaintiff has continually made the unsupported accusation that Bank of America has "wrongfully destroyed" e-mail evidence.  Plaintiff's arguments are without merit.

Plaintiff has offered no evidence that any e-mails that are relevant to Plaintiff's claims ever actually existed.  Plaintiff concludes that since Bank employees communicate frequently by e-mail and since the e-mails produced by the Bank are clustered around

certain dates, this somehow shows that "a great deal of e-mail evidence has been destroyed . . . ." (Plaintiff's Memorandum P. 20)[7].

However, no witness has testified that he/she ever sent or received any e-mail related to Plaintiff's termination, the reasons for Plaintiff's termination, or Plaintiff's performance. To the contrary, Ms. Burroughs summarized the nature of e-mails within the department as follows:

> I may still have deleted e-mails that were regarding the normal course of our business, yes, because there is not room to retain them all, and I would not have seen that there would be any need to, based on the fact that none of the e-mails that passed between anyone, Steve, or I, or anyone else had anything to do with anything related to a charge that might be related to discrimination. None of the e-mails that came from Steve and I had any context at all. It was all relevant to the work he was doing. So how would they be relevant to a discrimination investigation?

(Burroughs Dep. vol. I p. 113). Ms. Burroughs further testified:

> Q:    [A]nd was the discussion of the possibility of terminating Mr. Kincaid's employment referred to in any e-mails between you and Mr. Kotopoulos?
>
> A:    I don't think so.

(Burroughs Dep. vol. I p. 126).

Plaintiff has deposed Ms. Burroughs, Mr. Kotopoulos, Mr. Mayar, Elizabeth Janak, and Tim Megyesy, and had the opportunity to examine each of them regarding their memory of relevant e-mails. Despite this opportunity, Plaintiff has failed to produce even a scintilla of proof that the Bank or any of its employees deleted (or "destroyed") a single e-mail that is relevant to Plaintiff's lawsuit.

---

[7] Plaintiff maintains that his Request for Production No. 8, which seeks "all documents that discuss, describe, mention or refer to plaintiff", entitles him to all e-mails that discussed, described, mentioned, or referred to Plaintiff. It is Defendant's position the Request is insufficient because, inter alia, it fails to identify the documents sought with reasonable particularity.

Bank of America's e-mail system handles approximately 140 million e-mails per month, roughly equal to 7 million e-mails per workday, for its 140,000 employees. (Venit Aff. ¶ 3)[8]. Based on the volume of e-mails sent and received, the Bank has implemented a standard e-mail deletion system by which employee's e-mails are deleted from Bank of America's servers on a rolling basis every 90 days.[9] (Montgomery Dep. p. 138-39)(Venit Aff. ¶ 4). Bank of America maintains backup tapes for the purposes of disaster recovery that are recorded every night. (Venit Aff. ¶ 6). These backup tapes are erased and reused after 30 days. (Venit Aff. ¶ 6). Within Bank of America's e-mail system, an employee can save e-mails to a user defined source in order to avoid deletion at any time prior to their routine deletion. (Venit Aff. ¶ 5).

In sum, Plaintiff has failed to establish that any relevant e-mails ever existed, or that any relevant e-mails ever were "wrongfully" deleted.

## IV. Plaintiff's Claims that Bank of America has Engaged in Discovery Misconduct Are Baseless.

Plaintiff alleges that Bank of America has engaged in discovery misconduct in the following ways: (1) being continually dilatory in providing discovery and in advising Plaintiff of its position regarding discovery; (2) failing to produce documents Bates-stamped BA 111 – BA 115 and BA 116 in its first responses to Plaintiff's discovery requests; (3) failing to identify certain documents in its initial disclosures; and (4) by failing to produce e-mails.

---

[8] References to the Affidavit of Aloysius J. Venit will be designated herein as (Venit Aff. ¶ ____). A copy of this affidavit is attached as Exhibit I.

[9] If a user deletes an e-mail within the same day he or she received it, the e-mail will not be written to any backup tape and is not recoverable.

In an effort to support his accusation that Bank of America has been dilatory, Plaintiff has grossly misstated the interaction, discussion, and negotiation regarding discovery by Bank of America's counsel. For example, Plaintiff states that the Bank never responded to his letter of May 24, 2005, raising issues with the Bank's discovery responses. (Plaintiff's Memorandum p. 5). However, within Plaintiff's counsel's own letter of June 23, 2005 (Plaintiff's Ex. 3), he acknowledges that he is following up on his conversation with the Bank's counsel on June 7, 2005. This extensive conversation regarding Plaintiff's discovery took place in less than two weeks from the receipt of Plaintiff's letter and in a matter of days after completion of the depositions of the Bank's witnesses. (Plaintiff's Ex. 3). It was at this time that Bank of America agreed to search for additional documents and to supplement some of its discovery responses. The Bank's counsel advised Plaintiff's counsel of the difficulty it was having in locating information and documents because several of the employees no longer worked for Bank of America and because Plaintiff's former CAMR department had been disbanded over a year prior to Plaintiff's discovery requests.

Moreover, Bank of America consented to Plaintiff's request for an extension of the discovery deadline, agreed to allow Plaintiff to further depose Mr. Kotopoulos and Ms. Burroughs, agreed to allow Plaintiff to take additional depositions, and agreed to provide additional documents in response to Plaintiff's discovery. (Exhibit J).

Contrary to Plaintiff's assertions, Bank of America has provided Plaintiff with its position in its initial responses to Plaintiff's discovery requests. The Bank maintained that its objections were valid and appropriate in each discussion with Plaintiff's counsel. The Bank renewed its objections to Plaintiff's discovery requests when it provided a

supplemental discovery response as well. Plaintiff could have filed a motion to compel at any time, but chose instead to argue his views on the validity of the Bank's objections. Plaintiff cannot now claim that he was unaware of the Bank's position.

Plaintiff's argument that Bank of America improperly failed to disclose in its initial disclosures documents later sought by Plaintiff is particularly curious. Rule 26(a)(1) expressly provides that a party is required to identify all documents "that the disclosing party may use to support its claim or defenses, unless used solely for impeachment." Fed. R. Civ. P. R. 26(a)(1)(B). Contrary to Plaintiff's assertion, the rule does not require a party to produce any documents the opposing party may subsequently request in discovery.

Plaintiff further asserts that the Bank has engaged in discovery misconduct by failing to produce certain documents in its initial discovery responses on May 9, 2005. However, Plaintiff's claims in this regard are moot and only unnecessarily confuse the issues before the Court. See LR 37.1(a). Plaintiff has now had these documents for nearly two months. Since the documents were not located until the end of the discovery period, the Bank agreed to extend the discovery deadline by over sixty (60) days and to allow Plaintiff to further depose Bank witnesses regarding the documents.

Finally, Plaintiff asserts that the Bank has engaged in discovery misconduct by failing to produce e-mails and acting in an obstructionist manner regarding the production of e-mails. Such assertions are, however, contrary to the facts.

Plaintiff's Request for Production of Documents No. 8 seeks "all documents which discuss, describe, mention or refer to Plaintiff." The Bank did not produce any e-mails with its original discovery responses because it had not located any e-mails that

discussed, described, mentioned, or referred to Plaintiff other than those listed on its privilege log. Thereafter, Plaintiff's former supervisor discovered some e-mails on the hard drive of her assigned computer that had previously gone unnoticed. Among the e-mails were communications that were sent to or from Plaintiff. Accordingly, the Bank produced those e-mails with its supplemental discovery responses. However, none of these e-mails relate to Plaintiff's termination.

In addition, during the June 7, 2005 discussion between counsel, Plaintiff's counsel was informed Plaintiff's counsel that the Bank had some backup systems that may contain e-mails, but that the system was difficult and expensive to search. The Bank is unable to search all of its various servers, drives, and storage systems for the name "Kincaid." Rather it is required to search individual e-mail accounts, spaces on shared drives, and hard drives. Accordingly, the Bank requested that Plaintiff narrow the scope of his request, but Plaintiff refused. During the discovery conference, the Bank agreed to conduct a search of all of its backup systems, servers, and drives for e-mails which were sent to or from (i) Steven Kincaid; (ii) Sheila Burroughs; (iii) Alec Kotopoulos; (iv) Vipin Mayar; (v) Elizabeth Janak; and (vi) certain e-mails from Eric Montgomery. (Exhibit 1). The Bank has already begun this search.

The above information demonstrates that Bank of America has at all times acted reasonably and appropriate during discovery in this case. Plaintiff's assertions to the contrary are meritless.

## <u>CONCLUSION</u>

For the reasons stated above, Bank of America respectfully requests that Plaintiff's Motion to Compel Discovery and For Sanctions be denied. Bank of America requests the Court hear oral argument on the Plaintiff's motion.

This the 25th day of August 2005.

       s/ Richard F. Kane                     
Richard F. Kane (admitted pro hac vice)
Steven T. Ackermann (admitted pro hac vice)
McGuireWoods LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, North Carolina 28210
Telephone:     (704)373-8999
Facsimile:     (704)373-8827

George P. Kostakos
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903
Phone: 401.528.5864
Fax:    401.276.6611

**Attorneys for Bank of America Corp.**

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing "Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Discovery and for Sanctions, and Defendant's Request for Oral Argument" has been served by first-class mail, postage prepaid, upon the attorneys for the Plaintiff at the address listed below:

> David J. Fine, Esq.
> Three Center Plaza, Suite 400
> Boston, Massachusetts 02108-2003

This the 25th day of August 2005.

     s/ _____