UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN R. KINCAID,<br><br>                    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA<br>CORPORATION,<br><br>                    Defendant. | Civil Action No. 04-11522-WGY |

### PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDERS

Plaintiff ("Mr. Kincaid") hereby moves to modify this Court's two scheduling orders dated July 21, 2005, as follows:

    1.    to extend the date for completion of fact discovery from September 16, 2005 to October 28, 2005;

    2.    to extend the date for submission of reports from retained experts under Fed.R.Civ.P. 26(a)(2): (a) for Mr. Kincaid, from September 30, 2005 to November 4, 2005; and (b) for defendant (the "Bank"), from October 17, 2005 to November 21, 2005;

    3.    to extend the deadline for filing dispositive motions from October 17, 2005 to November 21, 2005;

    4.    to extend the earliest date for the Final Pretrial Conference from October 3, 2005 to December 3, 2005; and

    5.    to extend the date that this case is to go on the Running Trial List from

November 7, 2005 to January 3, 2006.

In support of this motion, Mr. Kincaid states:

1. On July 21, 2005, this Court allowed Mr. Kincaid's July 1, 2005 Assented-To Motion to Modify Scheduling Orders insofar as that Motion requested extensions of time for fact discovery, submission of expert reports and filing dispositive motions, but denied the Assented-To Motion insofar as it requested a two-month postponement in the trial date.

2. Developments since July 21, 2005 now impel Mr. Kincaid to request further modifications in the Court's schedule for this case. These developments have been as follows:

   a. On July 28, 2005, one week after the Court issued its foregoing scheduling orders, the parties had a two-hour discovery conference regarding Mr. Kincaid's outstanding objections to the adequacy of the discovery provided by the Bank. This conference, supplemented by follow-up communications, resulted in, among other things: (1) an agreement by the Bank to allow Mr. Kincaid to take supplemental depositions of Sheila Burroughs and Alec Kotopoulos regarding documents the Bank produced after Mr. Kincaid had deposed Ms. Burroughs and Mr. Kotopoulos on June 1 and 2, 2005; (2) an agreement by the Bank to conduct a search, at its own expense, for additional e-mails concerning Mr. Kincaid beyond the very sparse production of e-mails the Bank had made; and (3) a crystallization of several discovery issues on which the parties could not reach agreement regarding which Mr. Kincaid would need to make a motion to compel.

   b. On July 29, 2005, the Bank served on Mr. Kincaid a First Set of Interrogatories and a Second Request for Production of Documents.

   c. On August 1, 2005, Mr. Kincaid served on the Bank a Second Request for Production of Documents and a Second Set of Interrogatories. These were follow-up discovery

requests informed by what Mr. Kincaid had learned from discovery provided by the Bank in June and July, and further informed by the positions the Bank had taken regarding discovery in the parties' July 28, 2005 discovery conference.

    d.    On August 11, 2005, Mr. Kincaid served on the Bank a Motion to Compel Discovery and for Sanctions, with a supporting Memorandum. On August 25, 2005, the Bank served a Memorandum in Opposition to Plaintiff's Motion to Compel Discovery and for Sanctions.

    e.    On September 8, 2005, this Court issued an order granting Mr. Kincaid's Motion to Compel in part and denying it in part. In summary, insofar as the Court granted Mr. Kincaid's Motion, the Court ordered the Bank to provide discovery regarding other claims and suits alleging age discrimination by the Bank.

    f.    Also on September 8, 2005, Mr. Kincaid responded to the Bank's July 29, 2005 interrogatories and document request, and the Bank responded to Mr. Kincaid's August 1, 2005 interrogatories and document requests. Further, the Bank produced e-mails and other documents resulting from the additional search for e-mails the Bank had agreed to make in early August 2005.

    g.    On September 16, 2005, the parties had a discovery conference regarding Mr. Kincaid's objections to the adequacy of the Bank's September 8, 2005 discovery responses and regarding the Bank's objections to the adequacy of Mr. Kincaid's September 8, 2005 discovery responses.

    h.    Both in an e-mail dated September 13, 2005 and during the September 16, 2005 discovery dispute conference, Mr. Kincaid demanded that the Bank provide, as soon as possible, the discovery the Court's September 8, 2005 Order had compelled the Bank to provide

and to advise Mr. Kincaid forthwith of the date by which the Bank would provide such discovery. Notwithstanding these demands, the Bank refused to make any commitment until September 23, 2005, at which time the Bank stated it would not provide the discovery compelled by the Court until September 30, 2005.

   i. Further, during the discovery conference on September 16, 2005, the Bank stated that, notwithstanding its previous promise that it would allow Mr. Kincaid to take follow-up depositions of Sheila Burroughs and Alec Kotopoulos, it would no longer agree to such follow-up depositions. Nor, stated the Bank, would the Bank: (a) agree to provide other discovery that Mr. Kincaid was demanding; or (b) assent to any extension of any of the Court's scheduling deadlines for this case.

   3. Given the foregoing, it is obvious that the Bank's strategy is to combine foot-dragging in providing discovery to Mr. Kincaid with a refusal to assent to modify the case schedule, to put Mr. Kincaid in a time squeeze that would result in Mr. Kincaid's being denied discovery and information to which he is plainly entitled. To prevent this cynical strategy from succeeding, the Court should modify the case schedule in the ways Mr. Kincaid is requesting.

   4. To illustrate the unfair prejudice Mr. Kincaid would suffer if the case schedule is <u>not</u> modified, Mr. Kincaid provides the following examples:

   a. The Court issued its Order compelling the Bank to provide discovery regarding other age discrimination claims and suits against the Bank on September 8, 2005. The Bank has stated it will not be providing the ordered discovery until September 30, 2005. Unless the deadlines for fact discovery and expert discovery are extended, Mr. Kincaid will have no opportunity to conduct any follow-up discovery based on the information the Bank provides on September 30, 2005 and Mr. Kincaid's experts will have no opportunity to incorporate what may

4

be learned from such discovery, and the follow-up thereto, in their reports.

        b.      On June 1 and 2, 2005, the dates Mr. Kincaid took the depositions of the two people most directly responsible for firing him, his supervisor Sheila Burroughs and Ms. Burroughs' supervisor Alec Kotopoulos, the Bank had produced only <u>56</u> Bates-numbered documents in response to Mr. Kincaid's March 16, 2005 document request. Since June 1 and 2, 2005, the Bank has produced <u>over 900 pages of additional documents</u>. Among the documents <u>not</u> produced by the Bank prior to the June 1 and 2 depositions was a detailed typewritten "performance management" memorandum[1] memorializing Sheila Burroughs' communications with the Bank's personnel center regarding the planned termination of Mr. Kincaid and the purported justification for that termination, a memorandum recording, among other things, Ms. Burroughs' admission that: "she dnt hv good doc for 4th qtr [of 2002, the quarter ending just three months before Mr. Kotopoulos and Ms. Burroughs apparently decided to warn Mr. Kincaid he was at risk of being terminated for poor performance] and ws more here are your goals & not how you're doing against it. Sd [Mr. Kincaid] was rated solid then. Sd her mgr Alec Kotopoulos, is ready to move frwrd quickly[.] Sd Alec hs cleaned house since took ovr group in Dec[.]" BA 115. Also not produced by the Bank prior to the June depositions was Elizabeth Janak's August 18, 2003 e-mail to Alec Kotopoulos stating that she needed to discuss with him, among other things, the "B4-B5 voluntary and involuntary terminations [in Mr. Kotopoulos's department] over the past 12 months [terminations including the June 13, 2003 termination of Mr. Kincaid] suggest[ing] potential age bias -- 8/10 (80%) were 40 yrs or older." BA 116.[2] Further still, the Bank did not produce, until September 8, 2005, documents showing that, far

---

[1] This memorandum was reproduced as Exhibit 5 to Mr. Kincaid's August 11, 2005 Memorandum in support of his Motion to Compel.
[2] Ms. Janak's August 18, 2003 e-mail and Mr. Kotopoulos's responding e-mail were reproduced as Exhibit 7 to Mr. Kincaid's August 11, 2005 Memorandum.

from being the purely merger-related lay-off that Mr. Kotopoulos portrayed it to be in his June 2005 deposition, the circumstances of Mr. Kotopoulos's own separation from the Bank in February 2004 were such that it necessitated a seven-page General Release and Separation Agreement (BA 919 - 925) in which Mr. Kotopoulos agreed that his "employment relationship with Bank [was] permanently and irrevocably severed and that [he was] <u>not eligible for rehire or re-employment</u> with Bank . . ." (BA 923)(emphasis added). Clearly, each of the foregoing documents, and other late-produced documents beside, are documents about which Mr. Kincaid should be able to question Ms. Burroughs and Mr. Kotopoulos in supplementary depositions, especially because Mr. Kincaid has no assurance that they will appear as witnesses at trial.

      c.      The Bank did not produce until September 8, 2005, an e-mail from Erik Fine (no relation to Mr. Kincaid's undersigned counsel) to Vipin Mayar, Alec Kotopoulos's supervisor and head of the CAMR department, the department in which Mr. Kincaid was employed, the subject line for which read: "URGENT: Reorganization, Job Eliminations & Topgrading." This e-mail, marked BA 903 - 905 and reproduced as an attachment to this Motion, states in its first paragraph, "[t]he number of associates being targeted for Job Eliminations and Topgrading seems to be a lot larger than originally understood" and states at the end of its third paragraph,

> One point to note: be cautious with the situation you are in. For obvious reasons, you have raised the bar. The question is: were the associates who might be impacted aware that the bar was raised?

BA 903.

While this e-mail does not specifically refer to Mr. Kincaid, its potential significance to this case is substantial. Among other things, the e-mail suggests that a decision was made to "target" associates in the CAMR department for elimination, that the "targeting" was <u>not</u> driven primarily

6

by deficiencies in the particular associates' job performance but rather by some shift in corporate strategy, and that Alec Kotopoulos, who is referred to in the fourth line from the bottom of BA 903, was directly involved in the "targeting." Especially when this November 6, 2002 e-mail is put together with the documents referred to above, BA 115, referring to Alec Kotopoulos "cleaning house" and being "ready to move forward quickly" regarding Mr. Kincaid, and BA 116, referring to the pattern of age bias in the terminations in the CAMR department, its relevance to the present case is manifest. Indeed, all six of the "targeted" individuals identified by Erik Fine on BA 905 are also referred to by Alec Kotopoulos, in his response, at the top of BA 116, to Elizabeth Janak's August 18, 2003 e-mail about age bias. Clearly, it is of the utmost importance that Mr. Kincaid be able to depose Erik Fine, and to further depose Vipin Mayar, Alec Kotopoulos and Sheila Burroughs, and that the case schedule be modified to allow this to occur.

5.  Modifying the case schedule would also allow the Court to decide a second Motion to Compel, which Mr. Kincaid is planning to file within the next week, and to obtain the benefit of any discovery the Court orders in response to that Motion.

Dated: September 26, 2005

                                              Respectfully submitted,

                                              /s/ David J. Fine

                                              David J. Fine, BBO #165120
                                              Law Offices of David J. Fine
                                              3 Center Plaza, Suite 400
                                              Boston, MA 02108-2003
                                              (617) 720-2941

                                              Attorney for Plaintiff

### Certificate of Service

I hereby certify that I have this day served the foregoing by causing true copies thereof to be transmitted electronically and mailed, first class postage prepaid to, Richard F. Kane and Steven T. Ackermann, Esqs., McGuire Woods LLP, Bank of America Corporate Center, 100 North Tryon Street, Suite 2900, Charlotte, NC 28202, and to George P. Kostakos, Edwards & Angell, LLP, 2800 Financial Plaza, Providence, RI 02903, attorneys for defendant.

Dated: September 26, 2005

/s/ David J. Fine
David J. Fine