UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN R. KINCAID, ) | |
| ) | |
| Plaintiff, ) | CA No. 04 CV 11522 WGY |
| ) | |
| vs. ) | |
| ) | |
| BANK OF AMERICA CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION FOR SUMMARY JUDGMENT</u>

### INTRODUCTION

Defendant, Bank of America Corporation ("Bank of America" or "the Bank"), by and through the undersigned counsel, hereby submits this Memorandum of Law in Support of Defendant's Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff's Complaint alleges four causes of action: (1) age discrimination in violation of 29 U.S.C. § 621 *et seq.*; (2) retaliation in violation of 29 U.S.C. § 623(d); (3) wrongful discharge in violation of the public policy of North Carolina; and (4) breach of an implied covenant of good faith and fair dealing.

Bank of America terminated Plaintiff for poor performance. Plaintiff's discharge followed numerous efforts to improve his performance, a negative performance review, and a counseling memorandum warning Plaintiff that he was subject to discharge if his performance did not improve. Bank of America hired Plaintiff when he was 49 years of age and terminated him within nine months while he was still 49 years of age.

Plaintiff is unable to produce any evidence from which a reasonable juror could conclude that Bank of America terminated him because of his age, retaliated against him for complaining of age discrimination, or that his termination violated public policy. In addition, because North Carolina does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing under the circumstances of this case, Plaintiff cannot establish a claim under such theory.

## LEGAL ARGUMENT AND CITATION TO AUTHORITY

**I.   SUMMARY JUDGMENT SHOULD BE GRANTED WHERE, AS HERE, THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 19990)). The burden is on the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986). If, after viewing the record in the nonmoving party's favor, the court determines that no genuine issue of

material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id.

"[E]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). "Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 841-42 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)).

## II. PLAINTIFF'S AGE DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW.

A plaintiff bringing suit under the ADEA must ultimately prove that he would not have been terminated but for his age. Rivera-Aponte v. Restaurant Metropol #3 Inc., 338 F.3d 9, 10 (1st Cir. 2003). Where there is no direct evidence of discrimination, as in the present case, the McDonnell Douglas burden-shifting framework applies. Id.,(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817 (1973)).

In this case, under the McDonnell Douglas burden-shifting framework, Plaintiff establishes the *prima facie* case by demonstrating he (1) was at least forty years of age, (2) met the Bank's legitimate job performance expectations, (3) experienced an adverse employment action, and (4) that he was replaced by a person with roughly equivalent job

qualifications.[1]  Goldman, 985 F.2d at 1117.  If Plaintiff establishes a *prima facie* case, the employer then must "articulate a legitimate nondiscriminatory reason for the employee's termination."  Lawrence v. Northrop Corp., 980 F.2d 66, 69 (1st Cir. 1992)(citations omitted).  "The employer's obligation is simply one of production[;] . . . [t]he burden of persuasion remains the employee's at all times."  LeBlanc v. Great American Insurance Co., 6 F.3d 836, 842 (1st Cir. 1993)(citations omitted).

    A.    Plaintiff cannot establish a *prima facie* case of age discrimination.

In the present case, Plaintiff is unable to establish the elements of a *prima facie* case of age discrimination.  Plaintiff can only satisfy the first element: he was over the age of forty; and the third element: he suffered an adverse employment action.  However, Plaintiff is unable to prove either that he was meeting Bank of America's legitimate job performance expectations or that he was replaced by a person with equivalent qualifications.

    *1.    Plaintiff was not meeting the legitimate expectations of Bank of America.*

The evidence shows that Plaintiff was not meeting the legitimate expectations of the Bank.  Plaintiff was not hired for an entry level position and Ms. Burroughs expected a level of performance commensurate with his many years of experience in market research.  Statement of Facts ¶ 17.  Essentially, Ms. Burroughs expected that Plaintiff would be a leader in developing the strategy of what needed to be done to prove the value of customer satisfaction to the Bank.  Statement of Facts ¶ 19.  A team of Bank associates

---

[1] According to the First Circuit, a plaintiff also can establish a *prima facie* case by demonstrating that the employer did not treat age neutrally, Raul Rivera-Aponte v. Restaurant Metropol # 3, Inc., 338 F.3d 9, 11 (1st Cir, 2003), that younger persons were retained in the same position following a reduction in force ,Goldman, 985 F.2d at 1117), or that the employer had a continuing need for the services the plaintiff had been rendering, Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

had come together to look at that very topic. Statement of Facts ¶ 25. It was Ms. Burroughs opinion that Plaintiff should have been an integral member of that team and ultimately been the leader of that effort. Statement of Facts ¶ 25. Plaintiff should have recognized the need to become a part of that team without urging from Ms. Burroughs. Instead, Plaintiff was very passive and disengaged from the entire process. Statement of Facts ¶ 25.

Plaintiff consistently failed to provide the leadership and deliver the strategic initiatives that Ms. Burroughs expected of him as a consultant. Statement of Facts ¶ 22. In addition to not demonstrating the leadership necessary to be effective in his position, Mr. Kincaid also seemed not to understand the Bank's culture and the context within which the Customer Satisfaction group was working. While there might be 100 rights ways to do something, the group was charged with choosing the way that was right for the Bank in the context of its business organization and culture and the real barriers presented by that context. Mr. Kincaid did not see this bigger picture at times. For example, Mr. Kincaid suggested that the Bank change the scale that it was using in its customer satisfaction surveys. Mr. Kincaid failed to appreciate the fact that the Bank had already invested a great deal of time, effort and expense in developing a standard survey scale to be used across the Bank's lines of business and that it had already collected a substantial amount of data using this standard scale. His suggestion would have rendered past survey data obsolete for purposes of the Customer Satisfaction group's work. Ms. Burroughs expected that Mr. Kincaid would not suggest changing the standard scale, given the natural and obvious consequences of such a change. Statement of Facts ¶ 26.

In addition, Plaintiff's recommendations came at a time when business managers were evaluated based on the current measurement and the managers' incentives were based on their performance. Statement of Facts ¶ 27. Had the Bank changed the measurement scale in accordance with Plaintiff's suggestions, the performance goals would have to be substantially redone. Statement of Facts ¶ 27.

Ms Burroughs was required to provide step-by-step instructions to Plaintiff in order for him to complete even minor projects.[2] Statement of Facts ¶ 28. In some instances, Plaintiff failed to complete even elementary tasks. In order lead and influence people, Ms. Burroughs expected some very basic actions by Mr. Kincaid. For example, she expected that he would be able to call a meeting, prepare an agenda for a meeting and lead the meeting. An example of when he did not do this, was with respect to standards he had developed for surveys. He proposed the standards to the key executives, but failed to follow through and get them to buy-in to the standards. Ms. Burroughs recalls that Mr. Kincaid told her that he had distributed the standards and had not heard back from anyone. Ms. Burroughs thought that he should have done more. For example, he should have reached out to the executives, held a meeting, lead them through a discussion of the standards and gained their approval. Instead, Ms. Burroughs and her supervisor, Alec Kotopoulos ("Mr. Kotopoulos"), had to reach out to the executives and get their buy-in and agreement on the new standards. Ms. Burroughs felt that Mr. Kincaid did not perform the follow through that was necessary on this project. Statement of Facts, ¶ 30.

---

[2] Plaintiff's supervisor Sheila Burroughs hired Plaintiff with the belief that Plaintiff would perform as both an analyst and a consultant. Statement of Facts ¶ 15-16. Plaintiff's assertions even after his termination that he was hired to complete three discrete tasks further underscores his myopic view of his role and lack of understanding about what he was required to do to be successful in his position.

A lack of follow through was a recurring issue with Mr. Kincaid's work. For example, Ms. Burroughs had asked him to analyze the key drivers, or most important factors, to customer satisfaction across the Bank's business groups. Ms. Burroughs expected him to list the key drivers and provide an analysis of how those drivers were similar and not similar for the different business lines. In this way, she hoped to get a clearer picture of the Bank's whole customer. Mr. Kincaid was able to identify the drivers, but he could not prepare an analysis that would communicate the information in an effective and meaningful way. Ultimately, Ms. Burroughs assigned a more junior person, Allison Hart, to complete this project. Statement of Facts, ¶ 31.

Ms. Burroughs did not see Mr. Kincaid build relationships with the key executives in the Bank that he was supposed to be influencing. For example, on one project for the valuation team, he identified an individual, Mindy Felcman, as his contact in the area of finance. What should have been obvious to him was that Kathryn Little was the finance executive in the customer satisfaction area, not Ms. Felcman. Ms. Burroughs felt that it was fine to include Ms. Felcman. Her participation would not detract from the project, but Kathryn Little, who was already an active member of the valuation team, was the person he should have identified as the key individual for the project. Statement of Facts, ¶ 32.

Throughout his employment, Ms. Burroughs met with Plaintiff on a weekly basis to provide him with feedback regarding his work. Statement of Facts ¶ 33. Despite these weekly meetings, Plaintiff's performance did not improve. Statement of Facts ¶ 34.

In April 2003, Ms. Burroughs conducted Plaintiff's formal performance review and presented Plaintiff with a written performance evaluation in which he was given an

7

overall rating of "does not meet expectations." Statement of Facts ¶ 43. Around this time, Ms. Burroughs also presented Plaintiff with a formal written counseling memorandum cautioning Plaintiff that he may be terminated if he did not improve his performance. Statement of Facts ¶ 44. Again, despite this written warning and the prospect of termination, Plaintiff did not improve his performance. Statement of Facts ¶ 45. By June 2003, it became clear to Ms. Burroughs that Plaintiff's performance was not going to improve. Statement of Facts ¶ 48. Accordingly, on June 13, 2003, Ms. Burroughs terminated Plaintiff's employment with Bank of America. Statement of Facts ¶ 49.

In contrast to the Bank's evidence of Plaintiff's inadequate performance, Plaintiff has failed to present <u>any</u> evidence to show he was actually meeting the legitimate expectations of Bank of America. Plaintiff merely asserts that he received some positive feedback and recognition from co-workers and that the Bank utilized his statistical models. Statement of Facts ¶ 46-47. However, Plaintiff's own opinion about his work performance does not sufficiently cast doubt on the legitimacy of his employer's proffered reasons for its employment actions. <u>Shorette v. Rite Aid of Me., Inc.</u>, 155 F.3d 8, 15 (1st Cir. 1998).

> 2. *Plaintiff was not replaced by someone with roughly equivalent job qualifications.*

In addition to proving that he was meeting the legitimate expectations of his employer, which he has failed to do, Plaintiff is also required to prove that he was replaced by a person with roughly equivalent job qualifications. <u>Goldman</u>, 985 F.2d at 1117. Plaintiff has offered no evidence that he was replaced. Indeed, the undisputed

8

evidence shows that Plaintiff was not replaced. Statement of Facts ¶ 50. Accordingly, Plaintiff cannot establish a *prima facie* case of age discrimination.

      B.      <u>Plaintiff cannot establish that the Bank's reasons for discharging him were a pretext for age discrimination</u>.

Even if Plaintiff was able to establish a prima facie case of age discrimination, which the Bank denies, Bank of America has proffered a legitimate reason for Plaintiff's discharge – his poor performance. Once the employer has proffered a legitimate nondiscriminatory reason for its adverse employment decision, the presumption generated by the employee's *prima facie* case disappears, and "the burden falls back upon the employee to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination." <u>Leblanc</u>, 6 F.3d at 842. In pursuing this inquiry, the Court focuses on whether the employer believed that its proffered reason was credible. <u>See</u> <u>Mesnick</u>, 950 F.2d at 824. That is, the plaintiff must do more than cast doubt on the rationale proffered by the employer, the "evidence must be of such strength and quality as to permit a reasonable finding that the . . . [termination] was <u>obviously</u> or <u>manifestly</u> unsupported." <u>Brown v. Trustees of Boston Univ.</u>, 891 F.2d 337, 346 (1st Cir. 1989)(emphasis added)(internal quotation marks omitted). "Thus the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." <u>LeBlanc</u>, 6 F.3d at 842 (citations omitted).

      *1.*      *Plaintiff cannot rebut Bank of America's legitimate non-discriminatory reason for discharging Plaintiff.*

The plaintiff must show both that the reason articulated by the employer is a sham and that discriminatory animus motivated its actions. <u>Straughn v. Delta Air Lines, Inc.</u>,

9

250 F.3d 23, 34 (1st Cir. 2001). It is well settled that a plaintiff's own opinions about his work performance or qualification do not sufficiently cast doubt on the legitimacy of his employer's proffered reasons for its employment actions. Shorette, 155 F.3d at 15 ("Although [an employee] may dispute . . . [the employer's] assessments, his personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext." Id. (citing Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997)("The inquiry into pre-text centers upon the employer's beliefs, and not the employee's own perceptions of his performance"). This is so because the courts may not sit as super personnel departments assessing the merits – or even the rationality – of employers' non discriminatory business decisions. Rodriguez-Cuevas v. Wal-Mart Stores, Inc., 181 F.3d 15, 22 (1st Cir. 1999).

In this case, Plaintiff has presented no evidence that his termination for poor performance was a pretext for age discrimination. Plaintiff merely disagrees with Ms. Burroughs' evaluation of his performance. Moreover, there is no evidence that Ms. Burroughs' assessments were obviously or manifestly unsupported. To the contrary, the evidence shows Plaintiff's performance was deficient in a number of areas. Statement of Facts ¶ 21-32 and 43-45. Plaintiff's questioning of the accuracy, specificity, or fairness of Ms. Burroughs' evaluations does not establish pretext. See Rodriguez-Cuevas, 181 F.3d at 22 (the questioning of the accuracy of the evaluations or the timing of the same is insufficient to show that the legitimate proffered reason for discharging an employee was actually a pretext for discrimination). Plaintiff's reliance on the opinions of his coworkers, which amounts to nothing more than congratulatory praise on a few projects, is similarly misplaced. See e.g., Phipps v. Gary Drilling Co., Inc., 722 F. Supp. 615, 620

(E.D. Cal. 1989)("Plaintiff's only argument in opposition to defendant's contention that his performance did not meet its expectations is that several other employees . . . [testified] that plaintiff is a good [employee] . . . . this testimony . . . does not establish that he met defendant's expectations for job performance").

Plaintiff admits that Ms. Burroughs never made any reference to Plaintiff's age. Statement of Facts ¶ 62. In fact the only evidence that Plaintiff offered that his termination was somehow related to his age was based on his knowledge that other employees had been terminated. Statement of Facts ¶ 63. Although Plaintiff did not know the employees' names, nor did he know the employees' ages, he heard that they were "more experienced employees, that had been around for a while." Statement of Facts ¶ 64. From that, Plaintiff surmised that the employees were "older than the average employee." Statement of Facts ¶ 65. Plaintiff's evidence is woefully short of that required to establish pretext. See Goldman, 985 F.2d at 1117 ("Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus")(citations omitted).

In sum, Plaintiff has proffered no evidence of discriminatory animus on the part of Bank of America, which is required to avoid summary judgment. See LeBlanc, 6 F.3d at 842-43 ("In the [first] circuit, [courts] have always required not only 'minimally sufficient evidence of pretext,' but evidence that overall reasonably supports a finding of discriminatory animus")(internal citations omitted).

11

> 2. *Both the decision to hire Plaintiff and the decision to discharge Plaintiff were made by Sheila Burroughs.*

While Mr. Kotopoulos was involved in the timing of Plaintiff's termination, the primary evaluation of his work and ultimate decision to discharge Plaintiff was made by Ms. Burroughs. Statement of Facts ¶ 43-45 and 48-49. Where an employee is both hired and fired by the same supervisor, called the "common actor" scenario, there exists a strong inference that age was not the motivating factor in the discharge. See, e.g., Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 512 (1st Cir. 1996); LeBlanc, 6 F.3d at 8; Grady v. Affiliated Cent., Inc., 130 F.3d 553 (2d Cir. 1997)(noting that the hiring and firing by the same actor makes it "difficult to impute to the [actor] an invidious motivation that would be inconsistent with the decision to hire"); Proud v. Stone, 945 F.2d 796 (4th Cir. 1991)(noting that "employers who hire workers within a protected group seldom will be credible targets for charges of pretextual firing"); Rand v. CF Inds., Inc., 42 F.3d 1139 (7th Cir. 1994)(noting that the hiring and firing of an employee within a protected class by a common actor would make it suspect that the employer "had suddenly developed an aversion to older people" shortly after hiring the plaintiff); Davis v. CSC Logic, Inc., 82 F.3d 651 (5th Cir. 1996)(applying same-actor presumption).

It is undisputed that Ms. Burroughs made the decision to hire Plaintiff for a position with Bank of America. Statement of Facts ¶ 11. At the time Ms. Burroughs hired him, Plaintiff was 49 years of age. Statement of Facts ¶ 12. Within nine months, Ms. Burroughs terminated Plaintiff for poor performance. Statement of Facts ¶ 48-50. Accordingly, there is a strong inference that the decision to terminate Plaintiff was not motivated by Plaintiff's age. See LeBlanc, 6 F.3d at 836. As Plaintiff has offered no

evidence of age animus on the part of Bank of America or any other evidence of age discrimination, he is not able to overcome this inference.

Based on the foregoing, Plaintiff's claim of age discrimination fails as a matter of law and Bank of America is entitled to summary judgment.

### III.   PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW.

The ADEA provides in pertinent part:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). Absent direct evidence, the McDonnell Douglas burden-shifting framework applies to cases of retaliation. Mesnick, 950 F.2d at 827.

To establish a prima facie case of retaliation, plaintiff must show that: 1) he engaged in "protected conduct;" 2) he suffered an adverse employment action; and 3) the adverse action was causally connected to the protected conduct. Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003).

However, there can be no retaliation unless the decision-maker actually knows about the plaintiff's protected activity. See Maarouf v. Walker Mfg. Co., 210 F.3d 750, 755-756 (7th Cir. 2000). Numerous federal courts have determined that a causal connection between the adverse employment action and the protected activity cannot be established when the decision-maker involved did not know that the plaintiff had engaged in the protected activity. See Talley v. U.S. Postal Serv., 720 F.2d 505, 508 (8th Cir. 1983)(affirming the district court's decision entering judgment as a matter of law for the defendant as to the plaintiff's retaliatory discharge claim when the plaintiff's supervisor

13

terminated the plaintiff for a valid reason and had no knowledge of her prior protected activity); McCollum v. Bolger, 794 F.2d 602, 610-11 (11th Cir. 1986)(affirming district court's finding that the plaintiff failed to establish a prima facie case of retaliation when evidence showed that the terminating supervisor did not know of the protected activity); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 ("to satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity . . . [s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). See also Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994)(dismissing claim because no evidence that relevant decision-maker knew that plaintiff had complained of discrimination); Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988)(dismissing claim because relevant decision-maker was unaware that plaintiff had filed a complaint with the EEOC).

In this case, Plaintiff has presented no evidence that the primary decision-maker, Sheila Burroughs, any of her supervisors, or anyone in the CAMR department knew that Plaintiff had engaged in protected activity. Rather, the undisputed evidence shows that Plaintiff did not complain of any alleged discrimination to Ms. Burroughs, the Bank of America Personnel Center, or any of Ms. Burroughs' supervisors. Statement of Facts ¶ 59-60.

The only complaint made by Plaintiff was through his attorney, Deborah Martin Norcross. Statement of Facts ¶ 60. On or about April 25, 2003, Ms. Norcross wrote a

14

letter to Bank of America Personnel Executive Steele Alphin asserting the Bank was terminating "older, highly paid employees." Statement of Facts ¶ 52. The letter was forwarded to the Bank's legal department and eventually received by Bank of America's Assistant General Counsel Eric Montgomery. Statement of Facts ¶ 53-54. However, Plaintiff admits that he has no evidence that Ms. Burroughs or other CAMR supervisors knew of Ms. Norcross' letter or that Plaintiff had complained of discrimination. Statement of Facts ¶ 61. Mr. Montgomery did not forward the letter to Ms. Burroughs or any of Ms. Burroughs' supervisors. Statement of Facts ¶ 55. Furthermore, Ms. Burroughs testified that neither she nor her supervisors were aware of Plaintiff's allegations of age discrimination until July 2003, after Plaintiff's termination. Statement of Facts ¶ 56. In her deposition, Ms. Burroughs testified regarding Plaintiff's allegations of retaliation as follows: "I didn't understand it, given that I couldn't have retaliated since I didn't know he had brought any kind of action." Statement of Facts ¶ 57.

This evidence is undisputed and Plaintiff's lack of evidence regarding the decision-maker's knowledge of his complaints defeats his retaliation claim. As a result, Bank of America is entitled to summary judgment.

IV.  **PLAINTIFF'S CLAIMS OF AGE DISCRIMINATION AND RETALIATION ARE UNTIMELY.**

The procedure for filing a claim in federal court for violation of the ADEA is set out in 29 U.S.C. § 616(d) and (e). In order to bring an ADEA claim in federal court, a plaintiff must first file a charge alleging unlawful discrimination with the EEOC. 29 U.S.C. §626(d). If a charge filed with the EEOC under section 626(d) is subsequently "dismissed or the proceedings of the Commission are otherwise terminated by the Commission," the EEOC is required to notify the complainant. Id. § 626(e). A civil suit

15

may be brought against the respondent named in the charge within 90 days of the receipt of such notice.  Id.

The 90 day limitations period is strictly enforced.  See Rice v. New England Coll., 676 F.2d 9, 10-11 (1st Cir. 1982)(affirming dismissal of Title VII claim filed 91 days after receipt of EEOC's right-to-sue notification on ground that "the court cannot extend the limitations period by even one day").  Where a plaintiff's attorney has received a copy of the notice, even though the plaintiff did not, the plaintiff's failure to file within 90 days is fatal.  Cheney v. Emmaus, Inc., 2004 U.S. Dist. LEXIS 19923, *4 (D.M.A. October 5, 2004).

"Normally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice."  Sherlock, 84 F.3d at 526.  Moreover, "[a plaintiff's] denial of receipt is, standing alone, insufficient to rebut the presumption that he received the right-to-sue letter" shortly after mailing by the EEOC.  See Hill v. Textron Automotive Interiors, Inc., 160 F. Supp. 2d 179, 184 (D.N.H. 2001).  It is assumed that the mailed documents were received three days after mailing.  See Sherlock v. Montefiore Medical Center, 84 F.3d 522, 525-26 (2nd Cir. 1996)(citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 n.1, 104 S. Ct. 1723 (1984)("Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party by mail, 3 days shall be added to the prescribed period").

In the present case, the EEOC Notice of Right to Sue and cover letter indicate that the notice was mailed from the EEOC's office to both Plaintiff and his attorney Deborah Martin Norcross on March 11, 2004.  Statement of Facts ¶ 67.  Based on the date of

16

mailing, there is a presumption that Plaintiff and his attorney received the notice of right to sue on or before March 14, 2004.[3] Plaintiff did not, however, file his complaint until July 7, 2004 – 118 days after the notice was mailed by the EEOC. Statement of Facts ¶ 69. Plaintiff's failure to file this action within 90 days of the receipt of the right-to-sue notice is fatal to his claims of age discrimination and retaliation.

V.  **PLAINTIFF CANNOT ESTABLISH A CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY.**

Along with claims under the ADEA, the Plaintiff alleges that he was discharged in violation of the public policy of North Carolina as set forth in the North Carolina Equal Employment Practices Act (NCEEPA). N.C. Gen. Stat. §143-422.1. The same evidentiary standards and principles applicable to ADEA cases are applicable to those under the NCEEPA. See e.g. Alerman v. Inmar Enters., Inc., 201 F. Supp. 2d 532, 546 (M.D.N.C. 2002).

Because the Plaintiff cannot establish that he has suffered any discrimination in violation of the ADEA, he also cannot state a claim for wrongful discharge under the NCEEPA. See e.g. Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 875 (2003).

VI. **NORTH CAROLINA DOES NOT RECOGNIZE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WHERE, AS HERE, THE EMPLOYMENT IS AT-WILL.**

---

[3] Plaintiff alleges in his complaint that he did not receive the EEOC's right-to-sue notification until April 8, 2004. Statement of Facts ¶ 68. However, he has offered no evidence to support this allegation. Moreover, Plaintiff has not even asserted that his lawyer received the notice after March 14, 2005. Even if Plaintiff did not actually receive the notice of right to sue within three days, he was required to file this action within 90 days of the receipt of the notice by his attorney. See Cheney v. Emmaus, Inc., 2004 U.S. Dist. LEXIS 19923, *4 (D.Mass. October 5, 2004)("It does not matter that the right to sue letter was ultimately delivered to the lawyer and not the client[;] . . . [e]ach party is deemed bound by the acts of her lawyer – agent and is considered to have notice of all facts, notice of which can be charged upon the attorney").

Plaintiff alleges as Count Four of his Complaint that Defendant's acts "breached the implied covenant of good faith and fair dealing that existed in Plaintiff's at-will employment contract."

However, it is well settled that North Carolina does not recognize a claim for breach of the implied covenant of good faith and fair dealing (also referred to as "bad faith discharge") in an at-will employment contract. See Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 688 (M.D.N.C. 1997)("North Carolina does not recognize a separate claim for bad faith discharge"); Phillips v. J.P. Stevens Co., Inc., 827 F. Supp. 349, 352 (M.D.N.C. 1993)("North Carolina does not recognize a separate exception to employment at will for a bad faith discharge or violation of an implied covenant of good faith").

Plaintiff has not alleged nor can he allege that he was other than an at-will employee at Bank of America. Plaintiff's formal offer letter specifically stated that Plaintiff's employment was "on an at-will basis" and was not "a guarantee of continued employment for any period of time . . . ." Statement of Facts ¶ 14. In addition, on June 27, 2002, Plaintiff executed an Applicant Acknowledgement Form in which he agreed that if he was "offered a position with Bank of America the offer [would] be for employment on an at-will basis; that is the employment relationship is not guaranteed for

18

any specific period of time, and may be ended by Bank of America or [Plaintiff] at any time with or without notice or cause." Statement of Facts ¶ 15.

Based on the foregoing, Bank of America is entitled to summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing claim arising out of Plaintiff's at-will employment relationship. See Salt v. Applied Analytical, Inc., 104 N.C. App. 652, 412 S.E.2d 97 (N.C. App. 1991) cert. denied, 331 N.C. 119, 415 S.E.2d 200 (N.C. 1992)(affirming summary judgment on breach of implied covenant of good faith and fair dealing because North Carolina law does not recognize cause of action).

## CONCLUSION

Based on the foregoing, Bank of America requests the Court enter an Order granting its Motion for Summary Judgment; dismissing Plaintiff's Complaint, with prejudice; awarding it the costs incurred in this action, including its reasonable attorneys' fees; and granting such other relief as the Court deems just and proper.

        Respectfully submitted,
        Bank of America Corporation,
        Defendant
        By its attorneys,


        /s/ Siobhan Sweeney
        Siobhan Sweeney
        BBO No. 562118
        Edwards & Angell, LLP
        101 Federal Street
        Boston, MA 02110
        Phone:    617.439.4444
        Fax:    617.439.4170

>Richard F. Kane (admitted pro hac vice)
>Steven T. Ackermann (admitted pro hac vice)
>McGuireWoods LLP
>Bank of America Corporate Center
>100 North Tryon Street, Suite 2900
>Charlotte, North Carolina 28210
>Telephone:	704.373.8999
>Facsimile:	704.373.8827

Dated: October 21, 2005

Certification of Conference Pursuant to LR 7.1

I hereby certify that prior to filing, the parties, through their counsel, have conferred with respect to Defendant's Motion For Summary Judgment and the issues raised therein, in an effort to narrow the areas of disagreement.

>__/s/ Siobhan Sweeney_____