UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVEN R. KINCAID, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Civil Action No. 05-11522-WGY |
| BANK OF AMERICA CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Bank of America submits this reply to Plaintiff's opposition to the Bank's motion for summary judgment. As shown below, Plaintiff has not made out a prima facie case of age discrimination, or produced evidence from which a reasonable juror could conclude that Bank of America retaliated against him for complaining of age discrimination. Plaintiff has not even attempted to rebut the Bank's demonstration that Plaintiff's Count Four – for breach of the "implied covenant of good faith and fair dealing that existed in Plaintiff's at-will employment contract" – is not cognizable under North Carolina law.

For all of these reasons, the Bank's motion for summary judgment should be granted.

**I. The Bank Is Entitled To Summary Judgment On Plaintiff's Age Discrimination Claim**

In its opening memorandum, the Bank argued that Plaintiff cannot establish two elements of a prima facie case of age discrimination: that he was meeting the Bank's legitimate job performance expectations, and that he was replaced by a person with roughly equivalent job

qualifications.  See Bank Mem., pp. 3-9.  Plaintiff's responses do not create any genuine issue of fact.

### A. Plaintiff Was Not Meeting The Bank's Legitimate Job Expectations

The Bank provided a very detailed discussion of Plaintiff's performance shortcomings in its memorandum and its Statement Of Material Facts.  In response, Plaintiff presents but two main arguments.  First, Plaintiff notes that in December 2002 – six months before he was terminated – the Bank described his job performance as "solid," and did not record his performance shortcomings in a writing until April 2003.  Pl. Mem. at 1-2.  Second, Plaintiff argues that the Bank put him on a 90-day performance warning in April 2003, but then terminated his employment before the conclusion of that period.

Even if these arguments were accepted, no reasonable juror could conclude that Plaintiff was meeting the Bank's job performance expectations at the time he was discharged in June 2003.  The fact that Plaintiff was rated as "solid" in December 2002 (barely four months after he began working at the Bank) says nothing about his performance over the next six months.  The Bank's evidence is that it was during this period that Plaintiff's performance problems became so acute that he was given a formal termination warning.  See Bank's Statement Of Material Facts, ¶¶ 35-48.  Plaintiff does not offer any evidence at all to rebut this evidence.

Similarly, the fact that the Bank did not record its criticism of Plaintiff's work until April 2003 does not raise a genuine issue as to whether he was performing his job adequately at the time he was terminated two months later.  This is especially true because Plaintiff's supervisor met with Plaintiff weekly throughout 2003 to give him coaching and counseling with regard to his performance deficiencies, a fact that Plaintiff does not deny.  Id. ¶¶ 33-34.

Plaintiff's argument regarding the 90-day performance warning is a <u>non-sequitur</u>.[1]  He contends that, because less than 90 days elapsed before he was discharged, "his job performance was sufficiently meeting the Bank's legitimate expectations that [he] was entitled to the full 90-day period."  Pl. Mem. at 2.  Just the opposite is true.  The fact that Plaintiff was discharged before 90 days had elapsed hardly demonstrates that Plaintiff was performing as required; to the contrary, it confirms that his job performance was inadequate.

### B. The Plaintiff Was Not Replaced

Plaintiff does not dispute the Bank's contention that he was not replaced.  Instead, Plaintiff attempts to change the standard applicable to the prima facie showing he must make.  He contends that this is a "reduction in force case," with the result that his only burden is to show that the Bank failed to treat age neutrally.  Pl. Mem. at 3.[2]

Plaintiff's "reduction in force" argument is specious.  Plaintiff correctly notes that two other members of the four-person Customer Satisfaction unit in which Plaintiff worked – Burroughs and Hart -- transferred to other jobs within the Bank.  Pl. Mem. at 3-4.  But he fails to point out that both of these transfers were completely voluntary, and were initiated by Burroughs and Hart themselves.  This is undisputed.  <u>See</u> Fine Aff. Ex. 5, pp. 3-8.  In the complete absence of any evidence that Burroughs and Hart were transferred against their will, Plaintiff's argument that "a decision was made to disband or overhaul the existing Customer Satisfaction unit," Pl. Mem. at 4, is utter speculation, and provides no support for his delusion that a reduction in force

---

[1] As an initial matter, it is not clear whether Plaintiff was given 60 or 90 days – or any set time at all – to improve his performance.  At one point in his deposition Mr. Kotopoulos stated that Plaintiff was given 90 days to improve; but at another point he stated "I forget whether it was 60- or 90-day period" and "I don't remember these things.  I don't remember.  That's the answer."  Affidavit of Mark A. Pogue, Ex. A, pp. 111-112.

[2] "A plaintiff whose employment was terminated in the course of a reduction in force need not demonstrate that he was <u>replaced</u>, but may show that the employer did not treat age neutrally or that younger persons were retained in the same position." <u>Goldman v. First National Bank of Boston</u>, 985 F.2d 111, 1117 (1st Cir. 1993) (quotation marks omitted).

occurred.  Since no reduction in force occurred, the "treat age neutrally" element of the prima facie showing does not apply.

Anticipating that his "reduction in force" argument will not be credited, Plaintiff offers a fall-back position:  that the Bank had a "continuing need" for the services Plaintiff had been rendering.  Pl. Mem. at 4.[3]  But his evidence does not even raise a genuine issue on this point.  The reason is that Plaintiff fails to distinguish the services <u>he</u> had been asked to perform – developing a strategy for proving the value of customer satisfaction to the Bank, and convincing different leaders within the Bank to adopt that strategy – from the work being performed in the 100-plus-member CAMR department generally.  Thus, Plaintiff's observation that the CAMR group was "always looking for people with statistical expertise" says nothing about whether the Bank had a continuing need for the specialized services that <u>Plaintiff</u> was supposed to be performing.  The same is true of the fact that the CAMR department hired a "Ph.D. stats guy" after Plaintiff's departure.

In short, Plaintiff's observations about the general nature of the work performed in the large CAMR department do not establish <u>either</u> that Plaintiff was replaced with another employee with equivalent qualifications, <u>or</u> that the Bank had a continuing need for Plaintiff's services after he was discharged.

For all of these reasons, Plaintiff has failed to establish a prima facie case of age discrimination.  The Bank is therefore entitled to summary judgment on Count I of the Complaint.

---

[3] In <u>Suarez v. Pueblo International, Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2003), the First Circuit stated that the fourth element of the prima facie proof requires the plaintiff to show "that the employer had a continuing need for the services that he had been rendering."

**II. The Bank Is Entitled To Summary Judgment On Plaintiff's Claim Of Retaliation**

In its opening brief the Bank argued that Plaintiff's retaliation claim is defective because no one at the Bank involved in the decision to discharge Plaintiff was aware of his protected activity (a letter sent by his lawyer, Deborah Norcross, in April 2003).[4]  As a result, there was no causation between the protected activity and the adverse employment action.  Pl. Mem. at 13-15.

In response, Plaintiff argues that the temporal proximity between the Bank's receipt of the Norcross letter and the Plaintiff's termination – by itself – is sufficient to demonstrate causation, and to avoid summary judgment on his retaliation claim.  Pl. Mem. at 17.

Plaintiff misreads the law.  Whether or not temporal proximity exists, to demonstrate causation a retaliation plaintiff must demonstrate that the decision-maker was aware of the protected activity.  As one court has stated:

> [W]hile temporal proximity is evidence of causation, the pertinent issue is whether the person who made the decision to terminate a plaintiff's employment was aware of the discrimination allegations at the time of the alleged retaliatory termination, because absent such knowledge [a plaintiff] lacks a causal link between the termination and the complaint of discrimination.

O'Donnell v. Pinnacle Corporation Town And Country Homes, 2004 WL 1718483 (N.D. Ill. 2004); accord Gonzalez v. J.E. Merit Constructors, Inc., 263 F.3d 162, 165 (5th Cir. 2001); Patmythes v. City Of Janesville, 373 F. Supp.2d 924, 936-37 ((W.D. Wis. 2005); Owens v. Excel Management Services, Inc., 2004 WL 358153 * 11 (W.D.Tex. 2004).

The cases cited by Plaintiff in support of his temporal proximity argument – Wyatt v. City of Boston, 35 F.3d 13 (1st Cir. 1994) and Shirley v. Chrysler First, Inc., 970 F.2d 39 (5th Cir.

---

[4] The Norcross letter is the only protected activity involved in the case.  Plaintiff himself never complained to anyone at the Bank about the alleged discrimination.  Sweeny Aff., Ex. A, vol. I, pp. 20-21, 78-79; Sweeny Aff., Ex. D, p. 116-17.

1992) -- do not help him, because in those cases the employer did not deny that its decision-maker knew of the protected activity.[5]

Anticipating that his temporal proximity argument is insufficient to stave off summary judgment, Plaintiff goes on to advance another fall-back argument: that a reasonable jury could conclude that the Bank's decision-maker (Burroughs) or her supervisor (Kotopoulos) <u>was</u> aware of the Norcross letter at the time Plaintiff was discharged. Def. Mem. at 18. The basis of this argument is that the Bank's in-house attorney who received the Norcross letter, Eric Montgomery, testified that he was "not sure" whether he notified Burroughs or any other person in Plaintiff's work group of his receipt of that letter. <u>Id</u>.

There is not enough evidence on this point to permit the question to go to the jury. The state of the record is as follows. The primary decision-maker, Burroughs, testified categorically that she did not see the Norcross letter before Plaintiff was discharged. Bank's Statement of Facts, ¶ 57. Burroughs' supervisor, Kotopoulos, also denied categorically that he saw the letter. Sweeney Aff., Ex. D, p. 116. Plaintiff, for his part, admits that he has no evidence that Burroughs or other any supervisors within his work group saw the letter before he was discharged. Bank Statement of Facts, ¶ 61. And Montgomery, who received the letter, is "not sure" whether he told Burroughs about the letter.

In the face of Burroughs' flat denial that she was aware of the Norcross letter, the fact that Montgomery was "not sure" if he sent the letter to Burroughs simply does not create a genuine issue which a reasonable jury could conclude that Burroughs saw the letter. As a consequence, judgment should enter for Bank of America on Plaintiff's retaliation claim**.** See <u>Ratay v.</u>

---

[5] Or, as the Fifth Circuit stated in <u>Gonzalez v. J.E. Merit Constructors, Inc.</u>: "Unfortunately for [plaintiff], all of these [temporal proximity] cases are inapplicable to the present situation because in each of them it was undisputed that the decision makers were aware of the employee's protected activity. [Plaintiff] has cited no temporal proximity cases in which the decision maker did not know about the employee's protected activity." 263 F.3d at 165.

Montgomery Ward & Co., 1993 U.S. Dist. LEXIS 3945, 10-11 (D. Ill. 1993)(Summary judgment granted in retaliation claim where defendant presented unrebutted deposition testimony that supervisor responsible for plaintiff's discharge was unaware of age-discrimination complaint until after plaintiff was discharged).

### III. The Bank Is Entitled To Summary Judgment On Count IV Of The Complaint

In its opening brief the Bank demonstrated that Count Four of the Complaint, which purports to state a claim under North Carolina law for breach of the implied covenant of good faith and fair dealing, fails to state a claim upon which relief can be granted.  Pl. Mem. at 17-19.  Plaintiff has not asserted any objection to the Bank's argument as to this Count.  The Bank is therefore entitled to summary judgment on Count IV.

### Conclusion

For the foregoing reasons, Bank of America's Motion For Summary Judgment should be granted.

Respectfully submitted,

BANK OF AMERICA CORPORATION,

By its Attorneys,

/s/ Siobhan Sweeney
Siobhan Sweeny
BBO No. 562118
EDWARDS ANGELL PALMER & DODGE, LLP
101 Federal Street
Boston, MA  02110
Phone:  617.439.4444
Fax:     617.439.4170