UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN R. KINCAID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 05-11522-WGY |
| ) | |
| BANK OF AMERICA CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### AFFIDAVIT OF MARK A. POGUE

Now comes Mark A. Pogue, who deposes and swears as follows:

1. My name is Mark A. Pogue. I am an attorney with the law firm of Edwards Angell Palmer & Dodge, LLP and I am counsel for Bank of America Corporation, the defendant in this matter.

2. Attached hereto in connection with defendant's Reply To Plaintiff's Opposition To Defendant's Motion for Summary Judgment are the following exhibits:

Exhibit A:   Excerpts from the deposition of Alex Kotopoulos

Signed under the penalties of perjury this 9th day of December 2005.

/s/ Mark A. Poque
Mark A. Pogue (BBO# 550807)
EDWARDS ANGELL PALMER & DODGE, LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

Sworn to before me this ____ day of December, 2005.

_____
Notary Public
My Commission Expires: _____

DEPOSITION OF ALEX KOTOPOULOS

---

PAGE 1  SHEET 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEVEN R. KINCAID,         )
                           )
         Plaintiff,        )
                           )
vs.                        )  CIVIL ACTION NO.
                           )  04-11522-WGY
BANK OF AMERICA CORPORATION,)
                           )
         Defendant.        )

DEPOSITION

OF

ALEC KOTOPOULOS

At Charlotte, North Carolina

June 2, 2005

Reporter: Christine A. Taylor
          Notary Public

---

PAGE 2

Kotopoulos                                              2

APPEARING

For the Plaintiff:   DAVID J. FINE, ESQ.
                     Law Offices of David J. Fine
                     Suite 400
                     Three Center Plaza
                     Boston, Massachusetts 02108

For the Defendant:   RICHARD P. KANE, ESQ.
                     McGuireWoods, LLP
                     Suite 2900
                     100 North Tryon Street
                     Charlotte, North Carolina 28202

Also Present:        Steven Kincaid

* * * * *

INDEX
                                                     PAGE
Examination By Mr. Fine                                3

EXHIBITS

(No exhibits were marked.)

Miller Reporting Services
(704) 543-7183

---

PAGE 3

Kotopoulos                                              3

1       This is the deposition of ALEC KOTOPOULOS, taken
2  in accordance with the Federal Rules of Civil Procedure
3  in connection with the above case.
4       Pursuant to Notice, this deposition is being taken
5  in the Law Offices of Hamilton, Fay, Moon, Stephen,
6  Steele & Martin, 2020 Charlotte Plaza, 201 South College
7  Street, Charlotte, North Carolina, beginning at 9:00 a.m.
8  on June 2, 2005, before CHRISTINE A. TAYLOR, Notary
9  Public.
10
11       ALEC KOTOPOULOS, upon first being duly
12 sworn, testified as follows:
13
14              EXAMINATION BY MR. FINE
15   Q.   Please state your full name.
16   A.   Alec Kotopoulos.
17   Q.   Could you spell the last name?
18   A.   K-o-t-o-p-o-u-l-o-s.
19   Q.   Where do you reside?
20   A.   In Charlotte, North Carolina.
21   Q.   How are you employed?
22   A.   I'm not.
23   Q.   When is the last time you were employed?
24   A.   With Bank of America. So that would have
25 been 2004.

Miller Reporting Services
(704) 543-7183

---

PAGE 4

Kotopoulos                                              4

1    Q.   When did you leave the bank in 2004?
2    A.   February.
3    Q.   What were the circumstances of your leaving?
4    A.   Merger.
5    Q.   Who merged with whom?
6    A.   Fleet and Bank of America. Bank of America
7  bought Fleet.
8    Q.   And at the time of the merger various people
9  at Bank of America were let go?
10   A.   That's my understanding.
11   Q.   Did you receive a severance package?
12   A.   I received a package. I was offered a
13 package and accepted the package.
14   Q.   What were the terms of the package?
15   A.   That's private between the bank and I.
16   Q.   Well --
17   A.   There were monetary, if that's what you're
18 asking.
19   Q.   Well, you're being called to testify as a
20 witness in this case and the financial terms would be
21 potentially relevant to your bias in the case, so I
22 think that it is a fair subject of examination.
23        MR. KANE:  Bias to?
24        MR. FINE:  How he feels about the bank. If
25 he got a good severance package, he might be more

Miller Reporting Services
(704) 543-7183

DEPOSITION OF ALEX KOTOPOULOS

**PAGE 109**

Kotopoulos 109

1  A. Oh, yes.
2  Q. It was something that was discussed?
3  A. Yes.
4  Q. Okay. What did you say on that subject and
5  what did Ms. Burroughs say on that subject?
6  A. I don't know. I don't remember the
7  specifics.
8  Q. Did both of you recognize the possibility
9  that Mr. Kincaid could turn things around so that it
10 would not be necessary to terminate?
11 A. To the best of my knowledge, yes.
12 Q. And did you discuss any ideas with
13 Ms. Burroughs about how to coach or counsel
14 Mr. Kincaid so that it would not be necessary to
15 terminate him?
16 A. To the best of my knowledge, yes.
17 Q. Do you remember any of the ideas that you or
18 Ms. Burroughs discussed on that subject?
19 A. No. No.
20 Q. Did you discuss with Ms. Burroughs how long a
21 period of time Mr. Kincaid should be given to see
22 whether he could turn things around such that it would
23 not be necessary to terminate him?
24 A. No.
25 Q. You didn't discuss that?

Miller Reporting Services
(704) 543-7183

**PAGE 110**

Kotopoulos 110

1  A. No.
2  Q. Was the time that Mr. Kincaid was going to be
3  given left open and indefinite?
4  A. No, because that's an advice and counsel
5  issue.
6  Q. What do you mean by that?
7  A. Again, that 60 or -- I forget whether it was
8  60- or 90-day period.
9  Q. In other words -- are you saying that you had
10 no discretion about how long Mr. Kincaid was going to
11 be given to try to turn things around?
12 A. Oh, sure, I had discretion, yes.
13 Q. So who made the decision about how long he
14 was going to be given to try to turn things around?
15 A. Sheila and I jointly.
16 Q. Okay. And what did you decide?
17 A. We decided that we had heard a lot of bad
18 stuff from clients, we had decided that we had
19 internal feedback from Pierce and direct reports of
20 mine that was not positive with respect to the work he
21 was working on, and we had a situation here where we
22 felt Steve had been given a fair amount of time to
23 prove himself, so now it's time to give him a chance
24 through the probationary period to work through this
25 process. Either it was going to work or it wasn't

Miller Reporting Services
(704) 543-7183

**PAGE 111**

Kotopoulos 111

1  going to work.
2  Q. Mr. Kotopoulos, do you remember the question
3  that I asked you?
4  A. Yeah, the period of time.
5  Q. That you and Ms. Burroughs decided you were
6  going to give Mr. Kincaid to try to turn things
7  around?
8  A. Right.
9  Q. What did you decide?
10 A. Just like with everybody else, the 90-day
11 period.
12 Q. Okay. And did you and Ms. Burroughs discuss
13 the fact that Ms. Burroughs should say to Mr. Kincaid
14 you are going to be given 90 days to try to turn
15 things around?
16 A. Ask the question again please.
17 Q. Did you discuss with Ms. Burroughs that she
18 should say to Mr. Kincaid that he was going to be
19 given 90 days to try to turn things around?
20 A. I instructed Sheila to talk to advice and
21 counsel just like I did with everybody else.
22 Q. So is your response to my answer no?
23 A. No. The answer is no.
24 Q. So you didn't say to Sheila Burroughs tell
25 Mr. Kincaid he's got 90 days to try to turn things

Miller Reporting Services
(704) 543-7183

**PAGE 112**

Kotopoulos 112

1  around?
2  A. I don't recall that.
3  Q. Okay. You do recall that you decided that he
4  would be given 90 days to turn things around?
5  A. Yes.
6  Q. That you decided?
7  A. Yes. Absolutely.
8  Q. But you decided -- not -- or you didn't say
9  to Ms. Burroughs that you should tell Mr. Kincaid that
10 he's being given 90 days; right?
11 A. Again, I don't remember these things. I
12 don't remember. That's the answer.
13 Q. Okay. So you might have told her to tell
14 Mr. Kincaid he's got 90 days?
15 A. Possibly.
16 Q. Okay. And you remember that you told
17 Ms. Burroughs to talk to advice and counsel?
18 A. Absolutely.
19 Q. And did Ms. Burroughs report back to you at
20 some point that she had spoken to advice and counsel
21 regarding Mr. Kincaid?
22 A. Yes.
23 Q. And what did she say?
24 A. She said we need to set up an action plan.
25 Q. And what did you understand action plan to

Miller Reporting Services
(704) 543-7183