UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN R. KINCAID, <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 04-11522-WGY

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
SANCTIONS BASED ON BANK'S UNJUSTIFIED FAILURE TO
MAKE CRITICAL FED.R.CIV.P. 26(a)(1) DISCLOSURES

David J. Fine, BBO # 165120
Law Offices of David J. Fine
3 Center Plaza, Suite 400
Boston, MA  02108
(617) 720-2941

Attorney for Plaintiff

Table of Contents

Discovery Conference                                                                    1

Nature of the Case and Statement of Facts

Facts Relevant to Discovery Matters to be Decided ....

Argument ...

I.      The Bank's Failure to Identify Alec Kotopoulos and
        Failure to Identify the Personnel Center's Performance
        Management Memorandum Regarding Mr. Kincaid in the
        Bank's November 30, 2004 Initial Disclosures, Were in
        Clear Violation of Fed.R.Civ.P. 26(a)(1), and Were
        "Without Substantial Justification." ...................................   1

        A.      Rule and Discovery Responses Raising Issue              2

        B.      Mr. Kincaid's Position                                  4

II.     The Bank Cannot Defend its Failures to Identify Mr. Kotopoulos
        and the Performance Management Memorandum on the Ground
        that the Bank Disclaims any Intention to "Use" Them Unless
        the Bank is Prepared to Adhere Strictly to that Disclaimer and
        Unless the Bank is Prepared to Accept the Powerful Adverse
        Inference Naturally Flowing from Such a Disclaimer ..............   7

III     The Bank's Violations of Fed.R.Civ.P. 26(a)(1) Were Prejudicial,
        and Warrant the Imposition of Sanctions. ............................  8

        A.      Prejudice to Discovery and Entire Process of the Case   8

        B.      Flouting of Letter and Spirit of Rule .                 10

IV.     Appropriate Sanctions Include: (1) Informing the Jury of the
        Bank's Violations; (2) Striking Mr. Kotopoulos' Deposition
        Testimony from the Bank's Summary Judgment Papers;
        (3) Precluding the Bank from Using Mr. Kotopoulos or the
        Performance Management Memorandum at Trial; and
        (4) Requiring the Bank to Pay Mr. Kincaid an Award of
        Reasonable Attorney's Fees and Expenses Plus a Monetary
        Penalty Calculated to Deter Comparable Misconduct By the
        Bank in the Future ..................................................  11

Discovery Conference

The parties held a discovery conference by telephone on December 22, 2005 at approximately 9:30 a.m. The conference lasted about 20 minutes. Mr. Kincaid was represented by undersigned counsel, David J. Fine. The Bank was represented by Siobhan M. Sweeney of Edwards Angell Palmer & Dodge. The parties were unable to reach agreement on any issue The issues to be decided by the Court are described in this Memorandum

Nature of the Case and Statement of Facts

Mr. Kincaid incorporates herein by reference the "Nature of the Case" and "Statement of Facts" sections from Mr. Kincaid's August 11, 2005 Memorandum in support of his first Motion to Compel Discovery. Mr. Kincaid also incorporates herein by reference the discussion of the facts of this case contained in his November 28, 2005 Memorandum in Opposition to Defendant's Motion for Summary Judgment.

Facts Relevant to Discovery Matters to be Decided

These facts are set out in the argument sections of this Memorandum below

Argument

I.     THE BANK'S FAILURE TO IDENTIFY ALEC KOTOPOULOS AND FAILURE TO IDENTIFY THE PERSONNEL CENTER'S PERFORMANCE MANAGEMENT MEMORANDUM REGARDING MR. KINCAID IN THE BANK'S NOVEMBER 30, 2004 INITIAL DISCLOSURES, WERE IN CLEAR VIOLATION OF FED.R.CIV.P. 26(a)(1), AND WERE "WITHOUT SUBSTANTIAL JUSTIFICATION."

A.    Rule and Discovery Responses Raising Issue

Fed.R.Civ.P. 26(a)(1) provides in pertinent part:

> . . . [A] party must, without awaiting a discovery request, provide to other parties:
>
> > (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;
> >
> > (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment . . . .

The Bank's November 30, 2004 Rule 26(a)(1) Initial Disclosures, reproduced as Exhibit

1 to this Memorandum, stated in pertinent part

> Bank of America Corporation (hereinafter "Defendant") makes the following initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and Local Rule 26.2(A):
>
> A.    The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying subjects of the information;
>
> **RESPONSE:**
>
> > **1.     Sheila K. Burroughs . .**
> >
> > **2.     Susan Haloulos**
> >
> > **3.     Allison Hart**
> >
> > **4.     LeRoy Leiker . . .**
> >
> > **5.     Vipin Mayar . .**

2

      **6.**      **Rick McFarland . .**

      **7.**      **Kimela Heenan . . .**

      B.      A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

**RESPONSE:**

      **1.**      **Plaintiff's personnel file;**

      **2.**      **Bank of America's Sexual Harassment and Discrimination Policy;**

      **3.**      **Plaintiff's EEOC charge;**

      **4.**      **Written Performance Counseling Regarding Plaintiff dated April 16, 2004;**

      **5.**      **Plaintiff's Performance Plan and Evaluation Form for 2003;**

      **6.**      **Plaintiff's employment offer letter dated July 22, 2002; and**

      **7.**      **Plaintiff's Applicant Acknowledgment Form dated June 27, 2002.**

The Bank's September 8, 2005 Supplemental Rule 26(a)(1) Initial Disclosures, reproduced as Exhibit 2 to this Memorandum, stated in pertinent part

      Bank of America Corporation (hereinafter "Defendant") makes the following supplemental initial disclosures pursuant to Rule 26(e) of the Federal Rules of Civil Procedure:

      A.      The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying subjects of the information;

**RESPONSE:**

1.   **Sheila K. Burroughs . . .**

2.   **Susan Haloulos**

3.   **Allison Hart .**

4.   **LeRoy Leiker . . .**

5.   **Vipin Mayar . . .**

6.   **Rick McFarland**

7.   **Kimela Heenan**

8.   **Elizabeth Janak . .**

9.   **Martha W. Moore . . .**

B.    <u>Mr. Kincaid's Position</u>

As demonstrated in section I. B. 4. c. of Plaintiff's Memorandum in Opposition to

Defendant's Motion for Summary Judgment, which section is incorporated herein by reference,

Alec Kotopoulos was the Bank executive who made the decision to terminate Mr. Kincaid.  This

is shown by Mr. Kotopoulos' deposition testimony, Ms. Burroughs' deposition testimony, and by

the Personnel Center's Performance Management Memorandum memorializing in detail Ms

Burroughs' communications with the Personnel Center regarding Mr. Kincaid during the

relevant period of time.  Consequently, there can be no doubt that Mr. Kotopoulos was an

individual with "discoverable information" that the Bank was obligated by Fed.R.Civ.P

26(a)(1)(A) to identify in the Initial Disclosures the Bank served on November 30, 2004

Just as clearly, the Personnel Center's Performance Management Memorandum regarding

Mr. Kincaid (BA 110 -  15)(previously submitted to the Court as Exhibit 1 to the 11/28/05

Affidavit of undersigned counsel in opposition to the Bank's Motion for Summary Judgment)

4

was a document that the Bank was obligated to identify in its Initial Disclosures by Fed.R.Civ.P

26(a)(1)(B).

The Bank's failures to identify Mr. Kotopoulos and the Performance Management

Memorandum were violations of Fed.R.Civ.P. 26(a)(1) without any justification or excuse, let

alone the "substantial justification" referred to in Fed.R.Civ.P. 37(c)(1). Indeed, it may be

inferred that the Bank consciously decided not to disclose Mr. Kotopoulos and the Performance

Management Memorandum because the Bank hoped to frustrate or at least delay Mr. Kincaid's

and this Court's efforts to learn the truth regarding the Bank's firing of Mr. Kincaid. This may

be inferred because Mr. Kotopoulos was not simply a supporting player in the dramatis personae

of this case; he was a leading, if not the leading actor. And the Performance Management

Memorandum was not simply one among many potentially relevant documents; it was the

central and most revealing record of the facts regarding the Bank's firing of Mr. Kincaid

Nor can it be seriously entertained that the Bank did not know of the existence or

probable existence of the Performance Management Memorandum at the time it served its Initial

Disclosures. Virtually every Bank witness deposed in this case, has testified that consulting with

the Personnel Center for "advice and counsel," was standard operating procedure at the Bank

whenever an employee was, like Mr. Kincaid, given a performance warning. Further, Sheila

Burroughs testified at the first session of her deposition, about her communications with the

Personnel Center regarding Mr. Kincaid. 6/1/05 Burroughs Dep. 32 - 33, reproduced in Exhibit

3 to this Memorandum. And Mr. Kotopoulos likewise testified at the first session of his

deposition that he instructed Ms. Burroughs to communicate with the Personnel Center for

advice and counsel regarding the potential termination of Mr. Kincaid, and that Ms. Burroughs

reported to Mr. Kotopoulos regarding her communications with the Personnel Center. 6/2/05 Kotopoulos Dep. 15,  12, reproduced in Exhibit 4 to this Memorandum

From all this, it may be concluded with confidence that at the time the Bank served its Initial Disclosures on November 30, 2004, the Bank either knew of the Personnel Center's Performance Management Memorandum regarding Mr. Kincaid and its contents or had strong reason to believe that such a memorandum existed and willfully chose to be blind to what such a memorandum would disclose

The inference that the Bank intentionally obstructed Mr. Kincaid's gaining access to the Performance Management Memorandum is strengthened by the fact that the Bank not only failed to identify the Memorandum in its November 30, 2004 Initial Disclosures; the Bank also failed to produce the Memorandum in its May 9, 2005 Response to Plaintiff's First Request for Production of Documents or to identify the Memorandum in its May 9, 2005 Responses to Plaintiff's First Set of Interrogatories. Indeed, even after the initial depositions of Sheila Burroughs and Alec Kotopoulos on June 1, and 2, 2005 made crystal clear that the Bank's May 9, 2005 production of documents had been woefully deficient for failing to include, among other things, any Personnel Center documents regarding Mr. Kincaid, the Bank continued to drag its feet, and did not produce the Performance Management Memorandum until July 1, 2005, the last day of the period initially set by the parties and the Court for completion of fact discovery

In sum, it is apparent that the Bank consciously decided not to identify Mr. Kotopoulos and the Performance Management Memorandum in its November 30, 2004 Initial Disclosures for the worst, and least defensible of reasons, namely, a desire to hide the truth

6

II    THE BANK CAN<u>NOT</u> DEFEND ITS FAILURES TO IDENTIFY
MR. KOTOPOULOS AND THE PERFORMANCE
MANAGEMENT MEMORANDUM ON THE GROUND THAT
THE BANK DISCLAIMS ANY INTENTION TO "USE" THEM
UNLESS THE BANK IS PREPARED TO ADHERE STRICTLY
TO THAT DISCLAIMER AND UNLESS THE BANK IS
PREPARED TO ACCEPT THE POWERFUL ADVERSE
INFERENCE NATURALLY FLOWING FROM SUCH A
DISCLAIMER.

The Advisory Committee Note to the 2000 Amendment of Fed.R.Civ.P. 26(a)(1)

provides in pertinent part:

> The initial disclosure obligation of subdivisions (a)(1)(A)
> and (B) has been narrowed to identification of witnesses and
> documents that the disclosing party may use to support its claims or
> defenses. "Use" includes any use at a pretrial conference, to
> support a motion, or at trial. The disclosure obligation is also
> triggered by intended use in discovery, apart from use to respond to
> a discovery request; use of a document to question a witness during
> a deposition is a common example. The disclosure obligation
> attaches both to witnesses and documents a party intends to use and
> also to witnesses and to documents the party intends to use if -- in
> the language of Rule 26(a)(3) -- "the need arises."
>
> A party is no longer obligated to disclose witnesses or
> documents, whether favorable or unfavorable, that it does not
> intend to use. . . .

In light of the foregoing, Mr. Kincaid anticipates that the Bank may seek to defend its

failures to identify Alec Kotopoulos and the Performance Management Memorandum on the

ground that the Bank disclaims any intention to "use" them within the meaning of the above-

quoted Note. In anticipation of any such purported defense, Mr. Kincaid wishes to emphasize

the following.

First, as stated in section I above, Mr. Kotopoulos is the Bank executive who decided to

fire Mr. Kincaid, and the Performance Management Memorandum is the central and most

revealing record of the facts regarding the Bank's firing of Mr. Kincaid. If the Bank disclaims

7

any intention to "use" Mr. Kotopoulos or the foregoing Memorandum, it would have to accept the very powerful adverse inference naturally flowing from such a disclaimer. The Bank would have to be prepared for the Court to say to the members of the jury that, no matter what evidence the jury may see and hear, the Bank has disclaimed making any use of Mr. Kotopoulos or any use of the Performance Management Memorandum, and the jury is free to draw an adverse inference against the Bank based on that disclaimer.

Second, the Advisory Committee Note quoted above defines "use" very broadly and if the Bank genuinely disclaims use, it would have to adhere strictly to the full scope of the Advisory Note's definition. In this regard, it must be emphasized that the Bank has already attempted to use Mr. Kotopoulos and the Performance Management Memorandum in a manner inconsistent with such a disclaimer. Thus, in its Motion for Summary Judgment, the Bank has cited, and relied upon, excerpts from Alec Kotopoulos' deposition. And in its July 1, 2005 Supplemental Response to Mr. Kincaid's Interrogatory 8 asking the Bank to "STATE THE BASIS for defendant's decision to terminate plaintiff's employment," the Bank cites, and thereby "uses," the Performance Management Memorandum, BA 111-115.

III.    THE BANK'S VIOLATIONS OF FED.R.CIV.P. 26(a)(1) WERE
        PREJUDICIAL, AND WARRANT THE IMPOSITION OF
        SANCTIONS.

The Bank's violations of Fed.R.Civ.P. 26(a)(1) were prejudicial (1) because they made discovery, and the entire process of the case, much more time-consuming and expensive than it should have been; and (2) because they flouted the letter and spirit of the Rule.

A.    Prejudice to Discovery and Entire Process of the Case

8

Although Mr. Kincaid knew that Alec Kotopoulos was Sheila Burroughs' supervisor, Mr Kincaid did <u>not</u> know that Mr. Kotopoulos had played any role, let alone the leading and dispositive role, in the Bank's decision to fire him. This is reflected in Mr. Kincaid's own November 30, 2004 Initial Disclosures, which (like the Bank's Initial Disclosures, but for a very different reason) failed even to list Mr. Kotopoulos as an individual likely to have discoverable information. And it is also reflected in the following testimony from Mr. Kincaid's May 18, 2005 deposition:

> Q. I believe you testified earlier that you were not certain who made the final decision to terminate you. Is that correct?
> A. I am not certain; that's correct.
> Q. Who do you think it was?
> A. In the meeting the morning that Sheila notified me I was being let go, she used the term We. She said, We've decided that your time at Bank of America has come to an end.
> So, that suggests to me that there was someone else involved besides Sheila, but I don't know who it was.

> 5/18/05 Kincaid Dep. 75 (reproduced as part of Exhibit 19 to 11/28/05 Fine Aff. in opposition to the Bank's Motion for Summary Judgment).

Consequently, the Bank's failure to identify Alec Kotopoulos in its November 30, 2004 Initial Disclosures was highly prejudicial to Mr. Kincaid because it deprived him of vital information -- information that Mr. Kincaid could have used to make his discovery efforts much better focused and more efficient.

The Bank's failure to identify the Performance Management Memorandum in its November 30, 2004 Initial Disclosures was also highly prejudicial. Among the many critical items of information contained in this Memorandum were: (1) the fact that Mr. Kincaid had been "rated solid" at the end of 2002 (BA 115); (2) the fact that Ms. Burroughs told the

9

Personnel Center on April 8, 2003 that since Alec Kotopoulos had taken over Ms. Burroughs'
and Mr. Kincaid's group in December 2002, "Alec hs cleaned house" and was "ready to move
frwrd quickly" regarding Mr. Kincaid (BA 115); and (3) the fact that Ms. Burroughs told the
Personnel Center on June 11, 2003, two days before the Bank fired Mr. Kincaid, "in the last
week ee has been having back trouble and had been going home early, not feeling well this
morning mgr was concerned that ee might have disability thoughts mgr wants to term" (BA 12)
As a result of the Bank's violation of Fed.R.Civ.P. 26(a)(1) and obstructive conduct in response
to Mr. Kincaid's discovery requests, Mr. Kincaid did not receive the foregoing information until
July 1, 2005 Had the Bank acted properly, Mr. Kincaid would have had the Memorandum
months earlier. Not only would Mr. Kincaid have been able to conduct discovery far more
efficiently; the entire history of the case would have been different. Instead of preparing for trial
in December 2005 as Mr. Kincaid is now doing, Mr. Kincaid might, for example, have been able
to settle this matter with the Bank in the summer of 2005, if not earlier.

B.      Flouting of Letter and Spirit of the Rule

        When a party like the Bank consciously violates Fed.R.Civ.P. 26(a)(1) as the Bank has
done here, the violation cannot help but cause concern regarding: (1) similar violations of the
Federal Rules by the Bank in past cases that have gone undetected and unredressed; (2) the
potential for similar violations by the Bank in future cases; (3) the potential for other litigants to
follow the Bank's example if they perceive they can "get away with it." Accordingly, policy
counsels that, in a case of conscious violation such as the violation here, the Court should frame
sanctions that deliver to the violating party the clear and unmistakable message that the violation
is intolerable and must not be repeated.

10

IV    APPROPRIATE SANCTIONS INCLUDE:  (1) INFORMING THE JURY OF THE BANK'S VIOLATIONS; (2) STRIKING MR. KOTOPOULOS' DEPOSITION TESTIMONY FROM THE BANK'S SUMMARY JUDGMENT PAPERS; (3) PRECLUDING THE BANK FROM USING MR. KOTOPOULOS OR THE PERFORMANCE MANAGEMENT MEMORANDUM AT TRIAL; AND (4) REQUIRING THE BANK TO PAY MR. KINCAID AN AWARD OF REASONABLE ATTORNEY'S FEES AND EXPENSES PLUS A MONETARY PENALTY CALCULATED TO DETER COMPARABLE MISCONDUCT BY THE BANK IN THE FUTURE.

Fed.R.Civ.P. 37(c)(1) provides

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.  In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Applying this Rule here, it is plain that this Court should strike Mr. Kotopoulos deposition testimony from the Bank's summary judgment papers  The Bank's reliance on such testimony in support of its Motion for Summary Judgment is clearly a "use" of the testimony that it is inconsistent with the Bank's failure to identify Mr. Kotopoulos in its November 30, 2004 Initial Disclosures or even in its September 8, 2005 Supplemental Rule 26(a)(1) Initial Disclosures.  This relief is important because the Bank is clearly and critically relying on Mr Kotopoulos' deposition testimony in support of its argument that it is entitled to summary judgment on Count II of Mr. Kincaid's Complaint, alleging retaliation in violation of 29 U.S.C. § 623(d), the branch of the Bank's Summary Judgment Motion that is still under advisement.  If Mr. Kotopoulos' deposition testimony were indeed stricken, the Bank's request for summary

1

judgment on Count II would have to be denied because the Bank would have no evidence, let alone dispositive evidence, to rebut the inference that, pursuant to Eric Montgomery's standard practice, Mr. Montgomery would have notified Mr. Kotopoulos of a charge of unlawful discrimination such as that made by Mr. Kincaid's counsel, Deborah Norcross.

Further, the Court should issue an order precluding the Bank from using at trial either Mr. Kotopoulos or the Performance Management Memorandum.

Further still, especially in light of the evidence marshaled in the previous sections of this Memorandum showing that the Bank's violations of Fed.R.Civ.P. 26(a)(1) were conscious and highly prejudicial, the Court should: (a) inform the jury of the Bank's violations; (b) require the Bank to pay Mr. Kincaid an award of reasonable attorney's fees and expenses; and (c) require the Bank to pay a monetary penalty calculated to deter comparable misconduct by the Bank in the future.

Dated: December 23, 2005

                                        Respectfully submitted,


                                        David J. Fine, BBO #165120
                                        Law Offices of David J. Fine
                                        3 Center Plaza, Suite 400
                                        Boston, MA 02108-2003
                                        (617) 720-2941

                                        Attorney for Plaintiff

12

<u>Certificate of Service</u>

     I hereby certify that I have this day served the foregoing by causing true copies thereof to be transmitted electronically and mailed, first class postage prepaid, to Siobhan M. Sweeney, Esq., Edwards & Angell, LLP, 101 Federal Street, Boston, Massachusetts 02110 and Mark A. Pogue, Esq., Edwards & Angell, LLP, 2800 Financial Plaza, Providence, Rhode Island, 02903, attorneys for defendant.

Dated: December 23, 2005

                                    David J. Fine