UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN R. KINCAID, ) | |
| ) | |
| Plaintiff, ) | CA No. 04 CV 11522 WGY |
| ) | |
| vs. ) | |
| ) | |
| BANK OF AMERICA CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR LEAVE
TO UTILIZE PREVIOUSLY DISCLOSED TREATMENT NOTES
AND TO QUESTION PLAINTIFF'S PSYCHIATRIST REGARDING SUCH NOTES**

**INTRODUCTION**

Defendant Bank of America Corporation ("Bank of America" or "the Bank") submits this memorandum in support of its motion for leave to utilize previously disclosed psychiatric treatment notes pertaining to the Plaintiff (the "Notes"), and to question the Plaintiff's psychiatrist regarding those Notes, during the trial of this case.

As shown below, the Bank should be permitted to use the Notes in this manner because the Plaintiff has waived the psychotherapist-patient privilege. He waived the privilege by: (1) placing his mental state an issue in this litigation, and asserting more than a "garden variety" claim for emotional distress; (2) providing the Bank with a written authorization for the disclosure and use of the Notes; (3) testifying as to the Notes and the counseling session which led to the generation of the Notes; and (4) failing to establish that his waiver was vitiated by fraud, incapacity or duress.

## FACTUAL BACKGROUND

The factual background leading to the filing of this motion is as follows:

1. Plaintiff's Complaint presently alleges three causes of action: (1) age discrimination in violation of 29 U.S.C. § 621 *et seq.*; (2) retaliation in violation of 29 U.S.C. § 623(d); and (3) wrongful discharge in violation of the public policy of North Carolina.

2. Plaintiff alleges that the Bank caused him to suffer emotional distress, pain and suffering, and mental anguish. *See* Complaint at ¶¶40, 45, 48, 51, 54 and Prayer for Relief (attached hereto as Exhibit A); Plaintiff's Supplemental Answers to Defendant's First of Interrogatories at 4 (attached hereto as Exhibit B). In fact, according to Plaintiff, the emotional distress he suffered was so extraordinarily severe that it caused him to be unable to speak for an extended period of time. In particular, Plaintiff alleges that "the mental anguish and emotional distress resulting from defendant's actions caused plaintiff to sustain, among other things, a voice disorder in December 2004 which made it extremely difficult for plaintiff to speak at all for several months and which has continued to have an adverse impact on plaintiff's ability to speak to this day." *See* Joint Pretrial Memorandum at Section 7, ¶(a)(58) (attached hereto as Exhibit C). Plaintiff seeks compensatory damages for the extraordinary mental distress he claims, including "reimbursement for medical . . . costs resulting from Plaintiff's termination." Complaint at Prayer for Relief.

3. In order to investigate Plaintiff's mental distress claims, in March 2005 the Bank prepared an authorization to enable Plaintiff's psychiatrist, Joseph A. Parisi, Ph.D. ("Dr. Parisi"), to release any records reflecting his treatment of Plaintiff. Affidavit of Richard Kane ("Kane Aff."), ¶ 2 (attached hereto as Exhibit D).. Plaintiff readily agreed to execute the authorization. The Bank inserted an expiration date of September 15, 2005 in the authorization because the

Health Insurance Portability and Accountability Act ("HIPAA") requires the inclusion of such a date, and because, when the release was prepared in March 2005, discovery in the case was scheduled to close in July 2005.  Kane Aff., ¶ 3.

4.  On May 9, 2005, Plaintiff executed the authorization.  He then returned it to the Bank. The authorization permitted   Bank of America to obtain from Dr. Parisi:

> [a]ll medical or psychological or counseling records, x-rays, diagnostic studies, laboratory slides, documents, reports, clinical abstracts, histories, intake forms, charts and billing records which they may request relative to my past, present or future physical condition, treatment, care and/or hospitalizations and to allow them to procure or copy whatever medical records, x-rays, slides or other documents you have.

*See* Plaintiff's written HIPAA authorization for Dr. Parisi's records, dated May 9, 2005 (attached hereto as <u>Exhibit E</u>).  Plaintiff stated that he "understand[s] that this authorization is voluntary." *Id.*  In addition, Plaintiff understood that "the documents disclosed may be subject to re-disclosure by the person or class of persons or facility receiving them, and would no longer be protected by federal privacy regulations"; and that "any action already taken in reliance on this authorization cannot be reversed, and [his] revocation will not affect those actions." *Id.*

5.     Pursuant to Plaintiff's May 9, 2005 authorization, the Bank obtained from Dr. Parisi certain medical records and information pertaining to Plaintiff.  These records included notes taken by Dr. Parisi during a counseling session with Plaintiff on June 4, 2003 (the "Notes").  *See, e.g.,* Report of Dr. Parisi of 6/4/03 visit with Plaintiff (submitted under seal with Defendant's Motion For Permission To File Treatment Notes Under Seal, which is attached hereto, without the sealed Notes, as <u>Exhibit F</u>).  The Notes contain information which directly contradicts the Plaintiff's position in this case and casts grave doubt on his credibility, and for that reason are of critical importance in promoting the truth-seeking function in this trial.  For example, as noted, Plaintiff has alleged in this lawsuit that he suffered extraordinary emotional

3

distress because the Bank mistreated him at his job.  According to the Notes, however, Plaintiff never even mentioned his job or the Bank during his June 4, 2003 counseling session with Dr. Parisi; instead, Plaintiff attributed his depression exclusively to his divorce and the fact that he missed his children.  *See* Ex. F.  Further, Plaintiff has asserted a claim for front pay in this case on the grounds that, had he not been discharged in August 2003, he would have continued working at the Bank for months or years thereafter.  The Notes reveal, however, that Plaintiff had <u>already</u> <u>decided</u>, in June 2003, to quit his job and move back to Boston the following August.  *Id.*

      6.      On November 8, 2005, the Bank took Plaintiff's deposition.  During the deposition, Plaintiff allowed the Bank to question him about his June 4, 2003 counseling session, and the Notes taken by Dr. Parisi to memorialize that session, without asserting any objection on the basis of privilege.  *See* Transcript of Plaintiff's November 8, 2005 Deposition ("Pl. Dep.") at pp. 67-91 (attached hereto as <u>Exhibit G</u>).

      7.      During his deposition, Plaintiff testified at length and in detail regarding the substance of his communications and treatment with Dr. Parisi.  *See* Pl. Dep. at pp. 67-91.

      8.      Because the Notes contain personal information, out of an abundance of caution in December 2005 the Bank asked Plaintiff to renew the May 9, 2005 authorization so that the Notes could be used at trial.  Despite his previous, written authorization regarding Dr. Parisi's Notes, and his express waiver of the psychotherapist-patient privilege, Plaintiff now objects to the use of the Notes and Dr. Parisi's trial testimony.  Plaintiff expressed his objection for the first time on December 30, 2005.

      This motion followed.

4

**ARGUMENT**

I. **Plaintiff Has Waived the Psychotherapist-Patient Privilege**

    A. **Plaintiff Has Waived the Psychotherapist-Patient Privilege By Asserting A Claim for Mental Damage And Impairment of Mental Health**

"For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." *See Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199, 203-05 (D. Mass. 2000) (citing *Jaffee v. Redmond*, 518 U.S. 1, 9, 116 S. Ct. 1923, 135 L.Ed.2d 337 (1996)).

Privileges exist to shield the substance of the communications necessary for effective mental health treatment between a licensed mental health care provider and her patient. *Sorenson*, 197 F.R.D. at 203. However, that privilege is not absolute. *See id.* at pp. 203-05.

Plaintiff contends that his previously disclosed communications with Dr. Parisi are privileged communications protected from use at trial. Under federal common law[1], however, it is well established that the psychotherapist-patient privilege is waived where a plaintiff's mental or emotional state is in issue. Specifically, the majority of federal district courts hold that any claim for emotional distress damages opens the door to discovery of information reflecting upon the claimant's mental health, which includes piercing any psychotherapist-patient privilege for

---

[1] Under FRE 501, the admissibility of the Notes is determined by the law of privilege in the jurisdiction providing the substantive law regarding the claims in the case. The Complaint here contains both federal claims and a claim under North Carolina law. This Court should therefore apply either federal common law or North Carolina law to resolve the privilege question presented. It appears that North Carolina follows the majority federal common law rule. *See Mims v. Wright*, 157 N.C. App. 339, 578 S.E.2d 606 (N.C. App. 2003) (patient waives the physician/psychotherapist-patient privilege protected by North Carolina statute by bringing an action, counterclaim or defense, thereby directly placing her medical condition at issue).

information that reasonably would relate to a claimant's emotional well being at the time the damages were alleged to have been incurred. [2]

Here, Plaintiff's mental and emotional state is clearly at issue.  Plaintiff alleges damages partly in the form of emotional distress, pain and suffering, and mental anguish as a result of the Bank's alleged conduct.  *See* Complaint at ¶¶40, 45, 48, 51, 54 and Prayer for Relief; Plaintiff's Supplemental Answers to Defendant's First of Interrogatories at 4.  He also claims that "the mental anguish and emotional distress resulting from defendant's actions caused plaintiff to sustain, among other things, a voice disorder in December 2004 . . . .",  *see* Joint Pretrial Memorandum at Section 7, ¶(a)(58), and he seeks "reimbursement for medical . . . costs resulting from Plaintiff's termination."  Complaint at Prayer for Relief.  Whether the majority federal rule or North Carolina law is applied, these allegations are sufficient to waive the privilege.

There is a minority federal view regarding waiver of the psychotherapist-patient privilege.  *See, e.g., Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.Mass. 1997).  Under this view, the privilege is not waived unless the plaintiff first attempts to use the protected communications.  *Id*. at 231.  But even under this approach, "[t]here are a number of ways for a patient to waive the privilege." *Id*. at 228.  For example,  "pressing a 'garden variety claim of emotional distress' does not waive the privilege, but any claim of 'mental damage,' ' psychic

---

[2] *See, e.g.*, *Schoffstall v. Henderson*, 223 F.3d 818 (8th Cir. 2000) (expressly rejecting the minority view expressed in *Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225 (D. Mass. 1997), and concluding that patient waives the psychotherapist-patient privilege when s/he makes a claim or seeks damages for mental and emotional distress); *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 (D.N.J. 2000) (same); *Santelli v. Electro-Motive,* 188 F.R.D. 306 (N.D. Ill. 1999) (same)*; Sidor v. Reno,* 1998 WL 164823 (S.D.N.Y. 1998) (same); *EEOC v. Danka Ind., Inc.*, 990 F. Supp. 1138 (E.D. Mo. 1997) (same).  *See also Vann v. Lone Star Steakhouse & Saloon, Inc.*, 967 F. Supp. 346, 349-50 (C.D. Ill. 1997) (patient waives the psychotherapist-patient privilege when s/he makes a claim or seeks damages for mental or emotional distress); *Sarko v. Penn-Del Directory, Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997) (same); *Vasconcellos v. Cybex International, Inc.,* 962 F. Supp. 701, 708-09 (D. Md. 1997) (same); *Doolittle v. Ruffo*, 1997 WL 151799, at *2 (N.D.N.Y. March 31, 1997) (same); *Santelli v. Electro-Motive*, 188 F.R.D. 306 (N.D. Ill. 1999).

damage' or 'impairment of mental health' will operate as a waiver." *Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199, 204 (D. Mass. 2000).

Here, even if the minority view is applied, it is clear that Plaintiff has waived the privilege because he has alleged far more than simply a "garden variety claim of emotional distress." Rather, Plaintiff contends that he suffered severe "mental anguish," culminating in, "among other things, a voice disorder in December 2004 which made it extremely difficult for plaintiff to speak at all for several months and which has continued to have an adverse impact on plaintiff's ability to speak to this day." *See* Joint Pretrial Memorandum at Section 7, ¶(a)(58) (a). Plaintiff contends that this alleged and extreme mental damage necessitated his treatment with not only Dr. Parisi, but with four other professionals. *See* Pl. Dep. at p.91.

For these reasons, Plaintiff has waived the privilege.

> **B.    Plaintiff Has Also Waived the Privilege By Executing A Written Authorization For the Disclosure Of The Treatment Notes, And Testifying To the Substance of His Communications With Dr. Parisi**
>
> **1.    Plaintiff Waived The Privilege By Executing The Authorization**

There are two entirely separate reasons why Plaintiff has waived the privilege in this case.

First, it is well-established law that a patient may waive the psychotherapist-patient privilege through the patient's explicit authorization of disclosure of such records. *See, e.g., In Re Donald Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983) (concluding that plaintiff's explicit written authorization for disclosure of psychotherapist records was an explicit waiver of the psychotherapist-patient privilege); *United States of America v. Clarke*, 2005 WL 2645003, at *3 (D. Conn. July 19, 2005) (same); *Kalinoski v. Evans*, 377 F. Supp.2d at 138-41 (same); *Kennedy v. Dermatology Associates of Knoxville, P.C.*, 183 FRD 619, 621 (E.D. Tenn. 1999) (same);

7

*Magee v. The Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 634-36 (E.D.N.Y. 1997) (same); *Principal Mutual Life Ins. Co. v. Eady*, 889 F. Supp. 1067, 1072 (N.D. Ill. 1995 (same); *Ford v. Law*, 2002 WL 32139028, at *7-8 (Mass. Super. Ct. Nov. 25, 2002) (same). Federal courts which adhere to the minority view regarding waiver through pleading – including *Vanderbilt v. Town of Chilmark, supra* – agree that a patient can affirmatively waive the privilege. *Id*. at 228 ("There are a number of ways for a patient to waive the privilege. A patient could explicitly waive it.").

For example, in *Ford*, the Massachusetts Superior Court concluded that Plaintiff waived the psychotherapist-patient privilege afforded by Massachusetts General Laws c. 233, §20B. *See* 2002 WL 32139028, at *7-8. In *Ford*, plaintiff provided a written authorization, and letters disclosing his psychiatric documents and information to third parties. *Id.* As a result, the *Ford* court decided that plaintiff had waived any privilege to psychotherapist-patient communications.

Similarly, the United States District Court for the Eastern District of New York in *Magee* concluded that the plaintiff had waived the psychotherapist-patient privilege governed by a New York statute by executing an authorization. *See* 172 F.R.D. at 634-36. In fact, the *Magee* court allowed the defendants to reopen depositions of plaintiff's doctors, and to question those doctors regarding their communications with plaintiff. *See id.* The court reasoned:

> Precluding discovery of the notes would be tantamount to allowing plaintiff to use the psychologist-patient privilege as both a sword and a shield, "to wave when it inures to his advantage, and wield when it does not."

*Id.* (citations omitted).

Here, Plaintiff waived the psychotherapist-patient privilege by executing an authorization permitting the Bank to obtain all of Dr. Parisi's records. *See* Exhibit D. At no time before those records were obtained did Plaintiff seek to revoke, limit or otherwise contest the validity of that

authorization. Nor can Plaintiff offer any evidence of fraud, incapacity or duress that would vitiate the authorization. *See, e.g., Burkert v. Equitable Life Assurance Society of America*, 2000 WL 419988, at * (E.D. Pa. April 18, 2000) (concluding that plaintiff's written authorization for release of medical records was a waiver of the psychotherapeutic privilege because "it is well settled that, absent evidence of fraud, capacity or duress, a party to a written agreement is charged with knowledge of the contents of that agreement") (citations omitted). He has therefore waived the privilege.

### 2. Plaintiff Waived The Privilege By Testifying About The Notes And His Counseling Session With Dr. Parisi

As this Court has recognized, the privilege can also be waived through the patient's "testifying about the substance of the communication herself." *Vanderbilt v. Town of Chilmark, supra* at 231. *Cf. Sorenson v. H & R Block, Inc., supra* at 205 (plaintiff came "perilously close" to waiving privilege codified in Massachusetts law by answering three basic questions at a deposition about his counseling session).

Here, Plaintiff waived the privilege when he testified at his deposition – at length, and without objecting on privilege grounds – about the Notes and about his June 4, 2003 counseling session with Dr. Parisi. Having waived the privilege by providing such testimony, Plaintiff cannot now decide to assert the privilege.

### C. Plaintiff Cannot Revoke His Waiver Of the Psychotherapist-Patient Privilege

Having waived the privilege and permitted the Bank to obtain the Notes, Plaintiff may not now revoke his waiver in order to block a full investigation of his claims at trial. The courts which have considered this question have uniformly rejected patients' attempts to revoke a waiver in order to foreclose the use of materials previously obtained pursuant to the waiver. *See Kerman v. City of New York*, 1997 WL 666261 * 3 (S.D.N.Y. 1997) ("Plaintiff has offered no

9

authority for the proposition that the psychotherapist-patient privilege can be waived with respect to one stage of a proceeding and withheld during another stage of the same proceeding, and the Court has been unable to find any support for this proposition."); *In Re Green*, 241 B.R. 550, 562 (N.D. Ill. 1999) (court rejected patient's attempt to block use of medical information released under an earlier waiver; "Green's subsequent revocation of the Releases does not retroactively invalidate all information legitimately obtained."); *Magee*, 172 F.R.D. at 634-36 (once there is a waiver, testimony may thereafter be elicited or further discovery allowed); *Principal Mutual Life Ins. Co.*, 889 F. Supp. at 1072 (indicating that the documents and information could be used in any way once there is a waiver). *See also In Re Grand Jury Investigation*, 114 F. Supp.2d at 1056. Any other conclusion would be tantamount to allowing plaintiff to use the psychologist-patient privilege as both a sword and a shield, "to wave when it inures to his advantage, and wield when it does not." *Magee*, 172 F.R.D. at 634-36.

**D.    Use Of The Treatment Notes Is Necessary To Promote The Truth-Seeking Function of The Trial**

Because the content of the Notes sharply contradicts several of the positions urged by Plaintiff in this case, the interests of justice militate in favor of permitting the Notes to be used as requested by the Bank. Although the Massachusetts psychotherapist-patient statutory privilege does not directly apply here, it is notable that that statute permits the use of privileged material when "it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected." M.G.L. c. 223 § 20B(c). Here, because of the Notes' great probative value, that balancing weighs sharply in favor of permitting the Notes to be used without regard to the fact that the privilege has been waived.

## CONCLUSION

For the foregoing reason, the Bank's motion should be granted.

**REQUEST FOR HEARING**

The Bank requests a hearing on this Motion To Compel Dr. Parisi's Trial Testimony.

    Respectfully submitted,
    BANK OF AMERICA CORPORATION,
    Defendant
    By its attorneys,


    /s/Siobhan Sweeney
    Siobhan Sweeney
    BBO No. 562118
    Mark Pogue
    BBO No.
    Edwards Angell Palmer & Dodge, LLP
    101 Federal Street
    Boston, MA 02110
    Phone:  617.439.4444
    Fax:  617.439.4170

    Richard F. Kane (admitted pro hac vice)
    Steven T. Ackermann (admitted pro hac vice)
    McGuireWoods LLP
    Bank of America Corporate Center
    100 North Tryon Street, Suite 2900
    Charlotte, North Carolina 28210
    Telephone:  704.373.8999
    Facsimile:  704.373.8827

Dated: January 4, 2006.

Certification of Conference Pursuant to LR 7.1

I hereby certify that prior to filing, the parties, through their counsel, have conferred with respect to Defendant's Memorandum of Law In Support Of Its Motion For Leave To Utilize Previously Disclosed Treatment Notes And To Question Plaintiff's Psychiatrist Regarding Those Notes, and the issues raised therein, in an effort to narrow the areas of disagreement.

    /s/ Siobhan Sweeney