UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN R. KINCAID,<br><br>        Plaintiff,<br><br>v.<br><br>BANK OF AMERICA<br>CORPORATION,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-11522-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION
TO COMPEL PRODUCTION OF DOCUMENTS EVIDENCING FACTUAL
BASIS AND REASONS FOR ASKING ALEC KOTOPOULOS TO RESIGN

First, the Bank's argument that Mr. Kincaid's Motion to Compel should be denied because Mr. Kotopoulos allegedly "does not know the reasons he was asked to resign from Bank of America and he has [allegedly] never asked Defendant the reasons" (Bank Opp.[1] 2; see also Bank Opp. 5, 6) is meritless for two reasons. One, it is precisely because Mr. Kotopoulos testified as he did that Mr. Kincaid needs the documents he is requesting to know the factual basis and reasons for the Bank's asking Mr. Kotopoulos to resign. Two, Mr. Kotopoulos's veracity in testifying that he does not know, and never asked, why the Bank demanded his immediate resignation, is very much at issue. Simply as a matter of common sense, Mr. Kotopoulos's claims in this regard are highly implausible. For the Bank to rely, as it does, on

---

[1] As used herein, "Bank Opp." refers to Defendant's Opposition to Plaintiff's Motion to Compel Production of Documents filed on January 10, 2006.

Mr. Kotopoulos's testimony, without acknowledging its implausibility, is disingenuous in the extreme. Indeed, the Bank's Opposition is particularly disingenuous because there are obviously Bank executives who <u>know</u> whether Mr. Kotopoulos' claim that he was never told why the Bank demanded his immediate resignation, is, or is not, accurate. If Mr. Kotopoulos' highly implausible claim that he was never told, is accurate, one would expect the Bank to submit an affidavit from one of these executives attesting to this fact. The failure of the Bank to do so should, therefore, be construed as a tacit admission by the Bank that Mr. Kotopoulos' highly implausible claim that he was never told, is indeed false.

<u>Second</u>, the Bank's argument that Mr. Kincaid's document request is "Overly Broad, Unduly Burdensome And Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence In This Case" (Bank Opp. 5-6) is preposterous. Mr. Kotopoulos was the Bank executive who made the decision to fire Mr. Kincaid. He is, inescapably, one of the most important witnesses in this case. Mr. Kotopoulos' own job performance at the Bank, complaints about Mr. Kotopoulos' conduct toward his subordinates, and Mr. Kotopoulos' credibility as a witness, are all of central importance, and the documents Mr. Kincaid is seeking surely bear on each of these things. This is clearly true even putting aside Mr. Kotopoulos' remarkable testimony that the Bank never told him why it demanded his immediate resignation. Given that remarkable testimony, the relevance of the documents Mr. Kincaid is seeking -- documents that could expose this testimony to be clearly false -- is all the more manifest.

As for Erin McCarthy's memorandum, the Bank's arguments that it may be discounted because that memorandum "has never been alleged to reference anything other than sex discrimination, a claim that Plaintiff does not make in his case" (Bank Opp. 5), is meritless Alec Kotopoulos testified that, while the Bank never told him this explicitly, Mr. Kotopoulos

2

believed the Erin McCarthy memorandum played an important role both in his own termination and in the termination of his boss, Vipin Mayar. 10/17/05 Kotopoulos Dep. 216-222, reproduced in Exhibit 2 to Mr. Kincaid's 12/27/05 Memorandum in Support of Motion to Compel. Further, Mr. Kotopoulos testified that the memorandum was "at least three [typed] pages, maybe four" (id. at 219), "made many points . . . and comments" about improper treatment of employees in the CAMR department (id. at 217-219), and formulated criticisms of employment practices in the CAMR department from "multiple, multiple angles" (id. at 220). Since Mr. Kincaid was, like Ms. McCarthy, an employee in the CAMR department, since Mr. Kincaid is, in this case, complaining about employment practices and decisions in the CAMR department by Mr. Kotopoulos and Mr. Mayar, two of the same executives criticized in Ms. McCarthy's memorandum, and given Mr. Kotopoulos' testimony about the role he believed the McCarthy memorandum played in his own and Mr. Mayar's terminations, Ms. McCarthy's memorandum is clearly a document Mr. Kincaid should be able to discover.

Third, the Bank's implicit argument that Mr. Kincaid's pursuit of the documents in question was not as diligent as it should have been, is also meritless. While it is quite true, as the Bank claims, that Mr. Kincaid's initial, March 16, 2005 Request for Production "does not refer to or request any documents relating to Alec Kotopoulos or his employment with Defendant" (Bank Opp. 2), this is directly attributable to Mr. Kincaid's not knowing at that time Mr. Kotopoulos's role in the firing of Mr. Kincaid and <u>to the Bank's wrongful failure to identify Alec Kotopoulos in its November 30, 2004 Rule 26(a)(1) Initial Disclosures</u> as one of the individuals "likely to have discoverable information." In Mr. Kincaid's Second Request to Defendant for Production of Documents, served on August 1, 2005, Mr. Kincaid, then knowing of Mr. Kotopoulos' role, most assuredly <u>did</u> request production of Alec Kotopoulos' <u>personnel file</u> -- a

request that any reasonable litigant would have expected to yield production of written job performance evaluations regarding Mr. Kotopoulos, and documents showing the circumstances of Mr. Kotopoulos' cessation of employment with the Bank including, if the Bank demanded Mr Kotopoulos' resignation, documents showing the factual basis, and reasons, for that demand. As it turned out, the "personnel file" the Bank ultimately produced regarding Mr. Kotopoulos did <u>not</u> include either written job performance evaluations of Mr. Kotopoulos (notwithstanding that Vipin Mayar testified at his deposition on January 6, 2006 that he prepared such written evaluations regarding Mr. Kotopoulos) or <u>any</u> documents evidencing the factual basis and reasons for the Bank demanding Mr. Kotopoulos' resignation  The Bank <u>claims</u> that the "23 pages of documents" the Bank produced in response to Mr. Kincaid's request for Mr. Kotopoulos' personnel file "compris[ed the] Kotopoulos file, as understood and maintained by the Defendant" (Bank Opp. 3) but this highly self-serving statement is offered to the Court without the benefit of any affidavit, or other factual, support  There are, consequently, two basic possibilities. Either the Bank dishonestly produced something less than Mr. Kotopoulos' full personnel file or the Bank actually uses a definition of "personnel file" that is strangely narrower than any litigant could reasonably expect. In either case, Mr. Kincaid can hardly be faulted for making a Third Request for Production of Documents

<u>Fourth</u>, the Bank's argument that Mr. Kincaid's Motion should be denied on the ground of the Bank's procedural objections, is also meritless. At pages 8 through     of Mr. Kincaid's December 27, 2005 Memorandum, Mr. Kincaid explained in detail how Mr. Kincaid's making his Third Request for Production of Documents as late as he did, was the direct result of the Bank's own discovery misconduct. The Bank does <u>not dispute</u> Mr. Kincaid's claims regarding the Bank's discovery misconduct. Nevertheless, the Bank takes Mr. Kincaid to task for not

4

making a motion for leave, and getting leave from the Court, to serve his Third Request for Production before actually serving it. Bank Opp. 4. This is a classic case of exalting form over substance. By the time Mr. Kincaid learned of the need to serve a third document request, it was so late in the discovery process -- thanks to the Bank's discovery misconduct -- that Mr. Kincaid made the reasonable judgment that what was important was actually serving the document request. Mr. Kincaid believed that, given the Bank's discovery misconduct, the Bank was in no position to object to the timing of the request and might actually produce the documents requested without Mr. Kincaid having to bother the Court with a motion. In any event, if Mr. Kincaid's approach was technically deficient, Mr. Kincaid requests that the Court regard Mr. Kincaid's present Motion to Compel as incorporating a request that the Court approve the serving of Mr. Kincaid's Third Request for Production of Documents <u>nunc pro tunc</u>

Dated: January 11, 2006

Respectfully submitted,

*/s/ David J. Fine*
David J. Fine, BBO #165120
Law Offices of David J. Fine
3 Center Plaza, Suite 400
Boston, MA 02108-2003
(617) 720-2941

Attorney for Plaintiff

<u>Certificate of Service</u>

      I hereby certify that I have this day served the foregoing by causing true copies thereof to be transmitted electronically and mailed, first class postage prepaid, to Siobhan M. Sweeney, Esq., Edwards & Angell, LLP, 101 Federal Street, Boston, Massachusetts 02110 and Mark A. Pogue, Esq., Edwards & Angell, LLP, 2800 Financial Plaza, Providence, Rhode Island, 02903, attorneys for defendant.

Dated: January 11, 2006

                                                  */s/ David J. Fine*
                                                  David J. Fine