UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
NO. 04 CV 11522 (JLT)

_____
                                                          )
STEVEN R. KINCAID,                                        )
                                                          )
              Plaintiff,                                  )
                                                          )
       vs.                                                )
                                                          )
BANK OF AMERICA CORPORATION,                              )
                                                          )
              Defendant.                                  )
_____                  )

**MOTION <u>IN</u> <u>LIMINE</u>**
**OF DEFENDANT BANK OF AMERICA CORPORATION**

Defendant Bank of America Corporation ("Bank of America" or "Defendant" or the

"Bank") hereby moves <u>in limine</u> to exclude from evidence in this case:

A.    Any reference to complaints of discrimination (other than age
      discrimination) against Vipin Mayar or other Bank employees;

B.    Any reference to so-called "poison pen" letters;

C.    Any reference to Susan Haloulos' alleged statement that the Bank
      terminated employees at the end of calendar quarters to better manage its
      earnings numbers;

D.    Any testimony predicated upon office gossip that the Bank was inclined to
      terminate "older" employees;

E.    Any reference to Defendant's inadvertent omission of Alec Kotopoulos in
      its disclosures pursuant to Fed.R.Civ.P. 26(a)(1);

F.    Any reference to Defendant's alleged improper tactics or other misconduct
      during discovery;

G.    Any purported expert testimony or evidence on the issue of Plaintiff's
      alleged physical injury;

H.    Any testimony by Plaintiff regarding the value of the employee benefits at Bank of America;

I.    Any testimony regarding Plaintiff's "reputation" being damaged;

J.    Any reference to the circumstances surrounding Emil Becker's separation from employment;

In support of its Motion, Defendant states as follows:

**A.    The Court Should Exclude References to Any Complaint of Non-Age-Related Discrimination Against Vipin Mayar**

Defendant anticipates that Plaintiff will attempt to introduce evidence of complaints of non-age-based discrimination to prove his age discrimination claim. Specifically, Plaintiff may try to elicit testimony regarding a gender discrimination complaint that was allegedly filed or was being prepared to be filed against Vipin Mayar, a former Bank employee.

Such evidence is irrelevant and inadmissible under Federal Rule of Evidence 401. Age discrimination is the only form of discrimination at issue in this case. Complaints of other types of discrimination are entirely irrelevant, have no probative value, risk creating a series of mini-trials within this trial, and will serve only to confuse and mislead the jury. See e.g., Kelly v. Boeing Petroleum Servs., 61 F.3d 350, 358 (5th Cir. 1995) (affirming district court's conclusion that acts of unrelated discrimination were irrelevant to the plaintiff's claims); Murphy v. Board of Education of the Rochester City School District, 273 F.Supp.2d 292, 313 (W.D.N.Y. 2003) (allegations of discrimination against women and minorities irrelevant to a white male's claim); Simonetti v. Runyon, No. 98-2128, 2000 WL 1133066, at *6 (D.N.J. Aug. 7, 2000) (plaintiff may not use evidence of one type of discrimination to prove discrimination of another type); Rivera v. Baccarat, No. 95-9478, 1997 WL 777877, at * 2 (S.D.N.Y. Dec. 15, 1997) (purported gender bias or sexual harassment was irrelevant to claims of national origin and age discrimination and therefore inadmissible). Indeed, the Court's Order of September 8, 2005

which limited discovery to claims of age discrimination only, is consistent with the principle that

a plaintiff may not use evidence of one type of discrimination to prove discrimination of another

type.

In addition to being irrelevant, to the extent Plaintiff attempts to introduce evidence of

complaints about which a witness does not possess firsthand knowledge, such testimony

constitutes inadmissible hearsay. By way of example, Plaintiff may offer testimony similar to

Timothy Megyesy's deposition testimony pertaining to a gender discrimination complaint against

Vipin Mayar. Megyesy obviously had no firsthand knowledge of this alleged complaint:

> Q.  During the time that – well, during any time during your employment at the
> Bank, have you heard about someone making a claim of discrimination?
>
> A.  Yes.
>
> Q.  Okay.  How many claims of discrimination have you heard about?
>
> …
>
> A.  Erin McCarthy had filed a claim against or was preparing to file a claim
> against Vipin Mayar.  While I don't know specifics, I, my perception, strong
> perception is that the issue was, you know, prejudice or discrimination against
> women.
>
> …
>
> Q.  Okay.  And who did you hear about this claim from?
>
> A.  It's of the nature that I think everybody on the 11th floor knew about it.  So
> who did I hear about it from?  You know, the general audience on the 11th floor…
>
> Deposition of Timothy Megyesy, pp. 42-43.

Of course, evidence that a witness heard through the office "rumor-mill" that an employee filed a

claim of gender discrimination constitutes inadmissible hearsay under Federal Rule of Evidence

802.

For the foregoing reasons, Defendant request an Order barring Plaintiff from presenting evidence referring to complaints of non-age-based discrimination against Vipin Mayar or other Bank employees.

**B.     The Court Should Exclude Any Reference to So-Called "Poison Pen" Letters Because They Are Irrelevant And Constitute Hearsay**

The Bank expects that Plaintiff will attempt to introduce evidence that the Bank sent notices to certain employees in the fall of 2003, colloquially referred to as "poison pen" letters. Allegedly, these "poison pen" notices informed employees that they were required to improve their performance or face termination.

The Court should exclude evidence of the so-called "poison pen" letters on relevancy grounds. The existence of a letter warning certain employees about their performance is entirely unrelated to Plaintiff's allegations of age discrimination. Plaintiff does not contend that he received such a letter, and has no evidence that the letters suggest age bias. Because evidence of the "poison pen" letters does not tend to make any fact of consequence more or less probable, such evidence is inadmissible pursuant to Federal Rule of Evidence 401.

In addition to being irrelevant, any reference by Plaintiff to the "poison pen" letters constitutes inadmissible hearsay. At his deposition, Plaintiff admitted that he had only "heard" about the letters. In fact, Plaintiff admitted that his only source of information regarding the alleged "poison pen" letters comes from information he received second-hand, from someone ("the woman near Chuck")[1] whose name he cannot recall. Plaintiff does not even know who

---

[1] With respect to the "poison pen" letters, Kincaid testified as follows:
Q. The poison-pen letters, who told you about that?
A. That was a woman that worked in the card area under Chuck.
Q. A woman near Chuck?
A. She wasn't physically near him, but she was one of his direct reports.
Q. What's her name?
A. I can't remember her name.
Q. Who got the letters?

received the letters or who wrote them (other than a "vague recollection" that it could have been

Vipin Mayer).  As a result, under Federal Rule of Evidence 802, testimony concerning the

content of the "poison pen" letters is hearsay.  The Court should therefore bar any references to

"poison pen" letters as inadmissible hearsay.

    **C.**       **The Court Should Exclude Any Reference by Plaintiff to Purported Prejudicial Comment by Susan Haloulos that the Bank Timed Terminations to Occur at the End of Calendar Quarters in Order to Manage Its Earnings Numbers**

Defendant anticipates that Kincaid will attempt to testify that he heard Susan Haloulos, a

Bank employee, comment that she felt that the Bank engaged in questionable firing practices and

"thought it was a shame that the bank tried to manage their earnings numbers…by terminating

people at the end of a quarter…"  Deposition of Steven Kincaid., Vol. I, p. 100.

The Court should exclude this highly prejudicial comment for multiple reasons.  First, the

comment is irrelevant to the issues in this case.  Kincaid has never alleged that the Bank

terminated <u>his</u> employment, or chose a particular date on which to terminate his employment, in

order to better manage its earnings numbers.  In any event, the timing of the Bank's terminations

is unrelated to the issue of whether those terminations were motivated by age bias.  Second, the

probative value (if any) of this statement is substantially outweighed by the danger of unfair

prejudice.  If Susan Haloulos' alleged comment is introduced at trial, the jury may focus on the

existence of some sort of insidious motive surrounding the timing of other employee

terminations, instead of properly directing its attention to whether the Bank discharged Plaintiff

because of age discrimination.

---

A.  No one identified the individuals who had received the letters.  They just said that letters had been sent…..
Q.  Who sent the letters?
A.  I believe they were from Vipin Mayer, but that's just my vague recollection.  I can't be certain of that.
Q.  He was identified as the author of the letters?
A.  I believe that's what I was told.  The name comes to mind, but it's not a firm recollection.

                                            BOS_BOS_518087_1.DOC/MGLICKSON

Finally, the alleged comment is hearsay.  Kincaid's testimony about the Bank's purported "practices" is clearly not based upon his own personal knowledge.  Instead, he would be testifying about what he heard Susan Haloulos say about the Bank's practices, in an effort to prove the truth about those purported practices.  There is no evidence that Susan Haloulos is qualified to make an admission on behalf of the Bank, and the he-said/she-said testimony Plaintiff would offer is exactly the kind of unreliable second-hand evidence the hearsay rule was designed to guard against.[2]  Defendant therefore requests that the Court bar any reference to an alleged comment by Susan Haloulos about the Bank timing the termination of employees to better manage its earnings numbers.

> **D.    The Court Should Preclude Kincaid from Testifying that He Heard, Through Office Gossip, that Older Employees Were Disproportionately Terminated**

Defendant anticipates that Plaintiff will testify, as he did at his deposition, that he heard through "office gossip" that the Bank was inclined to terminate older employees.[3]  Statements obtained through "office gossip" are inherently unreliable, and therefore inadmissible.  Because gossip typically consists of unattributed statements, statements purporting to relate to office gossip are not admissible as admissions of party-opponents.  See e.g., Vazquez v. Lopez-Rosario, 134 F.3d 28, 34 (1st Cir. 1998) (exclusion of office gossip proper, as unattributed statements cannot be admissions of party-opponents).  Defendant therefore requests that the

---

[2] Plaintiff had ample opportunity to depose Ms. Haloulos and inquire as to her knowledge of the Bank's practices, yet neglected to do so.

[3] Q.  …[W]as there anything else that you knew that led you to believe that the people [Mr. Megeysey] was about to terminate were older employees?

A.  After I arrived at the bank and started work, there was kind of office talk and office gossip, I guess you would say, about the fact that older people, that weren't necessarily up to date on modern technology skills and didn't know methods that well, were sent to work in competitive analysis, because it was kind of a general field, where you didn't need technical skills…

Deposition of Steven Kincaid, Vol. I, p. 98.

Court preclude Plaintiff from testifying that he heard, through office gossip, that the Bank intended to terminate older employees.

### E.  The Court Should Exclude Any Reference to the Fact that Defendant Did Not Identify Alec Kotopoulos in its Initial Disclosures

Defendant anticipates that Plaintiff will attempt to introduce evidence that Defendant did not disclose Alec Kotopoulos in its Initial Disclosures as an "individual likely to have discoverable information." Such evidence should be excluded because it is entirely lacking in probative value. The fact that Defendant inadvertently left Mr. Kotopulos off its 26(a)(1) disclosures is irrelevant to the resolution of the issues in this case. This Court should not allow Plaintiff to confuse and mislead the jury by asking them to infer discriminatory animus on the basis of an inadvertent omission by Counsel on a pleading.

Moreover, Defendant's inadvertent omission has no bearing on whether the Bank discriminated against Plaintiff, and the omission also did not prejudice Plaintiff in any way. Since at least early May of 2005, Plaintiff has been aware that Mr. Kotopoulos was a witness. This is shown by the fact that (1) Plaintiff deposed Mr. Kotopoulos twice (on June 2, 2005 and October 17, 2005); and (2) on May 9, 2005, Defendant identified Mr. Kotopoulos in response to an Interrogatory asking for the identity of all persons with knowledge or information regarding Plaintiff's work for Defendant. Because Plaintiff has had ample time to investigate Mr. Kotopoulos' role in this case, any attempt to introduce evidence of Counsel's inadvertent omission is improper and prejudicial, and should be excluded.

### F.  The Court Should Exclude Any Reference to Alleged Misconduct or Dilatory Tactics by Defendant's Counsel in Providing Discovery

Throughout discovery, when the parties faced a bona fide discovery dispute, Plaintiff accused Defendant of misconduct and dilatory tactics. Plaintiff filed various motions to compel

BOS_BOS_518087_1.DOC/MGLICKSON

discovery and for sanctions, charging the Bank with misconduct when Defendant produced

fewer documents than Plaintiff felt existed, or did not produce all the documents or interrogatory

answers to which Plaintiff felt he was entitled.  Plaintiff's accusations were never substantiated,

and the Court never concluded that the Bank engaged in misconduct and never imposed

sanctions.   Furthermore, Plaintiff was not prejudiced by any of the Bank's actions during

discovery.

Plaintiff may nonetheless attempt to introduce at trial evidence of the Bank's purported

"delay" in producing certain documents in the course of discovery.  The Court should exclude

any reference to the Bank's purported delay or other "misconduct" on the grounds that i) it did

not happen, and ii) it bears no relevance to any material issue at trial.  Further, such an

accusation is inflammatory and prejudicial, and would serve only to confuse and mislead the

jury.

**G.    The Court Should Preclude Any Evidence or Testimony From Plaintiff's Purported Expert Mary V. Andrianopoulos**

Plaintiff designated Mary V. Andrianopoulos, Ph.D. as an expert in this matter.  This

court should exclude any testimony from Dr. Andrianopoulos including the two-page expert

report she wrote. (Attached hereto as Exhibit B.)

Dr. Andrianopoulos is a "Doctor of Communications Disorders."  In her report, she

concludes that Kincaid suffered an acute voice problem induced by stress beginning in

November and early December 2004.  Her report does not state that Defendant's actions caused

Plaintiff's voice problem, only that his problem began "following a series of stressful events in

his life surrounding his past employment and pending legal maters especially during late

November and early December 2004."  Dr. Andrianopoulos did not examine Plaintiff. She

obtained all of her information from conversations with Plaintiff's attorney and a review of

medical records.

> **1.** **Expert Testimony or Evidence Should Be Excluded Because Dr. Andrianopoulos Has Not Disclosed Any Opinion Regarding the Cause of Kincaid's Voice Problem, and Any Other Proffered Evidence Regarding Plaintiff's Voice Problem is Irrelevant to this Litigation**

Federal Rule of Civil Procedure 26(a)(2)(B) requires that:

> Except as otherwise stipulated or directed by the court, this [expert witness] disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain *a complete statement of all opinions to be expressed and the basis and reasons therefore*; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).  Federal Rule of Civil Procedure 37(c)(1) provides

that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).

Dr. Andrianopoulos has not disclosed any opinion regarding the cause of Kincaid's

purported voice problem.  In her Expert Report, she opines only that Kincaid's voice problem (1)

was induced by "stressful events in his life;" and (2) commenced in November or December

2004.[4]  To the extent that Dr. Andrianopoulos intends to offer opinions at trial concerning

---

[4] Specifically, the Report provides, "According to Mr. Kincaid's past medical and voice history (which I have obtained from Mr. Kincaid's medical records and from facts provided by Mr. Kincaid's attorney), his voice difficulties began acutely following a series of stressful events in his life surrounding his past employment and pending legal matters especially during late November and early December 2004).

whether Bank of America is responsible for Plaintiff's voice problem, Plaintiff has not satisfied

his requirements of disclosure under the Federal Rules, and Dr. Andrianopoulos should be

precluded from offering any opinions concerning the causation of Plaintiff's voice problem at

trial.

Moreover, the expert opinion of Dr. Andrianopoulos that Plaintiff does disclose –

namely, that Kincaid's voice problem was induced by stress – is irrelevant to the issues in this

case.  Expert testimony is relevant only to the extent it relates to Bank of America's actions and

their effect on Plaintiff.   Dr. Andrianopoulos' report does not address this point.  Indeed, her

report nowhere mentions Bank of America.  For this reason, any expert testimony or evidence

from Dr. Andrianopoulos is irrelevant and should be excluded.

> ### 2. *The Court Should Exclude Expert Testimony or Evidence Because Kincaid's Own Testimony Shows that His Voice Problems Were Not Attributable to the Bank, But to An Outside Stressor*

As discussed above, Dr. Andrianopoulos opines only that Kincaid's voice problem was

(1) induced by stress; and (2) commenced in November or December 2004.  These conclusions

do not, in any way, suggest that such stress is attributable to the Bank, or that the Bank should be

liable for Kincaid's voice problem.  To the contrary, Kincaid's own testimony indicates that his

voice problem was caused by his former attorney's withdrawal of representation; not by the

Bank's actions.[5]   Kincaid specifically testified that the only stress he experienced in November

---

[5] Q.  What did [Dr. Therrien] ask you that led you to believe she was seeking information about what might have
caused your voice problem?
  A.  She said did anything happen around the time you lost your voice that you thought may have caused it.  I said,
well, I had kind of a significant shocker that occurred at the time.
  Q.  And that was the change of counsel, correct?
  A.  Right.  Well, at that time I didn't think it was a change.  At the time I found out, I thought it meant I wouldn't
have a lawyer.
…
Q.  And so did you tell her anything about stress you were under because you'd lost your job at Bank of
America…[?]

BOS_BOS_518087_1.DOC/MGLICKSON

or December 2004, when his voice problem began, was stress resulting from the news that his

attorney would have to withdraw her appearance in this case due to a conflict of interest.

Deposition of Steven Kincaid., Vol. II, pp. 92-93.  Kincaid misunderstood the implications of

this development, and thought it meant that he would be permanently without legal

representation going forward. See footnote 4, supra.  According to Plaintiff, his counsel's

withdrawal of representation traumatized him, causing him to lose his voice the same day he

learned of her withdrawal.  Deposition of Steven Kincaid., Vol. II, p. 93.

Obviously, Defendant cannot be held liable for physical symptoms caused by Plaintiff's

misunderstanding of the consequences of his former attorney's withdrawal of representation.

See Zimmerman v. Direct Federal Credit Union, 262 F.3d 70, 79 (1st Cir. 2001) (litigation-

induced stress is not ordinarily recoverable as part of plaintiff's damages). Because Kincaid's

own testimony shows that his voice problems were attributable not to the Bank, but rather to

litigation-induced stress, the Court should exclude any testimony or evidence from Dr.

Andrianopoulos.

### 3. *Dr. Andrianopoulos' Report and Testimony Should Be Excluded Because the Evidence Does Not Approach the Standard for Reliability Under Daubert*

Federal Rule of Evidence 702, governing the use of expert testimony in federal courts,

provides:

---

A.  What she asked me was did anything happen at the time I lost my voice specifically surrounding or specifically at that time.  So the only event that happened within a day or so – I think it was actually the day this happened – was my talk with [my former counsel] Deborah Norcross…
Q.  So you didn't tell [Dr. Therrien] anything about the termination from Bank of America; correct?
A.  Correct.
Q.  And you also didn't tell her anything about any stress related to the situation with Sheila Burroughs in the last few months of your employment, correct?
A.  I did not tell her about that.  True.

Deposition of Steven Kincaid, Vol. II, pp. 92-94.

BOS_BOS_518087_1.DOC/MGLICKSON

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule on expert testimony essentially codifies the principles enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny of cases. Daubert and its progeny task the trial court to act as the gatekeeper to exclude "junk science" that does not meet Rule 702's requirement of scientific validity. See Kuhmo Tire v. Carmichael, 526 U.S. 137, 147-48 (U.S. 1999); Gen. Elec. Co. v. Joiner, 522 U.S. 137, 142 (1997); Daubert, 509 U.S. at 589-90, 592-93. Under Daubert, expert testimony is admissible only if the proponent demonstrates by a preponderance of the evidence that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. Id. Unless all of these requirements are met, the proffered expert testimony should be excluded. The trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard. Kumho Tire, 526 U.S. at 138-39, 119 S.Ct. 1167; In re Paoli, 35 F.3d at 777-78.

Trial judges must ensure that expert testimony is not only relevant, but reliable in light of the particular facts and circumstances of the particular case. Kuhmo Tire, 526 U.S at 158; Daubert, 509 U.S. at 589. In order for an expert's opinion to be reliable, the Court must determine that the reasoning and methodology underlying the testimony is valid, and that the reasoning and methodology can be applied to the facts in issue. Daubert, 509 U.S. at 592-93. Consequently, the party seeking to have the testimony admitted bears the burden of showing "objective, independent validation of the expert's methodology"; "the expert's bald assurance of

validity is not enough." Daubert v. Merrill Dow Pharmaceuticals, Inc., (on remand), 43 F.3d

1311, 1316 (9th Cir. 1995).

In assessing the validity of a purported expert's opinion, the Court should consider this

non-exclusive list of factors:

>(1)    the extent to which the proffered knowledge can and has
>        been tested;
>
>(2)    whether the underlying theory or technique has been
>        subjected to peer review and publication;
>
>(3)    the known or potential rate of error;
>
>(4)    whether the opinion or technique is generally accepted in
>        the scientific community;
>
>(5)    whether the opinion has been developed for the purpose of
>        testifying; and,
>
>(6)    the qualifications of the expert.

Mills, 824 A.2d at 471. In most cases, the Court should decide which factors are appropriate.

Kuhmo Tire, 526 U.S. at 152 ("the factors identified in Daubert may or may not be pertinent in

assessing reliability, depending on the nature of the issue, the expert's particular expertise, and

the subject of his testimony").

On its face, Dr. Andrianopoulos' Expert Report does not even approach a threshold

showing of reliability necessary for admissibility. The extent of Dr. Andrianopoulos' conclusion

is that Kincaid suffers from an acute voice problem due to stress. She never discusses the

methodology she used in arriving at that opinion, other than to state that she "reviewed" certain

medical records and spoke with Kincaid's attorney. She never examined Plaintiff, so there are

certainly no objective tests that the Court can assess to determine the reliability of her

methodology (if, indeed, she applied any particular methodology at all). Dr. Andrianopoulos has

not explained how her review of certain medical records and her conversations with Kincaid's attorney led to her conclusion that Kincaid's voice problem was induced by stress. Nor has she explained whether she used any recognized technique that any other members of her field would have used in reaching her conclusions. In the complete absence of any explanation of Dr. Andrianopoulos' methodology, this Court cannot meaningfully evaluate the reliability of her opinion (such as it is). The testimony and Expert Report of Dr. Andrianopoulos should therefore be excluded.

> **H.    The Court Should Preclude Plaintiff From Introducing Any Testimony Regarding the Value of Plaintiff's Benefits During his Employment with the Bank**

In connection with his damages claim, Plaintiff will attempt to introduce evidence pertaining to the value of Kincaid's benefits during his employment with the Bank. Plaintiff, however, cannot proffer any admissible evidence on this issue. To the extent Kincaid wishes to testify about the value of his benefits while employed by the Bank, such testimony is based on rank speculation. Indeed, Plaintiff admitted at his deposition that his method of assessing the value of his benefits was based entirely on his experience with a "formula" that other companies (not Bank of America) "usually use." Kincaid further admitted at his deposition that he has no personal knowledge of the value of his benefits:

> Q. And what's the value of the benefits you received?
>
> A. Well, roughly, from being a manager in different big companies, they usually use a formula of multiplying the salary by 1.5. I don't have a calculator here. That would be 110,000 times 1.5.
>
> Q. That's based on your experience at other companies, correct?
>
> A. Yeah. Three other big companies, yeah.

Q.  Did you have any personal knowledge as to what the value of your benefits was at Bank of America.

A.  I was not a hiring manager.  I didn't hire anybody there.

Deposition of Steven Kincaid, Vol. II, p. 112.

Of course, testimony based on speculation, like Plaintiff's above testimony, is inadmissible. Patti v. National Amusements, Inc., No. 9792, 2002 Mass.App.Div. 180 (2002) (properly excluding evidence based on pure speculation).  What is more, during discovery, Plaintiff had the opportunity to request that the Bank produce documents pertaining to Plaintiff's benefits, but neglected to make any such request.  Defendant therefore requests an Order barring Plaintiff from testifying as to the value of employee benefits at Bank of America.

I.    **The Court Should Bar Plaintiff from Introducing Any Reference to Alleged Damage to His Reputation**

Plaintiff will attempt to introduce evidence that, as a result of Bank of America's actions, he suffered damage to his reputation, for which Defendant is liable.   Plaintiff, however, cannot proffer have any evidence to support his claim of reputational harm, and the evidence that he will attempt to introduce is not relevant and constitutes inadmissible hearsay.

Specifically, Defendant anticipates that Plaintiff will testify that his reputation was harmed based on comments made by two individuals, as he testified at his deposition:

Q.  …In Paragraph 40 there's an assertion that you suffered damage to your career and reputation; do you see that?

A.  Yes, I do.

Q.  How has your reputation been damaged?

A.  …Because of the nature of Bank of America's actions, and the fact that everybody in my research community knew about what happened, I think that my reputation has been permanently tainted.

Q.  Has anybody told you that that was a reason that you were not hired?

A.  No one has told me that that's the reason I have not been hired for a position, no.

Q.  Have any of your colleagues in this field ever told you that your reputation was damaged?

A.  I've had comments from two different individuals referring to the events that happened at Bank of America.  I think out of politeness and consideration for my feelings they didn't directly say that you've been scarred or damaged; but that was my interpretation of what they were saying, looking at the entirety of the conversations.

Q.  Who were those individuals?

A.  Wendy Jamison…and Judy Edwards.
…
Q.  Where is Wendy Jamison located?

A.  ABT Associates.
…
Q.  And what did Wendy tell you?

**A.  Well, she said she heard about what happened, and felt bad, and wondered why they had done what they had done.**

Q.  Did you apply for a position at ABT Associates after you worked at Bank of America?

A.  …I did apply for a director-of-research position at ABT Associates…

Q.  Did you get interviewed?

A.  Yes, I did.  I did get interviewed for that job.

Q.  Were you told why you were not hired?

A.  There was another extremely qualified person from Ernst & Young who was available.  But the main reason was that…the guy from Ernst & Yong knew different stuff that they had never been exposed to…The knowledge that I had really overlapped very heavily with the knowledge they already had.

Q.  What about Judy Edwards?

A.  She was with J.P. Morgan…

Q.  When did you have this conversation with her?

BOS_BOS_518087_1.DOC/MGLICKSON

**A.  It was in the fall of 2003, probably September; maybe October…She called me and said, I heard something happened at Bank of America; what was the deal?  Or, why did they do that?  And I told her my story.  And she said she had a position for director of customer satisfaction in one of the bank's products area…I said I would like to apply.  She said, well, send my your resume, which I did.  And I never heard back from her.**

Deposition of Steven Kincaid, Vol. I., pp. 87-92 (emphasis added).

As the above testimony makes clear, Plaintiff has no evidence to support his contention that his reputation was harmed in any way.  In his sworn testimony, Plaintiff provides no factual support for his allegation that harm to his reputation caused him to be rejected from the jobs – in fact, he specifically admits that no one ever told him that he did not receive job offers because of anything that happened at Bank of America and that the only two individuals who mentioned the issue to him then either interviewed him or told him about openings in their companies.  What is more, the comments Kincaid alleges show reputational harm *do not have anything to do with his reputation*.  The mere fact that certain people were aware that Bank of America terminated Plaintiff's employment is irrelevant to whether Kincaid suffered harm to his reputation.

Because Plaintiff has no evidence to support that his reputation was damaged, such a claim rests entirely on speculation, and should be barred.  See e.g., Patti v. National Amusements, Inc., No. 9792, 2002 Mass.App.Div. 180 (2002) (properly excluding evidence based on pure speculation).  Moreover, as set forth above, any testimony pertaining to the alleged comments by Wendy Jamison and Judy Edwards are irrelevant and therefore inadmissible pursuant to Federal Rule of Evidence 401, since any testimony about a third-party's awareness of Plaintiff's termination does not tend to make any fact of consequence more or less probable.  Finally, the Court should not permit Plaintiff to testify about any alleged comments made by Wendy Jamison or Judy Edwards because such comments constitute inadmissible hearsay.

Neither Wendy Jamison nor Judy Edwards are parties to the lawsuit, and Plaintiff may not introduce their out-of-court statements. Further, neither Wendy Jamison nor Judy Edwards has been identified as a trial witness by Plaintiff in the pre-trial memorandum or his subsequent trial disclosures, so both should be precluded from testifying at the trial of this case.

J.    **The Court Should Bar Plaintiff From Introducing Any Reference to Emil Becker's Separation from Employment**

Defendant anticipates that Plaintiff will attempt to introduce evidence of the circumstances surrounding former Bank employee Emil Becker's separation from employment. Becker was a Market Information Manager with Bank of America whose position was eliminated as of May or June 2004. Specifically, Plaintiff will attempt to introduce a letter written by Becker's attorney, Vicki B. Rowan, to Defendant's in-house counsel, in which she attempts to negotiate a more favorable severance package for Becker. Defendant attaches the Letter of Vicki B. Rowan hereto as <u>Exhibit A</u>. In her attempt to persuade the Bank to offer more severance, the attorney includes in her letter, <u>inter alia</u>, an account of age-related comments allegedly made by other employees, as well as statistics regarding the ages of the employees laid off compared to the attorneys in Becker's department.

The Court should preclude Plaintiff from introducing the highly prejudicial letter by Becker's attorney, as well as any reference to allegations of age bias in connection with Becker's separation from employment. First, Becker's employment situation is not relevant to the issues in this case. Becker was terminated in or around May or June 2004 – a full year after Kincaid's termination. Becker reported to a different supervisor than Plaintiff, and the decisionmakers in Becker's situation were entirely different from those who made the decision to terminate Kincaid. As such, any reference Becker's employment situation has no probative value, risks

creating a mini-trial within this trial, and will serve only to confuse and mislead the jury.  The

Court should bar Plaintiff from introducing any reference to Becker's separation from

employment pursuant to Federal Rules of Evidence Rule 401 and 403.  Second, the letter from

Becker's attorney is also inadmissible because it constitutes inadmissible hearsay:  it is a letter

from a non-party, and it is being offered for its truth.  The letter is therefore inadmissible

pursuant to Federal Rule of Evidence 802.  Finally, the letter from Becker's attorney is

inadmissible as a matter of public policy because it constitutes a settlement offer.  The purpose

of Attorney Rowan's narrative regarding the age-related comments and statistics was to convince

the Bank to offer Becker more severance, as the last paragraph of the letter indicates.  Thus, the

letter is inadmissible as an offer to compromise under Federal Rule of Evidence 408.

For the foregoing reasons, Defendant requests that the Court preclude Plaintiff from

introducing any evidence pertaining to Emil Becker's separation from employment.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant Bank of America's motion <u>in

limine</u>.


Respectfully submitted,

BANK OF AMERICA CORPORATION,
Defendant
By its attorneys


/s/ Siobhan M. Sweeney

Siobhan M. Sweeney
BBO No. 562118
Edwards Angell Palmer & Dodge LLP
101 Federal Street

BOS_BOS_518087_1.DOC/MGLICKSON

Boston, MA  02110
Phone: 617.439.4444
Fax: 617.439.4170

Mark A. Pogue
Edwards Angell Palmer & Dodge
2800 Financial Plaza
Providence, RI 02903
Phone: 401.274.9200
Fax:    401.276.6625

Dated:  January 20, 2006

BOS_BOS_518087_1.DOC/MGLICKSON

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing "Motion in Limine of Defendant Bank of America Corporation" has been served via electronic mailing to:

> David J. Fine, Esq.
> Three Center Plaza, Suite 400
> Boston, Massachusetts 02108-2003

This the 20th day of January, 2006.

<u>/s/ Siobhan M. Sweeney</u>
Siobhan M. Sweeney

BOS_BOS_518087_1.DOC/MGLICKSON